1    IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF ILLINOIS
2           EASTERN DIVISION

3    UNITED STATES OF AMERICA,        )  No. 12 CR 872
                                      )
4                     Plaintiff,      )  Chicago, Illinois
                                      )  November 9, 2012
5                                     )  2:30 o'clock p.m.
      -vs-                            )
6                                     )
                                      )
7    CHERRON MARIE PHILLIPS,          )
                                      )
8                     Defendant.      )

9
            TRANSCRIPT OF PROCEEDINGS - STATUS
10     BEFORE THE HONORABLE MILTON I. SHADUR

11   APPEARANCES:

12   For the Plaintiff:    HON. GARY SHAPIRO, by
                            MR. NATHAN D. STUMP
13                          Special Assistant United States Attorney
                            9 Executive Drive
14                          Fairview Heights, Illinois 62208

15

      For the Defendant:    Cherron Marie Phillips, pro se
16                          P.O. Box 802625
                            Chicago, Illinois
17
      ALSO PRESENT:         STEPHEN LEVY & ASSOCIATES
18                          33 North LaSalle Street
                            Suite 2800
19                          Chicago, Illinois 60602
                            BY:  MR. STEPHEN LEVY
20

21

22

23   Court Reporter:       ROSEMARY SCARPELLI
                            219 South Dearborn Street
24                          Room 2304A
                            Chicago, Illinois 60604
25                          (312) 435-5815

1            THE CLERK:  12 CR 872, United States of America

2    versus Cherron Phillips.

3            THE COURT:  Yes, counsel.

4            MR. STUMP:  Yes.  Good morning, your Honor, Nathan

5    Stump on behalf of the United States.

6            THE COURT:  Wait just a minute.  Do you want to

7    spell your last name for me, please.

8            MR. STUMP:  Yes, sir.  It is S-T-U-M-P.

9            THE COURT:  Thank you.

10           And defense counsel.

11           MR. LEVY:  Yeah.  Good afternoon, your Honor, Steve

12   Levy on behalf of the defendant Cherron Marie Phillips.  Miss

13   Phillips is present in court.  As the Court is aware, I am

14   the duty attorney today in Federal Court.

15           THE COURT:  Yes.

16           MR. LEVY:  I met with Miss Phillips, and she has

17   indicated she does not want me to represent her in this

18   matter.  So I would like the Court's permission to withdraw.

19           THE COURT:  Well, I have no problem with your

20   withdrawing.  That is -- because I have frequently said that

21   when it comes to lawyer-client relationships, essentially the

22   basic principle is like no fault divorce.

23           MR. LEVY:  Right.

24           THE COURT:  It doesn't matter which side is not

25   happy with the other one, I am not going to hold somebody to

1    task either at the -- if the impetus comes from the client or

2    if it comes from the lawyer.  So I will permit you to

3    withdraw the appointment.

4           As Miss Phillips may or may not know, that is

5    handled -- whenever it is believed that someone needs

6    representation, we have a Federal Defender Program.  And the

7    person who happens to be the duty lawyer for the day is the

8    person who automatically gets assigned to the case.

9           Now let me just ask you, though, is it your

10   intention to represent yourself or are you interested in

11   retaining counsel?  What is your thought?

12          THE DEFENDANT:  I would have to make that decision

13   currently right now, that would be correct, right?  That --

14   right?  I could possibly seek counsel at some point.  I mean

15   but I don't know.  Like I didn't have any time to prepare.

16          THE COURT:  I understand.  At the same time because

17   you are here in court and what has to be done formally in

18   connection with the beginning of any criminal charge is to

19   have what is called the arraignment in which the person is --

20   we make sure that the defendant has been provided with a copy

21   of the indictment and therefore the nature of the charge and

22   is asked to enter a plea, very often what happens is that

23   even in a situation such as the one that we have been talking

24   about here, where Mr. Levy would be withdrawing, he could act

25   for you solely for purposes of your being formally arraigned

1    and if your intention is to plead not guilty, entering a not

2    guilty plea.  That way you can make your determination about

3    what you may want to do in terms of your own representation

4    and/or -- you know, you don't have to make that now.

5              Would that seem to make sense to you?

6              THE DEFENDANT:  You said I would have to make that

7    now, right?

8              THE COURT:  No, you don't have --

9              THE DEFENDANT:  Oh, you said I don't have to make

10   that now.

11             THE COURT:  No.  Do you think that that -- you

12   understand all he would be doing on your behalf would be --

13   you have seen a copy of the indictment, have you not?

14             THE DEFENDANT:  That would be correct.

15             THE COURT:  Yeah.  So all he would be doing on your

16   behalf would be to acknowledge that you have received a copy

17   of the indictment and then waived the formal reading of it,

18   rather than having to have it read, and then the entry, if

19   that is your choice, of a not guilty plea, which then gives

20   you time for purposes of determining how you want to be

21   represented or by whom.

22             THE DEFENDANT:  Okay.  I -- I could do that today

23   myself, sir.

24             THE COURT:  Okay.  All right.  Well, then let me

25   ask you, if you want to do this yourself, are you prepared to

1  acknowledge that you have received a copy of the indictment?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And that you have had an opportunity to

4  read it?

