1
2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3    UNITED STATES OF AMERICA,          )    No. 12 CR 872

4                          Plaintiff,   )    Chicago, Illinois
                                        )    July 29, 2013
5                                       )    9:30 o'clock a.m.
                                        )
6    -vs-                               )
                                        )
7    CHERRON MARIE PHILLIPS,            )
                                        )
8                          Defendant.   )

9
TRANSCRIPT OF PROCEEDINGS - STATUS
10   BEFORE THE HONORABLE MILTON I. SHADUR

11   APPEARANCES:

12   For the Plaintiff:     HON. STEPHEN R. WIGGINTON
                            United States Attorney, by
13                          MR. NATHAN D. STUMP
                            Assistant United States Attorney
14                          (9 Executive Drive
                            Fairview Heights, Illinois 62208)
15

16   For the Defendant:     MS. CHERRON MARIE PHILLIPS, pro se
                            P.O. Box 802625
17                          Chicago, Illinois

18

19

20

21

22

23   Court Reporter:        ROSEMARY SCARPELLI
                            219 South Dearborn Street
24                          Room 2304A
                            Chicago, Illinois 60604
25                          (312) 435-5815

1           THE CLERK:  12 CR 872-1, USA versus Cherron Marie
2    Phillips, jury trial.
3           THE COURT:  Do you want to reflect your
4    appearances, please, for the record.
5           MR. STUMP:  Yes.  Good morning, your Honor, Nathan
6    Stump on behalf of the United States.  I also have Josh
7    Rontitsch with me, the case agent from the FBI.
8           THE DEFENDANT:  River Bey here on behalf of the
9    defendant Cherron Phillips.
10          THE COURT:  You will understand, as I have
11   explained a couple of times the last time around because of
12   the nature of the indictment and the way it is framed, I have
13   to address you as Miss Phillips.  You may think of yourself
14   in any different way that you choose.
15          But there are some important preliminaries,
16   particularly based on our proceedings on Friday, that have to
17   be addressed before I could send my good courtroom deputy,
18   Sonya Banks, down to the jury room to pick up prospective
19   jurors.
20          By the way, we don't have the standby counsel here,
21   but -- well, we will deal with that momentarily.
22          First of all, as you know, I have been solicitous
23   of your decision to exercise your claimed right of
24   self-representation.  And you will recall that for that
25   purpose I asked you a whole series of questions which were

1    aimed at confirming that you were capable of exercising that

2    right in an effective manner.  And in response to those you

3    assured me that right down the line that that was the case.

4           Then during the voir dire conference last Tuesday,

5    which had been scheduled of course so I could cover in

6    painstaking detail, the process of jury selection and the

7    procedures that would have to be followed at trial, you had

8    expressed a starkly different point of view in several

9    respects.  On that day you remember you had filed a motion to

10   dismiss the indictment because you claimed the statute was

11   unconstitutional, a motion for what you called a hearing on

12   default pursuant to Federal Rule of Civil Procedure 55, even

13   though I tried to explain to you that is a criminal -- this

14   is a criminal case to which the Federal Rules of Civil

15   Procedure by definition don't apply.  And you also filed a

16   memorandum of law that stated -- and I had it here somewhere

17   -- in part that you rescind the affirmative statement made in

18   error that she is familiar with Federal Rules of Evidence and

19   Federal Rules of Criminal Procedure.  Because our primary

20   focus during that session was on the subjects that I have

21   mentioned, we shifted back to those subjects after my brief

22   references to that filing.  But I am going to return to that

23   subject a bit later.

24          Again your performance on Friday morning has

25   re-raised the concerns that I have had about the ability to

1   do yourself justice in this serious criminal case that you

2   persist in treating as though it was a civil lawsuit that was

3   somehow capable of settlement.  So I asked my able court

4   reporter, Rosemary Scarpelli, to retrieve that segment of the

5   Tuesday proceeding.  And let me ask, what were you trying to

6   convey by your statement that you rescind the statement made

7   in error about familiarity with the Federal Rules of Evidence

8   and the Federal Rules of Criminal Procedure?  What were you

9   trying to tell us with that?