5           THE DEFENDANT:  Yes.

6           THE COURT:  And how would you propose to plead,

7  guilty or not guilty?

8           MR. STUMP:  Your Honor, while she is --

9           THE COURT:  Wait just a minute.

10          THE DEFENDANT:  Can we have a short recess?

11          THE COURT:  Sure, go ahead.

12          THE DEFENDANT:  Thank you.

13       (Brief pause.)

14          THE DEFENDANT:  I -- I accept for value in return

15  for value for settlement and closure of this accounting, sir.

16          THE COURT:  I am sorry, I couldn't hear that.

17          THE DEFENDANT:  I am accepting for value in

18  returning for value for settlement in closure of this

19  accounting.

20          THE COURT:  I am not sure I understand that.

21          THE DEFENDANT:  I accept for value in return for

22  value for settlement and closure of this accounting pursuant

23  to Public Law 7310.

24          THE COURT:  Well, I am afraid that doesn't -- as

25  the saying goes, that doesn't cut it.  The -- if what you are

1    doing is expressing some kind of indication that you don't

2    believe that the Court has jurisdiction over you, then I

3    would consider that and see what ought to be done in those

4    terms.  But the -- but I don't understand the

5    characterization that you have just made.  And I am pretty

6    good at this stuff, you know.  I really understand how the

7    law operates.  So -- and I am not trying to be difficult.  I

8    really want to understand just what you are telling me.

9            THE DEFENDANT:  Okay.  Again I accept for value in

10   return for value for settlement and closure pursuant to

11   Public Law 7310.

12           THE COURT:  Well, that is not -- you know, the New

13   Yorker magazine used to, when they had fillers at the end of

14   an article and a part of a column -- to fill up they would

15   often print something and they would head it the Department

16   of Clotted Nonsense.  And, you know, I have listened to what

17   you have said.  I have heard it three times over.  And unless

18   you -- unless you care to put that into a characterization

19   that has some meaning, I am simply not in a position to

20   consider it.  Okay?

21           So let me -- I did interrupt the prosecutor here.

22   You were going to offer something, or what?

23           MR. STUMP:  I am sorry, your Honor, I -- you have

24   to please I hope forgive me for not understanding fully the

25   Court's procedures.  I did go the Court's website and make

1   sure I was up-to-date.  I am from the Southern District of

2   Illinois and standing in as a Special United States Attorney

3   in this case.

4                THE COURT:  I understand that.

5                MR. STUMP:  Your Honor, my understanding was before

6   we proceeded to arraignment we should finish the initial

7   appearance.  I just wanted to make sure Miss Phillips knew

8   what it was she had been charged with and the maximum

9   possible penalties, your Honor.

10               THE COURT:  I asked her that.  But the -- but I

11  have to get a threshold response.  And I haven't gotten a

12  threshold response.  I am familiar with the procedure.  But

13  again when I -- when I don't get something that is -- that

14  corresponds to the -- I know that lawyers and judges talk a

15  different language, but most people talk English and --

16  except when we have an official interpreter.  And I just

17  don't get an -- any effect from the communication that

18  Ms. Phillips has repeated now three times.

19               MR. STUMP:  Yes, sir.

20               THE COURT:  So if you are not prepared to accept

21  the opportunity to consider the entry of a plea, the Court

22  will enter a not guilty plea on your behalf because I don't

23  want you to be in a position in which your interests are

24  prejudiced.  So if you have said your say three times -- you

25  know, there is an old saying, if three people tell you you

1    are drunk, you might as well lie down.  Well, the same thing

2    if one person tells you three times, you might as well lie

3    down.  So I am laying down in that sense and I am -- for lack

4    of a response on your part that is an effective response, I

5    am going to enter on your behalf a not guilty plea to this

6    charge so that you are not facing any adverse results by

7    reason of having been charged.  Understood?

8                THE DEFENDANT:  Sir, may I ask another question?

9                THE COURT:  You certainly may.

10               THE DEFENDANT:  Is there -- well, let's see.  Is

11   there a CUSIP number that has been attached to this

12   particular case?

13               THE COURT:  Is there what kind of number?

14               THE DEFENDANT:  Is there a CUSIP number that has

15   been attached to this kind of case?

16               THE COURT:  I haven't the slightest idea.

17               THE DEFENDANT:  Is there an appearance bond that

18   has been attached to this case?

19               THE COURT:  What I get -- what I get in the

20   criminal case is an indictment.  What has preceded it I do

21   not have.  So your case number is 12 CR, which stands for

22   criminal, 872.  That is the -- that is the number and

23   designation of your case.  It is one that charges you with

24   what are called 12 counts, that is, 12 separate charges of

25   having, according to this, filed liens and encumbrances

1  against 12 people.  And the charge is that those were false

2  and that they contained materially false statements and

3  representations, including a false claim that each person

4  owed your brother $100 billion.  And that is charged as a

5  violation of two statutes.  One is what is called

6  Section 1521 of the Criminal Code.  And the other one is

7  Section 2, which is basically a related portion that

8  basically deals in more general terms.  And 1521 is labeled

9  -- and it is more complex because it -- this is -- I am not

10  going to read the whole text, but it is labeled Retaliating

11  Against a Federal Judge or Federal Law Enforcement Officer by

12  False Claims or Slander of Title.  That is the nature of the

13  charges.