10           THE DEFENDANT:  Well, again by answering that

11  question without prejudice I was -- excuse me -- letting the

12  Court know that I was not very familiar with those books.

13           THE COURT:  Well, remember the reason that I had

14  asked you about that the first time around was to make sure

15  that you could -- you could exercise in some kind of informed

16  way your amend -- your Sixth Amendment right to represent

17  yourself because it is not an unqualified right.  It is a

18  right that depends upon some aspects.  And cases talk about

19  that.  And one of the things that of course is part of the

20  essential queries that the Court has to ask along those lines

21  is whether somebody really has the requisite familiarity.

22           And when you say, no, I don't -- so what you were

23  doing basically, as I understand what you have just said, is

24  you were trying to confirm that one of the things that you

25  had said in response to the whole series of questions that I

1     posed to you originally was something that was mistaken when

2     you said -- you referred it to as a statement made in error.

3               THE DEFENDANT:  May I ask a question?

4               THE COURT:  Sure.  You know, I have got to tell

5     you, however, it has never advanced us for you to respond to

6     one of my questions by saying, "May I ask a question?"  I

7     always try to deal with those, but that is not going to

8     deflect your having to answer the question I pose.  So you

9     tell me what your question is.

10              THE DEFENDANT:  Well, my question to you is, in the

11    -- well, my question to you is, in the event that -- wouldn't

12    someone have to have a contract or someone have to have some

13    allegiance to that particular code in order for them to be

14    knowledgeable about that?

15              THE COURT:  You don't need a contract.  I don't

16    know what you mean by "a contract."  Are you saying --

17              THE DEFENDANT:  Well, I guess it would be dealing

18    with the allegiance, meaning possibly being a member of the

19    Bar?

20              THE COURT:  No, you don't have to be a member of

21    the Bar.  That is the whole point.  The point was was because

22    you are not a member of the Bar it became necessary to

23    inquire of you whether you had areas of familiarity that

24    would have to be dealt with by somebody in your position.

25              By the way, the record should show that the standby

1   counsel has just entered the courtroom.  Just for the record

2   do you want to identify yourself, please.

3           MS. SOLOMON:  Good morning, Judge, Lauren Solomon

4   for the record.

5           THE COURT:  Thank you.  You can be seated.

6           Well, you know, Ms. Phillips, what you have just

7   established once again by this interchange is -- leads to the

8   second line of inquiry that I think last Friday's session has

9   highlighted.  During that time you not only advanced some of

10  your own skewed notions of the universe, but more importantly

11  for present purposes where you continued, with all respect,

12  to deal with quite irrelevant matters, fending off questions

13  by not responding and offering challenges of your own.

14          I don't want to multiply the examples, but remember

15  particularly your efforts, which have no legitimacy at all,

16  to challenge the indictment's framing as having been

17  instituted by the United States of America rather than the

18  supposedly proper and different term the "United States."

19  Although you will remember that when I made -- when I asked

20  you whether you read the Constitution and pointed out to you

21  that the Preamble of the Constitution, the We The People

22  part, ends by stating that the purpose is to establish the

23  United States of America.

24          Now interestingly, you know, again if you were to

25  look at the Constitution -- I guess you did before you made

1    the point -- although it says the purpose is to establish

2    this Constitution for the United States of America, if you

3    look at the text throughout they use the words "United

4    States."  United States this, United States that.  So

5    essentially what we have is a situation in which you have

6    made the subject of a kind of odd challenge something that

7    the Constitution itself does not do.  And yet you are relying

8    on something to talk about unconstitutionality.

9            Once again without multiplying further examples of

10   what is really quite disruptive conduct in terms of being

11   able to move forward, which, you know, a judge can cope with

12   by rulings of the kind that I have made throughout the case,

13   to and including last Friday, but, you know, we can't

14   tolerate that in a situation in which we have got a jury here

15   and the jury is confronted with irrelevancies rather than an

16   orderly proceeding.

17           Now you have been nonresponsive up to now as to how

18   you expect to proceed with the task of trying your case.

19   What kind of assurances can we get from you that you are not

20   going to persist in that same pattern of what is really

21   obstructionism?  What kind of promises can you give us?  And

22   what assurances can you provide that if you make promises

23   they are going to be kept?  I mean what have you done to

24   inspire confidence on this end?