14             Now, I -- CUSIP does not involve itself in a

15  criminal charge.  Criminal charges are brought under the

16  United States Code, Title 18, which involve most, not all, of

17  the potential criminal charges in a case.

18             Now, I don't want you to be making any kind of

19  statement that could in any way tend to incriminate you.  And

20  so when you ask -- when you asked the question, the answer to

21  that is yes, but I don't want you in conjunction with that to

22  be making a statement that could perhaps prejudice your

23  interests.  You understand?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Okay.  So is that -- that is my

1    non-answer I guess to the question that you had posed.

2              Is there anything else?

3              THE DEFENDANT:  Are you familiar with Public Law 73

4    10 or HJR 192?

5              THE COURT:  Well, tell me how you think that that

6    applies to your case.

7              THE DEFENDANT:  Because that would be the

8    acceptance.  That would be the acceptance for value in

9    consideration for closure and settlement of the --

10             THE COURT:  Yeah, it has nothing to do with this

11   case, ma'am.  Nothing.  Zip.  Understand?

12             THE DEFENDANT:  Okay.

13             THE COURT:  And if you don't, I regret it, but it

14   is true.  So we are back to square one.  I gather that you --

15   that you do not desire under the circumstances to exercise

16   the choices that are involved.  These are criminal charges

17   that carry the potential for very substantial criminal

18   penalties.  Section 1521 permits the imposition of a sentence

19   of as much as ten years and -- well, I guess that is about it

20   that I was going to tell you.

21             Now, I have entered, because of what I consider to

22   be nonresponsiveness, a not guilty plea on your behalf, which

23   puts you in the best possible position because it does not

24   create any kind of implication of guilt or the nature of the

25   charge.

1       And so we turn then to the next question, which is

2   difficult because Miss Phillips has opted not to decide at

3   this point whether she wishes to retain counsel or have

4   counsel appointed or act on her own behalf, which is her

5   constitutional right under Faretta against California.  So

6   what is the prosecutor's further motion, if any?

7       MR. STUMP:  As to her representation, your Honor,

8   it would be the recommendation of my office that the Court

9   appoint Mr. Levy as --

10       THE COURT:  Standby counsel.

11       MR. STUMP:  -- standby counsel in this matter.  And

12   I am just -- of course for the record to reflect that he was

13   present in court today for this proceeding so that to the

14   extent any rights could have been violated of the defendant,

15   that Mr. Levy was present in court and has an opportunity to

16   speak with the Court.

17       THE COURT:  Well, so that Ms. Phillips understands,

18   if somebody acts as standby counsel, the -- if I may say so,

19   that sort of puts the cart before the horse because standby

20   counsel is proper only if a defendant has exercised the

21   privilege of self-representation.  So the idea of saying,

22   well, he is standby counsel -- standby for what?  So I am not

23   sure that that really fits the situation here in which the

24   defendant has not expressed herself in those terms.

25       Certainly you are accurate in reflecting the fact that

1    he has had the opportunity to consult with her and has

2    discussed with her the questions that the Court had asked.

3    And that is a matter of record.  But I really cannot appoint

4    him as standby counsel because, regrettably, Miss Phillips

5    has not decided.  And she is entitled not to decide.  Okay?

6    So that -- that deals with that one.

7              If -- I should, however, say to Miss Phillips, if

8    your decision becomes one in which you decide that you wish

9    to represent yourself, which is a constitutional right that

10   has been recognized by the Supreme Court, the Court would

11   expect to act, as the prosecutor has just indicated, and that

12   is to appoint counsel to act as standby, which means that

13   counsel would be available to consult with you in terms of --

14   for example, advise you about legal procedures in those

15   matters but not actually representing you as a lawyer here in

16   court.

17             Do you understand that?

18             THE DEFENDANT:  I would object to standby counsel.

19             THE COURT:  You what?

20             THE DEFENDANT:  I said I would not want -- I would

21   object to standby counsel.

22             THE COURT:  Then I will not appoint one for you.

23   As I said, it is really not I think appropriate in a

24   situation in which you have not, for better or worse, decided

25   yourself, which is entirely your call, as to how you want to

1  handle the matter.

2         Now, what are we -- how was Miss Phillips brought

3  into court?  Did she surrender voluntarily, or what?

4         MR. STUMP:  No, your Honor, she was arrested on a

5  warrant that was issued in conjunction with the indictment.

6  And the United States is seeking her detention at this time.

7         THE COURT:  Now you understand, Miss Phillips, what

8  the prosecutor has just said is that you, because of a

9  concern as to, what, possible risk of flight, or what?

10        MR. STUMP:  Yes, your Honor, we would cite both her

11 risk of flight and her danger to the community.

12        THE COURT:  And what do you have in terms of

13 danger -- first, when you talk about risk of flight, how did

14 it happen that Miss Phillips was apprehended?