25           And these questions are not meant to be posed in an

1    attacking way at all but rather out of concern for your

2    ability to protect yourself in a criminal proceeding that is

3    a very serious one.  So, you know, in response -- when I

4    tried to explain to you, you know, what an opening statement

5    is like and that it is not argument, you know, I got -- I got

6    no indication of true understanding or any aspect of that

7    that would effectively deal with the matter.  And we have to

8    prepare the -- we have to prepare the people for trial.

9            As I was doing this over the weekend in part by

10   reviewing the course of proceedings, I found once more the

11   original extraordinarily bizarre filings that you had made

12   which included, you know, the references to kind of

13   separation between you and a so-called trust and estate,

14   things from which you backed away when I ended up -- I ended

15   up saying, "What do we do with that?"  And you withdrew that.

16   And yet last Friday one of the three documents that you

17   submitted was something that returned to the absurd position

18   that the Cherron Phillips Estate/Trust is a creditor and the

19   United States is a debtor.  I mean we can't operate in those

20   terms.

21           You know, I previously learned about your actively

22   disruptive conduct in connection with your brother's drug

23   case.  I had not at all considered that as a basis for

24   rejecting your exercise of a desire for self-representation.

25   I didn't want to essentially say, well, I am going to assume

1    that you were disruptive then, that you are therefore going

2    to be disruptive now.  That is one of the things that our

3    rules of evidence don't provide.

4              But the picture that you have now presented and

5    that I went over and had to confront during this time since

6    Friday when I was doing two things, I was preparing the case

7    actively toward trial and then I had occasion to look at the

8    all the things that you have filed, and what we have is a

9    picture of what we call a recidivist, somebody who is a

10   repeat obstructionist.  And I will say that although the

11   obstructionism has taken different forms, what the system

12   doesn't have to risk is the impaneling of a jury that under

13   the law puts you in jeopardy so that you are put into a

14   position that creates a major potential for a mistrial.  Any

15   of that potential would be maybe minimized if you were acting

16   through counsel because even if clients are troublesome and

17   problematic, lawyers can be counted on to be careful in that

18   regard.

19             What I have got a real concern about and what I

20   have sought to deal with is avoiding you being what I suppose

21   could be thought of as kind of a loose cannon on the deck of

22   a vessel that is trying to ply the sea of self-

23   representation.  I just don't understand it.  I will tell you

24   for me the bottom line is that the kind of obstructionism

25   that you have continued to exhibit really undercuts your

1     ability to proceed by self-representation, although I have

2     made every reasonable effort to preserve that ability despite

3     what I have to characterize as shenanigans.

4            Now our Court of Appeals has held on more than one

5     occasion that obstructionist conduct justifies the denial of

6     an attempted exercise of self-representation.  Although it is

7     quite right that it hasn't had the occasion to deal with or

8     consider conduct of the kind that you have exhibited here --

9     that is not surprising given the nature of the conduct -- but

10    I had -- my able law clerk brought to me two cases, in

11    particular United States against Brock and United States

12    against Hines.

13           But even more poignantly my clerk turned up a

14    Fourth Circuit Court of Appeals decision of a year ago issued

15    per curiam in June 19 -- June 2012, a case called United

16    States against Brunson which is reported in the Federal

17    Appendix.  One of the judges on the panel there was retired

18    Supreme Court Justice Sandra Day O'Connor.  And in that case

19    each of three defendants had, like you, sought to represent

20    themselves.  There, as here, the Government moved for the

21    appointment of standby counsel to assist defendants if they

22    -- if they wished.  As you know, I granted that motion here,

23    emphasizing you didn't have to use the standby counsel at

24    all.  But in the Fourth Circuit case the defendants proved to

25    submit some filings that have an almost eerie similarity to

1   some of the things you have done here.

2           I am going to quote some of the stuff, and if it

3   has a familiar ring, it is understandable.  It says, "On July

4   29th and 30th, 2008 the appellants" -- that is the

5   defendants -- "filed several nonsensical pro se motions.