15        MR. STUMP:  Your Honor, the -- I will proffer for

16 the Court at this time -- of course we would expect that

17 there would be a formal hearing --

18        THE COURT:  I understand.

19        MR. STUMP:  -- in three days, but for purposes of

20 today I will tell the Court that there was some surveillance

21 done, that Miss Phillips was at a -- I believe it is a

22 business -- at least it is not a residence -- and the agents

23 surprised her outside of the residence.  And I did receive a

24 report from the agent that there -- she did resist to some

25 degree in the arrest and did refuse some instructions that

1    were given to her by the arresting agents.

2         THE COURT:  And what is your basis for your

3    characterization of danger to the community?  Again I am not

4    going to make any findings because you are quite right that

5    when a formal determination is made in terms of detention,

6    that calls for a hearing which is evidentiary in nature.  But

7    what you are -- under the unusual circumstances that we have

8    here -- first of all, it is immediately preceding a weekend;

9    second, that she has not been in a position to make a

10   determination and has not made a determination about counsel,

11   it seems to me that the Court is entitled to a threshold

12   indication of what the Government's view is so that it can

13   make at least an initial determination about the question of

14   detention, at least for purposes of not creating the kind of

15   risks that you have referred to.

16        So tell me about the other part.

17        MR. STUMP:  Yes, your Honor.  With regard to danger

18   to the community, I will preview for the Court that this case

19   arose through -- out of another federal criminal case that

20   was being prosecuted in this Court and that was against Miss

21   Phillips' brother.  My understanding is that in that

22   proceeding Miss Phillips made appearances in court on behalf

23   of her brother, out of concern for her brother, Miss Phillips

24   had filed some documents in his case, and that after he was

25   sentenced then was when she filed these false liens against

1   the people that were involved in the prosecution of her

2   brother.  We have a concern that because of the retaliation

3   and this case was motivated because of the prosecution, that

4   similarly if she were allowed to be released on bond, that

5   she would have the same motive to retaliate against those who

6   are proceeding against her right now.

7                THE COURT:  Miss Phillips.

8                THE DEFENDANT:  I would like to object to --

9                THE COURT:  Yes.

10               THE DEFENDANT:  -- the statements that were made in

11   regards to the prosecution.  I am objecting to everything he

12   just stated because it is all hearsay for one.

13               THE COURT:  We are not -- we are not in a trial.

14               THE DEFENDANT:  Okay.

15               THE COURT:  You know, I know the rules against

16   hearsay.  And of course he is not talking from his personal

17   knowledge, but he is at least assisting the Court in

18   connection with the consideration whether the appropriate

19   course of action is to simply have you released, because even

20   when people are released on criminal charges, conditions are

21   always established.  The problem with establishing conditions

22   is that you are not represented and you are not in a position

23   really to evaluate the kinds of conditions that would be

24   imposed.

25               Whenever I have a defendant who is going to be

1    released, my responsibility is to go over all of the terms of

2    the release order, which involves cautioning a defendant

3    about what the consequences are, for example, of failure to

4    appear.  And I am not comfortable from what you have said

5    with the notion that I can get that message over to you,

6    frankly.  And it seems to me that that is something on which

7    you need advice or at least the opportunity to consider.  So

8    that all I am considering at this point is a kind of

9    threshold determination, and that is what should be done in

10   the interim right now.

11            And for that purpose, even though you are quite

12   right in saying that what the prosecutor has indicated

13   constitutes hearsay, the -- I am not comfortable, I can tell

14   you, with the idea of simply entering a release order, at

15   least during this time frame.  So I --

16            THE DEFENDANT:  Your Honor -- excuse me.

17            THE COURT:   I respect and have heard your

18   objections to his characterization, but I am not making a --

19   an ultimate determination in factual terms because I -- you

20   are not in a position even to handle the -- your own case in

21   connection with the kind of hearing that would be needed.

22   You are just not able to.  You are not in a position to.  So

23   unless you have anything more to say, then it seems to me

24   that the only really alternative that is available is to

25   retain you in custody.

1          Now I, however, want you to be in a position, to

2     the extent that you want to give consideration to retaining

3     counsel and also consideration to whether you want to

4     represent yourself -- I don't want to cut you off from

5     society entirely.  So tell me what you contemplate just at

6     present -- I know it has come on to you just today -- but in

7     terms of what kind of time it is going to take you in order

8     to consider what direction you want to go with the

9     representation, with either retaining counsel or representing

10    yourself.

11          THE DEFENDANT:  Okay.  Well, you are proposing,

12    just so that I am clear, is that you are asking me now will I

13    have time to seek counsel or will I have to make a decision

14    to represent myself at -- on -- right now at this matter or

15    will I be --

16          THE COURT:  No, I am not asking that.

17          THE DEFENDANT:  Okay.

18          THE COURT:  You told me you are not in a position

19    to do it.  But I will tell you right now I am not going to

20    enter an order releasing you under the circumstances because

21    it seems to me that you have really demonstrated that that

22    creates a kind of risk that is -- that it is not appropriate

23    for the criminal justice system to take.

24          THE DEFENDANT:  Conditionally accept that offer

25    that you are saying based on what, based on -- what have I

1    demonstrated that would show that I am -- can't come back if

2    you have asked me to?  What have I demonstrated that if this

3    gentleman or this other gentleman, Josh, by any chance, if

4    they -- how have I demonstrated that I wouldn't come back?  I

5    am just curious.  How have I demonstrated that today?