6   These motions were styled as a motion to dismiss pursuant to

7   Federal Rule of Civil Procedure 12" -- remember your

8   attempted invocation of the Federal Rule of Civil Procedure

9   -- "third party complaint in rem, notice and demand without

10  dishonor for discovery by interrogatory for the record" --

11  you remember some of the things that you had filed that bear

12  a sharp resemblance to that.

13          The Court went on to say, "In these voluminous

14  filings the appellants raised various nonsensical and

15  frivolous claims attacking the jurisdiction of the district

16  court."  Remember you have done that.  You said that the

17  court is without jurisdiction to deal with the thing.  And

18  they give an example of that.

19          Then they refer to the defendants there having

20  talked about a nonprofit or religious corporation or

21  charitable trust, something again that finds an echo in the

22  things that you have filed.  "The appellants insisted that

23  they were entitled to full payment and the surrender of

24  corporate surety bonds that the Government owed for

25  nonpayment of gift and estate taxes."  You remember your

1  references to the idea that somehow your estate or trust, or

2  whatever it is, is the creditor and the United States is

3  somehow the debtor that owes you something which is -- which

4  no party could essentially advance in serious objective good

5  faith.

6         And then they also refer to the fact that in those

7  cases the appellants when addressed by, there a magistrate

8  judge, one of the defendants asked for clarification whether

9  the magistrate judge was addressing the defendant or the

10  live, breathing man, claiming that he was appearing by

11  special visitation, third party intervenor.  And of course

12  once again you have done much the same thing.

13         Well, I think it would prolong the discussion

14  unnecessarily to elaborate further, although the -- when I

15  went back to the things that you have been filing here, it

16  was really startling to see the parallels in -- between this

17  situation that I am confronted with and the one that was

18  before the Court of Appeals.  And in the face of all of that,

19  the Court of Appeals for the Fourth Circuit said this:

20  "Numerous courts understandably" -- I am going to skip --

21  there are citations of cases -- "Numerous courts

22  understandably have permitted district courts to revoke a

23  defendant's pro se status prior to trial."  And they cite a

24  number of cases for that.

25         And you have left me, as I view it, with no choice.

1    I just don't see the prospect that this trial could proceed

2    in an orderly fashion without, as I say, the virtually

3    certain -- and I -- that may be an understatement -- prospect

4    that if we were to go ahead under present circumstances with

5    a trial, we would swiftly end up with a mistrial.  And that

6    doesn't serve anybody's goals.  It certainly doesn't serve

7    yours.  It doesn't serve the Government's.  It doesn't serve

8    the Court's.

9         And so both in accordance with our own Court of

10   Appeals' decisions dealing with other types of obstructionist

11   conduct and the Fourth Circuit decision dealing with

12   startlingly similar conduct, I am now going to deny your

13   effort to represent yourself and I am going to grant you a

14   limited period of time to retain counsel.  If you don't

15   designate counsel of your own choice, then we have a couple

16   possibilities.  One is that the member of the Federal

17   Defender Panel who has been designated as standby counsel,

18   Miss Weil Solomon, will serve, for which purpose I think

19   under the Criminal Justice Act you would have to make the

20   requisite financial showing.

21        I am not sure what would be the case if you would

22   refuse to do that.  But we are certainly not going to let you

23   proceed without counsel.  And so that is something that might

24   have to be looked at.  But I am going to give you, as I say,

25   a limited period of time.  You had indicated previously that

1    you had looked into the possibility of obtaining counsel, but

2    that what you had thought about didn't work out.

3              So you tell me how much time you are going to want.

4              THE DEFENDANT:  Can I just take a moment?

5              THE COURT:  Absolutely.  Absolutely.  Why don't you

6    sit down, take some time.

7              THE DEFENDANT:  Okay.  Is it possible if I could

8    just go out and use the cell phone in the hallway?

9              THE COURT:  Sure.

10             THE DEFENDANT:  I just need to take a break and

11   make a phone call.

12             THE COURT:  Sure, take a break.

13             THE DEFENDANT:  Thank you.

14        (Recess taken.)