6            THE COURT:  Well, that -- I really have asked what

7    the prosecutor has to say on that score.  And the fact of

8    having what amounts to, according to the charges that are

9    involved here, having engaged in retaliation for the ordinary

10   operation of the system doesn't create any real confidence in

11   your future activity, at least not enough so that the Court

12   can try to fashion -- you see, look, you are creating a lot

13   of difficulties here in one way.

14           THE DEFENDANT:  Really?

15           THE COURT:  Let me tell you why.

16           THE DEFENDANT:  Okay.

17           THE COURT:  I think that it is very plain that if I

18   were to get a form of release order of the type that we have

19   in place here, that I could not be comfortable in the idea of

20   your being able to comprehend all of the things that are

21   involved in a release order, all the risks that are involved.

22   And that is a troubling situation.  But that you see would

23   enter into the idea of a release that looks to -- typically a

24   release during the pendency of this case.  That is a more

25   long-range proposition.  That is not -- that is not just

1  saying we are going to hold you overnight or we are going to

2  release you overnight subject to your being brought into

3  custody once again.  I just don't have any assurance of it.

4            THE DEFENDANT:  May I?

5            THE COURT:  Sure.

6            THE DEFENDANT:  Again if there is a situation,

7  which this is obviously a situation, that requires me to come

8  back, I don't have no problem with coming back.  I have no

9  problem with making appointments or making a hearing.  I have

10  no problem with that.  I have no problem with that.

11            MR. STUMP:  Your Honor, if I may.

12            THE COURT:  Mr. Stomp.

13            THE DEFENDANT:  I am asking --

14            MR. STUMP:  I am very cognizant of the Court's

15  time, and I wonder if you would be so kind as to indulge us

16  in a brief recess.  And during the brief recess what I would

17  like to do is discuss some of this with the defendant and

18  Mr. Levy present and appointed just for the purposes of this

19  proceeding by the Court to assist in representation of Miss

20  Phillips so we can have a conversation as parties.

21            THE COURT:  Well, as the late Rudy Vallee said, "My

22  time is your time," and I will wait.  But -- and I wish you

23  good speed because the difficulty of getting communications

24  over to Miss Phillips is I think obvious from what has taken

25  place up to this point.  So I will stand in recess.  And my

1 | minute clerk will let me know when you are ready to resume.

2 | MR. STUMP:  Yes, sir.  Thank you, your Honor.

3 | (Brief recess.)

4 | THE CLERK:  12 CR 872, United States of America

5 | versus Cherron Phillips.

6 | THE COURT:  Yes, someone has something to report,

7 | or not?

8 | MR. STUMP:  I am sorry, one second.

9 | Your Honor, we have met, the parties have met,

10 | during the recess.  Mr. Levy was present for those meetings

11 | and those discussions, as well as the Pretrial Services

12 | Officer was here.  At this time, your Honor, the parties have

13 | reached an agreement as to detention or release.  At this

14 | time the Government is willing to withdraw its oral motion to

15 | detain Miss Phillips and pursuant to the agreement of the

16 | parties Miss Phillips would be subject to a bond that would

17 | place her on home detention with an electronic monitor.

18 | THE COURT:  But do you have an order?

19 | MR. STUMP:  Your Honor, we are working on that as

20 | we speak.  As I said, I apologize for the delay.

21 | THE COURT:  What is the bond going to consist of?

22 | I -- one of my law clerks looked up the -- Ms. Philips'

23 | reference and found that it dated back to a time when I was

24 | around, you were not, in which our country went off the gold

25 | standard.  And that is the reference that she has made in

1  terms of value given, value received.  And of course I am not

2  sure whether that means she wants to post a bond in gold or

3  not, but that is not our general practice.

4          MR. STUMP:  Your Honor, in terms of the --

5          THE COURT:  You are talking about an OR bond?

6          MR. STUMP:  In terms of the amount, your Honor, I

7  am going to defer to the recommendation of the Pretrial

8  Services Officer on that.

9          MR. WIERSEMA:  Your Honor, Justin Wiersema,

10  Pretrial Services.  I haven't had a chance to talk to her.

11  We have been working this out, but I haven't had quite a

12  chance to interview her yet.  Therefore, I don't have a

13  recommendation from Pretrial's perspective.  The parties have

14  agreed on a few conditions -- or the conditions, one of those

15  being --

16          THE COURT:  How long is that going to take?

17          MR. WIERSEMA:  What is that?  The pretrial --

18          THE COURT:  Well, I don't want to enter an order in

19  the blind.

20          MR. WIERSEMA:  Understand, your Honor.

21          THE COURT:  And I -- it is not fair to Miss

22  Phillips to do that either.

23          MR. WIERSEMA:  The conditions that are set Pretrial

24  will go along with.  We believe those are suitable

25  conditions.

1            A couple things I need to advise your Honor first.

2 If you would like me to do that out here or I can do that in

3 chambers.

4            THE COURT:  Advise me.  I don't engage in ex parte

5 communication.

6            MR. WIERSEMA:  Understand.  I did have a chance to

7 run her record.  She has three pending cases right now.