15             THE COURT:  Yes, ma'am?

16             THE DEFENDANT:  If it please the Court, I would

17   like to have a moment to review the cases that you mentioned

18   in this -- is it possible that I could have a moment to

19   review these cases that you made and that you cited in

20   regards to -- as referring to the motions as an

21   obstructionist because I object to those -- to those

22   statements.

23             THE COURT:  Ma'am, you can object to the cases all

24   you want, but permitting you to review the cases is really

25   not a constructive aspect at all.  I have made the

1    determination -- I have looked at the case law.  It is

2    regrettable that in many ways, you know, you are -- your

3    insistence on the positions that you have taken have resulted

4    in this because I had sought to respect your determination

5    that you were going to represent yourself.  You have

6    demonstrated in more ways than one and more than amply that

7    the answer is no.

8              Now it is clear that the cases have said that they

9    have made a distinction between, for example, someone who has

10   mental illness and therefore is not in a position to be

11   competent as such.  That is an easy case.  The one that is

12   more difficult is a situation in which we do not find that

13   sort of situation and yet the person is not automatically

14   disqualified from representing himself or herself because of

15   the inability to do an effective job in that score.  That is

16   -- our Court of Appeals has said that.  Indeed the Supreme

17   Court has said that in -- a couple of times particularly --

18             THE DEFENDANT:  Is that in one of the cases you

19   cited?

20             THE COURT:  -- recently.

21             No, that is not what I am talking about.  But you

22   see this is a different situation.  This is not simply

23   because of your demonstrated inability to represent yourself,

24   which if that were all that were involved, I would not have

25   ruled as I have this morning.  The disturbing aspect is the

1  nature of your conduct.  The intransigence that has developed

2  in which your unwillingness to be responsive to the efforts

3  to enable you to do it, have been, as I say, framed in an

4  obstructionist manner.

5          You know, I don't have to give you chapter and

6  verse, but it is really extraordinarily disturbing to see the

7  things that you have filed and the total irrelevancy of so

8  many of them and the misguided nature of what you have done

9  throughout this proceeding.  So that what you are really --

10  what you have really done is essentially you have defeated

11  your own purpose by the mindset that you have brought and

12  have exhibited in this proceeding.

13          So for you to tell me can I review the cases

14  because will tell you, Judge, what the cases mean, that is

15  not going to -- that is not going to fly.

16          THE DEFENDANT:  No, sir, that is not what I was

17  implying.  That was not what I was implying, so pardon me if

18  that is the way you took it.

19          THE COURT:  What is the point of your reviewing the

20  cases?

21          THE DEFENDANT:  So that I may form a response to

22  it.  Not that I would debate or anything but just respond to

23  your statements that -- I have a right to do that, right?

24          THE COURT:  If you would respond -- would have

25  responded to the questions that were posed and the efforts

1   that were made to essentially put you into the position of

2   confirming the ability to do it, it would have been one

3   thing.  But that is not what I got.  That is not what I got

4   throughout, beginning -- you know, if you were to trace a

5   trail of the filings you have made and how extraordinarily

6   bizarre they are -- and, you know, you seem -- you seem not

7   to recognize.

8              And that is too bad you don't recognize the issues

9   that essentially have to be dealt with, and so your response

10  is to come up with nonsense.  You file -- look, back in --

11  last year one of the things that you filed was something that

12  talked about the Uniform Commercial Code and you found fault

13  with the Government in that respect and proceeded to assert a

14  right you thought that was applicable.  When I called you on

15  the fact that that really doesn't apply, you essentially

16  said, well, I recede from that and you withdrew that.

17             And lo and behold what do we get last week?  We get

18  from you an identical document which is a Uniform Commercial

19  Code statement that shows you as the -- not you, not even you

20  as creditor -- it shows the Cherron Phillips Estate/Trust as

21  the creditor and shows the United States as owing you

22  something based upon something that is not defined.

23             THE DEFENDANT:  Sir, I have to object to that

24  because that is not what the statement says.  That is not

25  what the document reads.

1        THE COURT:  I see.  I see.  Well, do I have that

2    one here?  I don't want to quibble with you, you know.  It is

3    what you call a notice of ownership, notice of acquisition.