8            THE COURT:  Well, not only that, there is an

9 Executive Committee order that I was apprized of that

10 basically prohibits her from entering the courthouse here,

11 which would be good news for her except for the fact that one

12 of the exceptions is that she may obviously enter the

13 courthouse for a -- criminal proceedings.

14            MR. WIERSEMA:  Correct.  But the parties have

15 agreed on a signature bond, an OR bond, as you discussed.

16 Home detention with electronic monitoring, we have discussed

17 that.  Other conditions, refrain from possessing a firearm,

18 refrain from possessing drugs.

19            THE COURT:  Well, I am going to have to outline

20 those to her because I have to engage in that dialogue.  So

21 you don't have to explain the terms to me.  If you will hand

22 up the proposed order.

23            MR. WIERSEMA:  Of course.

24            MR. STUMP:  Your Honor, I just want to say thank

25 you again for your indulgence.  I am sorry that it has taken

1  this long in this -- in the afternoon.

2          THE COURT:  That is --

3          MR. STUMP:  But I think it is worthwhile.

4          THE COURT:  As the old saying goes, they never

5  promised me a rose garden.

6          No, I don't want her to sign it yet.

7          MR. WIERSEMA:  Okay.  I am sorry, Judge.

8          THE COURT:  Do you want to hand it up.

9          MR. WIERSEMA:  Yes.

10          THE CLERK:  Thank you.

11          Now, Miss Phillips, what has been suggested is that

12  you be released under conditions, and most of them are the

13  standard conditions that apply here.  But it is my obligation

14  to explain those to you and make sure that you understand.

15  The first order of business is that you must not commit any

16  other crime, federal, state or local, during the time period

17  that you are on release.

18          The second provision is one that I am not sure that

19  I am going to impose, and that is cooperating in the

20  collection of a DNA sample.  It seems to me that is really

21  inappropriate at this time.  We may have that at a later

22  point.  So I am not going to include that.  And when I hand

23  it back, that can be stricken out and initialed.

24          The third thing is that if you were to change any

25  -- your phone number or you address, you have an obligation

1   -- now this talks about the obligation to advise your defense

2   counsel.  You don't have one.  And normally what I tell

3   defendants is that if any of those changes were to take

4   place, the person let's the defense counsel know, who in turn

5   let's the prosecutor know and let's the Court know.  But

6   because you don't have a lawyer representing you, the

7   obligation is yours.  If you change your address or change

8   your telephone number, you must notify the -- both the United

9   States Attorney's Office and the Court directly.

10          Understood?

11          THE DEFENDANT:  Accept.

12          THE COURT:  All right.  The next item is that

13  whenever you are ordered to appear in court, you must do

14  that, that is, if the Court ever sets a date and says you are

15  required to be here, you must be here.  And relatedly if you

16  were to be found guilty of any of these -- of this charge

17  that is involved or any of the charges -- I guess there are

18  technically 12 of them -- and you were to -- that were to

19  result in a sentence of imprisonment, you have to appear for

20  the surrender for sentencing purposes.

21          Now, when you sign this, you promise that you will

22  indeed appear in court and -- under either of those

23  circumstances, that is, appear in court when the Court orders

24  that or sets a date or if you were to be convicted, you would

25  have to appear for sentencing as ordered.  And for that

1    purpose the -- you are being required to sign an unsecured

2    bond that obligates you to pay a certain amount, which has

3    not been filled in.  And I don't know what discussion you

4    have had, if any.

5            MR. WIERSEMA:  Judge, the parties have arrived on

6    $4,500.

7            THE COURT:  4500.  That is the typical one.  Now

8    that doesn't mean you put up the money.  What it does mean,

9    though, is if you violate a condition, you are liable for

10   that.

11           Now there is some added provisions that apply here

12   in addition to the things that I have mentioned.  The first

13   one is that you have to report to the Pretrial Services

14   Office as they direct.  So you will work out whatever that

15   arrangement is in terms of the time and frequency.  And that

16   will bind you.

17           You are also -- do you have a passport?

18           THE DEFENDANT:  No, sir.

19           THE COURT:  All right.  It says that you are

20   required to surrender any passport to Pretrial Services.  If

21   you don't have one, that doesn't apply.  But it also says you

22   may not obtain a passport.

23           The next item is that you must -- do you have -- do

24   you own any weapons at all?

25           THE DEFENDANT:  No.

1                  THE COURT:  No firearm?

2                  You have got to answer out loud.

3                  THE DEFENDANT:  I said no.

4                  THE COURT:  Okay.  And the -- do you have an FOID

5       card, Firearm Owner's Identification card?

6                  THE DEFENDANT:  No.

7                  THE COURT:  Okay.  You may not possess a firearm or

8       what is referred to here as a destructive device or any other

9       dangerous weapons.

10                 You must refrain from the excessive use of alcohol.

11      You also have to refrain from the unlawful use or possession

12      of any narcotic drug or controlled substance, unless that is

13      pursuant to a doctor's prescription.