4    You show in the UCC financing statement the Cherron Marie

5    Phillips Trust/Estate as the -- as the party.  It shows the

6    organization's name as Cherron Marie Phillips.  It shows the

7    secured party as the Cherron Marie Phillips Trust/Estate.

8    And what is -- and it's notice of ownership of all kinds of

9    things.

10        And what is shown here that the -- notice of

11    acquisition that shows a document, acquisition or abandonment

12    of secured property.  And who do you show as the borrower?

13    The United States District Court for the Northern District of

14    Illinois.  Well, as I said the other day -- and I am sorry

15    that you find this -- you may find this reference

16    inappropriate, but I see no other way to characterize it than

17    in the way that I did the other day when I referred to the

18    New Yorker's earlier practice of calling fillers to major

19    articles that occupied a half a column as the Department of

20    Clotted Nonsense.  This is clotted nonsense.  And there is no

21    winking at and no getting around it.

22        And don't tell me what the document says because

23    you have described the property that the United States

24    District Court for the Northern District of Illinois is a

25    borrower on with a fair market value of $3 1/2 million as a

1    Count/Case No. 12 CR 872, all assets deposit on account to

2    include all securities, bonds, principals, securities, real

3    and other personal property.  It is absurd.  It is absurd.

4    And so you think that you are going to persuade me that you

5    don't mean what you wrote in this document.  You wrote it.  I

6    did not.  And accordingly I have told you what the ruling is.

7         And I -- and I would like your response on the

8    question of what kind of time frame you would like in order

9    to get yourself counsel of your own choice, if you wish, or

10   if not, then counsel will be provided for you.  So tell me

11   how long you want for that.

12        THE DEFENDANT:  Sir, I would like to respond to --

13   again I would like to take the opportunity to respond to your

14   decision, if I may.

15        THE COURT:  Respond to what?

16        THE DEFENDANT:  I would like the opportunity to

17   respond to your decision, if I may.  And I would like to do

18   that in writing, if I could.

19        THE COURT:  Oh, you can respond to my -- to my

20   decision in writing if you wish and -- but I am not going to

21   treat that as extending the thing longitudinally.  You will

22   provide me with information about how soon you are going to

23   be in a position to designate counsel of your own or the

24   alternative then that counsel would be provided for you.  So

25   you respond to my question first.  And I have no problem with

1  giving you an opportunity to respond in writing, if you wish,

2  to the ruling that I have made.

3          So how much time?

4          THE DEFENDANT:  A week.

5          THE COURT:  Absolutely.  No problem.  So you have

6  until August 5th to respond on that issue.  We will set the

7  matter for status.  If you can get that in hand by the 5th,

8  we will set it for status let's say on Wednesday, the 7th, at

9  9:15:  August 7th at 9:15.  And I am making the exclusion of

10 time -- it is odd because if you look at 3161(h)(7)(A) and

11 (b)(ii), that talks about the complexity of the case.  And I

12 am not making a determination about the underlying case in

13 terms of complexity, but if you look at 3161(h)(7)(A) and

14 (b)(iv), I believe it is, it excludes time to permit a

15 defendant the opportunity to obtain counsel.  So I am making

16 that exclusion.

17         Okay.  So I will expect that you are going to file

18 something on or before the 5th, a week from today.  And we

19 have status on Wednesday, August 7th, at 9:15.

20         THE DEFENDANT:   Okay.

21         THE COURT:  Yes, Mr. Stump?

22         MR. STUMP:  Your Honor, may I have permission to

23 attend that status by telephone?  And the reason is that I

24 have a trial --

25         THE COURT:  Sure.

1     MR. STUMP:  -- the following week.

2     THE COURT:  Yeah, you will give -- you will give

3   Sonya the information about your phone number, and we will do

4   that.

5     MR. STUMP:  Thank you.

6     THE COURT:  Thank you.

7     Okay.  And, Sonya, we are in recess.

8     THE CLERK:  Okay.  This Court stands in recess.

9     (Which were all the proceedings heard.)

10                        CERTIFICATE

11     I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled matter.

13

14   s/Rosemary Scarpelli/          Date:  July 30, 2013

15

16

17

18

19

20

21

22

23

24

25