14                 And then the provision about home detention means

15      that you are restricted to your residence at all times with

16      certain exceptions, employment, education, religious

17      services, medical attention or mental health treatment; if

18      you get a lawyer, any visits to your lawyer, any court

19      appearances, obviously, or any court-ordered obligation.  And

20      for that purpose you are to have a monitoring arrangement set

21      up which will be covered by the -- and arranged for you with

22      the Pretrial Services people.

23                 There is a cost involved in connection with that.

24      I forget how many dollars it is a day, but you are obligated

25      to bear that cost as well.

1    Okay.  Those are the added conditions.  But then I
2    have to caution you under the law about what happens if you
3    don't live by those.  The first one is that if you violate
4    any of the conditions of release, that could result in a
5    warrant being issued for your arrest.  You could -- your
6    release could be revoked.  You could be placed back in
7    custody.  Forfeiture of any bond, the thing that I had just
8    talked about, and possibly a prosecution for contempt of
9    court that could result in imprisonment or a fine, or both.

10    If you were to commit a federal offense during this
11    time, that is particularly serious.  And the reason I say it
12    is particularly serious, because what happens is that that
13    subjects you to the possibility of consecutive sentencing,
14    that is, that any sentence that might be imposed if you were
15    convicted of any of the crimes that are now charged against
16    you, if you were to commit another federal offense, the --
17    there could be an add-on, and that could be as much as a
18    ten-year time frame.

19    If this other theoretical federal offense -- and I
20    am not expressing any views on that -- I am just cautioning
21    you about that -- - if that theoretical federal offense were
22    what is called a misdemeanor, in other words, if it could not
23    on its own carry with it a term of more than a year, then it
24    is the same potential for consecutive sentence, but what --
25    the add-on provision could be not more than a year.  But keep

1    in mind that that gives rise to the possibility of three

2    terms:  One, if you are held guilty on any of these charges;

3    two, if you were held guilty on the other theoretical federal

4    offense; and, three, the consecutive result of having a

5    combination of those two.  So that is why I say it is

6    particularly serious.

7              What is -- the maximum term on this one is --

8              MR. STUMP:  The maximum term in prison for the

9    charge is ten years, your Honor.

10             THE COURT:  Yeah.  If you were knowingly to fail to

11   appear on the circumstances that I have talked about, you

12   could be prosecuted for that purpose.  And that could give

13   rise again to an additional sentence which could be

14   consecutive as well.  And in that instance that consecutive

15   sentence could be as much as a five-year term, a fine of a

16   quarter million dollars, or both.

17             Now, is there anything that I have covered here

18   that is not clear to you?

19             THE DEFENDANT:  Actually, yeah, there is some

20   things that I am not clear about.

21             THE COURT:  Tell me what is not clear to you.

22             THE DEFENDANT:  I guess it would be -- that

23   everything you have stated, wouldn't that be predicated on

24   liability, on whether or not there is liability?

25             THE COURT:  No, in terms -- now wait.  In terms of

1  whether you have to appear or not, that is not a function of

2  liability.  The appearance obligation is mandatory.  Whenever

3  the Court says --

4          THE DEFENDANT:  Oh, we are talking about

5  appearance.  Okay.  All right.

6          THE COURT:  -- you have got to be here.  But the

7  other things that I last covered obviously would not apply

8  unless you were to be found guilty of the offense.

9          THE DEFENDANT:  Okay.  That is where -- that is

10  where the confusion.

11          THE COURT:  This business about possible

12  consecutive sentences and so on, that applies only if it is

13  consecutive to something.  And the something would depend

14  upon your being convicted of the offense or not.  So that the

15  consequences of nonappearance, for example, I have spelled

16  out.  Whether that gives rise to what sounds like a double

17  whammy or a triple whammy, that would only apply if in fact

18  you are found guilty of any of the charges that are now

19  pending against you or if you were to commit some other

20  federal offense.  Okay?

21          THE DEFENDANT:  Accept.

22          THE COURT:  All right.  Anything else that is not

23  clear to you?

24          THE DEFENDANT:  This is just dealing with the

25  appearance, right?

1    This is just dealing with the appearance.

2    THE COURT:  This is dealing with the appearance and

3    the other things that I have covered here, the other

4    conditions that apply to you that I went through, that you

5    have got to live by.  The home monitoring, you have got to

6    live by.  The circumstances under which you are free to go or

7    not to go, that you have got to live by because that keeps a

8    proper string of a -- of a mandatory nature on you during

9    this time frame.

10    THE DEFENDANT:  Okay.

11    THE COURT:  But it is not a matter of punishment

12    you understand.

13    THE DEFENDANT:  It just seems that way, but --

14    THE COURT:  To assure your appearance in court --

15    THE DEFENDANT:  Okay.

16    THE COURT: -- and the satisfaction of the other

17    conditions.

18    THE DEFENDANT:  Okay.

19    THE COURT:  Do you understand that?

20    THE DEFENDANT:  Yeah.

21    THE COURT:  Okay.  Then I will hand this back.  And

22    two things should be done.  One is to remove the condition

23    about DNA which is on the first page.  Initial that.  And

24    then sign the thing here so that -- and also you are to show

25    your location so I can in turn approve it.

1    THE CLERK:  Thanks.

2    MR. WIERSEMA:  Thank you.

3    THE COURT:  No, I -- go ahead, sign it.

4    Now I do want to set a next status date to give

5    Miss Phillips enough time for purposes of making the kind of

6    decision that I have talked about which she will be in a

7    better position to do when she on release, obviously.  And

8    that should not be too long a time frame.  I would suggest

9    perhaps about a ten-day period for the next status.  That

10   ought to be ample it seems to me for Miss Phillips to

11   determine first whether she wishes to obtain a lawyer and, if

12   so, to have made arrangements with the lawyer.  Or if her

13   decision instead is that she wants to represent herself, I

14   want to give her the opportunity to do that.

15   So, Miss Phillips, any reason that I should not

16   set, for example, a week from this coming Monday, which would

17   be the -- well, that is -- yeah, that would be the 19th as

18   the next status date?  Is that okay?

19   THE DEFENDANT:  19th of November?

20   THE COURT:  A week from Monday.

21   THE DEFENDANT:  A week from Monday.

22   THE COURT:  That I think should give you ample time

23   to consider what you want to do, make a decision.

24   THE DEFENDANT:  19th at 9:00 o'clock, is that what

25   you are suggesting?

1           THE COURT:  I am sorry?

2           THE DEFENDANT:  You said the 19th at 9:00 o'clock;

3    is that what you are suggesting?  I didn't hear.

4           THE COURT:  No, we would do it at 1:15.

5           THE DEFENDANT:  Oh.

6           THE CLERK:  No, you have a 1:15 already.

7           THE COURT:  Oh, I do.  I could do it mid morning,

8    10:30.  How is 10:30 in the morning?  Is that okay?

9           THE DEFENDANT:  10:30, that is fine.

10          THE COURT:  Okay.  10:30, Monday, November 19th.

11   And I will fill that in in that -- in the appropriate place

12   on Page 1.

13          MR. STUMP:  Your Honor --

14          THE COURT:  Wait just a minute.

15          THE CLERK:  Do you have a family member you can put

16   there?

17          MR. WIERSEMA:  Is this Chicago?

18          MR. LEVY:  Chicago.  Do you mind if I write Chicago

19   on there?

20          THE COURT:  Okay.  Do you have something else?

21          MR. STUMP:  Your Honor, I had two things.  One is

22   that I am scheduled to be at a wedding on Monday, the 19th.

23   I have co-counsel that can stand in for me.  If that is all

24   right, that is what I would like to do.

25          THE COURT:  That is fine because we will be talking

1    primarily about procedure at that point, so that is perfectly

2    satisfactory.

3         MR. STUMP:  Thank you, your Honor.

4         The other thing I was going to request from the

5    Court is I know that the --

6         THE COURT:  Sandy.

7         MR. STUMP:  Sandy.

8         THE COURT:  Yeah, go head.

9         MR. STUMP:  -- that the standard discovery

10   obligation is I think seven days for us to have a conference.

11   I would ask that we be --

12        THE COURT:  I am not imposing the obligation under

13   Local Criminal Rule 16.1 because at this point it is

14   uncertain whether Ms. Phillips is going to be represented, if

15   so by whom, or if she wants to represent herself.  So there

16   is -- I am not imposing that time frame.

17        MR. STUMP:  Yes, your Honor.  Thank you.

18        THE COURT:  Thank you.  Thank you all.

19        MR. WIERSEMA:  Judge, if I may, two things as well.

20        THE COURT:  Yes.

21        MR. WIERSEMA:  One being we are asking the Court to

22   order Miss Phillips to complete a Pretrial Services

23   interview, be that sometime -- sometime soon.  We can get to

24   it next week if needed.

25        THE COURT:  Well, I would suggest that you ought to

1    try to do it -- Monday is a holiday, obviously.

2              MR. WIERSEMA:  Yes.  We will --

3              THE COURT:  You ought to try to do it Tuesday or

4    Wednesday so that she gets that opportunity.

5              MR. WIERSEMA:  Understand.

6              THE COURT:  And Tuesday is fine.

7              MR. WIERSEMA:  Understand.  And, Judge, we can do

8    it over the telephone.

9              THE COURT:  Yes.

10             MR. WIERSEMA:  And one other thing.  Part of the

11   electronic monitoring that has been ordered now is that she

12   is going to physically take the equipment home with her now

13   and install it.  So the Court --

14             THE COURT:  Okay.

15             MR. WIERSEMA:  If the Court would remind her that

16   it is very important that she hook that up and that we will

17   tell her how to do that.

18             THE COURT:  Did you hear that, Miss Phillips?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Okay.

21             MR. STUMP:  Your Honor, I am sorry, one last thing.

22   My understanding is because we were to set this for a status,

23   we don't have a trial date set, I would ask the Court to

24   exclude the time.

25             THE COURT:  I am excluding time under 3161(h)(7)(a)

1   and (b)(4).

2             MR. STUMP:  Yes.

3             THE COURT:  Thank you.

4             MR. STUMP:  Thank you.

5        (Which were all the proceedings heard.)

6                      CERTIFICATE

7        I certify that the foregoing is a correct transcript

8   from the record of proceedings in the above-entitled matter.

9

10  s/Rosemary Scarpelli/        Date:  November 19, 2012

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25