1                IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3   UNITED STATES OF AMERICA,     )  No. 12 CR 872

4                 Plaintiff,   )  Chicago, Illinois
                          )  July 23, 2013
5                        )  1:40 o'clock p.m.
6   -vs-                  )

7   CHERRON MARIE PHILLIPS,     )

8                 Defendant.   )

9

      TRANSCRIPT OF PROCEEDINGS - VOIR DIRE CONFEENCE
10       BEFORE THE HONORABLE MILTON I. SHADUR

11  APPEARANCES:

12  For the Plaintiff:  HON. STEPHEN R. WIGGINTON
                    United States Attorney, by
13                 MR. NATHAN D. STUMP
                    Assistant United States Attorney
14                 (219 S. Dearborn Street
                    Chicago, Illinois 60604)
15

16  For the Defendant:  MS. CHERRON MARIE PHILLIPS, pro se
                    P.O. Bos 802625
17                 Chicago, Illinois

18
    ALSO PRESENT:        MS. LAUREN WEIL SOLOMON, standby counsel
19

20

21

22

23  Court Reporter:        ROSEMARY SCARPELLI
                    219 South Dearborn Street
24                 Room 2304A
                    Chicago, Illinois 60604
25                 (312) 435-5815

1    THE COURT:  Miss Phillips, do you want to come up

2  here, please.

3    THE DEFENDANT:  I will stay here.

4    THE COURT:  If you want to sit at the far end, it

5  is okay with me.  Yeah, that is fine.

6    This is the voir dire conference in connection with

7  United States against Phillips, 12 C 872 -- 12 CR 872.   It

8  is scheduled to begin trial next Monday, the 29th.  The -- a

9  couple of preliminary items.  First one, how do you prefer to

10  be referred to, as Miss Phillips, or just what is a proper

11  designation?

12    THE DEFENDANT:  Before we begin actually I would

13  like to say, if I could, I would prefer to be called -- you

14  may refer to me as River.  That is --

15    THE COURT:  I am sorry?

16    THE DEFENDANT:  River Bey.  That is my -- you may

17  refer to me as River.

18    THE COURT:  I can't do that.  The reason I can't do

19  that is because the case is controlled by the way in which

20  the indictment is drafted.  So I have to refer to you by the

21  name that is in the indictment, even though you might prefer

22  a different name, because otherwise it becomes very

23  confusing.  And so that is what controls.  Sometimes

24  indictments actually have the wrong name for a person, and we

25  are stuck with that.  They may misspell the name or something

1    of that nature.  But the indictment is what controls.

2            So it is a question of do you prefer all three

3    names or just Cherron Phillips, or which?

4            THE DEFENDANT:  I could -- I again -- you may refer

5    to me as River.  You may refer to me as River Bey.

6            THE COURT:  Well, I am not going to, and you can't

7    control it, ma'am.  And there is no point in your being

8    stubborn in your resistance because there are certain things

9    that I can't control, and that is one of them.  The

10   indictment is what has decided the manner in which you are

11   referred to.  And I am being very polite to you in asking you

12   what your preference is.  But you can't pick a third

13   preference.  You can't say, "I want to be called Michele

14   Obama," you know.  You can't.

15           So let's start again.

16           THE DEFENDANT:  I would prefer --

17           THE COURT:  And the less that we have in the way of

18   this kind of nonsense, frankly, the better off we all are

19   because I want to educate you in terms of what has to be done

20   when you are going to be representing yourself.

21           THE DEFENDANT:  Sir, if it -- I would like to -- I

22   would like to enter a motion if I could right now.

23           THE COURT:  Be my guest.

24           THE DEFENDANT:  I would like to motion the Court to

25   abate today's proceedings in lieu of the motions that were

1    filed yesterday.

2              THE COURT:  What motions were filed yesterday?  I

3    didn't see them.

4              THE DEFENDANT:  Well, I have a courtesy copy for

5    yourself and for the prosecutor.

6              THE COURT:  Do you want to hand them up.

7              THE DEFENDANT:  Sure.

8              THE COURT:  Thank you.

9              THE DEFENDANT:  Do you want to give that to him,

10   please.

11             THE COURT:  Thank you.

12             Well, the first motion that I come to is a motion

13   for hearing on default pursuant to Federal Rule of Civil

14   Procedure 552(d).  Short answer to that is the Federal Rules

15   of Civil Procedure have no applicability here.  This is a

16   criminal case, and accordingly that motion is denied out of

17   hand.

18             The second thing is an affidavit in support of the

19   motion.  And because the motion is -- must necessarily be

20   denied, the affidavit will simply be taken as your proposed

21   filing, which I will of course treat as something that is

22   going to be part of the record.

23             The next one is the motion to dismiss the

24   indictment on the ground of the unconstitutionality of the

25   statute on its face and as applied.  And I see there is a

1   memorandum in support.  And, by the way, this motion is

2   really untimely in any event and would not be entertained on

3   the eve of trial.  The Court need not do that.

4          And you continue to reflect in the memorandum a

5   total misunderstanding of the provision for standby counsel

6   that is provided in the event you seek to take advantage of

7   the opportunity to consult.  But I made very plain at our

8   last hearing that you have no obligation in that respect.

9   You can simply ignore standby counsel.  It is simply an

10  available resource.

11         And the notion of you are not agreeing to abandon

12  your position in the private trust again falls in the same

13  category that I described earlier when I referred to the

14  former tradition of the New Yorker magazine in these short

15  inserts called the Department of Clotted Nonsense.

16         You have now rescinded the affirmative statement

17  made in error that you are familiar with the Federal Rules of

18  Evidence and the Federal Rules of Criminal Procedure.  Now,

19  that of course presents a difficult problem because you

20  cannot consistently with your exercise of your constitutional

21  right to represent yourself under Faretta against California

22  disavow the statements that you made and on which I relied in

23  affirming your ability to represent yourself.  It caused --

24  the one thing that I have concern about is to whether the --

25  a different ground that you have not advanced in your motion

1    ought to be a predicate for not proceeding with the trial,

2    and that is whether you need a hearing to determine your

3    competence because there is -- you know, advancing this kind

4    of argument on a continuing basis under the circumstances we

5    have here casts serious doubt on that.

6              But I won't deal with that for the moment.

7              And your -- the rest of your comments in the

8    memorandum of law are -- in candor just reflect a serious

9    misunderstanding of the procedure that is involved here.

10   When you talk, for example, "My statement that I have

11   reviewed the administrative filings before the count that was

12   submitted to settle and close the account" is meaningless,

13   frankly.  It just has no --

14             THE DEFENDANT:  On what grounds, sir?

15             THE COURT:  It just -- I am sorry.  You know, on

16   this one I make the rules.  You don't.

17             THE DEFENDANT:  No, I was just asking a question.

18             THE COURT:  Oh, go ahead.

19             THE DEFENDANT:  You said that it was -- I was just

20   asking on what grounds did you say that it didn't apply.

21             THE COURT:  What didn't apply?

22             THE DEFENDANT:  The statement you just made.  You

23   -- I guess you interrupted.

24             THE COURT:  About the Federal Rules of Civil

25   Procedure?

1            THE DEFENDANT:  I will let you continue.  Go ahead.
2   Because I think we missed each other.  Go ahead.

3            THE COURT:  I think we did.  And I think that is a
4   continuing problem.

5            Because you refer to settling and closing the
6   matter, and of course that is -- that simply reflects
7   misunderstanding of the nature of the criminal process.
8   Civil cases may be settled.  Criminal cases may not, except
9   through the mutual entry into a -- for example, a plea
10  agreement because criminal cases, as I explained to you,
11  there are two alternatives.  It is like a light switch.  It
12  is on or off.  A person either goes to trial or it is -- or
13  pleads guilty or is found guilty.  There are no in between's
14  that you refer to, for example, a settlement or as closing
15  the public obligation, concepts that have no applicability at
16  all.

17           THE DEFENDANT:  May I ask a question at this point?
18           THE COURT:  Sure.

19           THE DEFENDANT:  What makes this a criminal versus
20  civil?  Is that what you stated?  What makes it criminal?

21           THE COURT:  The fact that it is brought by an
22  indictment.  That is what makes it criminal.

23           THE DEFENDANT:  The fact that it is brought by an
24  indictment?

25           THE COURT:  An indictment, yes.  That is what

1    distinguishes criminal from civil cases inherently.

2                   THE DEFENDANT:  Are all --

3                   THE COURT:  What we have here is something that

4    reads, "The Special January 2012 Grand Jury charges that" and

5    it sets up 12 counts under the caption 12 CR 872.  That is

6    what makes it criminal rather than civil.  And there is --

7    you are not in a position to change that, indeed nor am I.

8    The criminal proceedings are brought by the Executive Branch,

9    not by the Judicial Branch.  We carry them out.

10                  And so you're continuing to reflect a -- I will --

11   I have characterized it as a misunderstanding.  I am troubled

12   by the question whether it is a deliberate misunderstanding

13   or not.  But I am not going to make that kind of finding.  I

14   think you are intelligent enough to have understood the

15   distinction and have not adhered to it.

16                  Now wait just a minute.  Well, the short memorandum

17   of law that you have prepared, as I say, reflects the most

18   fundamental misunderstanding of the notion that it is a

19   criminal case.  And so apart from its untimeliness which is,

20   frankly, just is not excusable -- we have been at this one

21   for so long that for you to be coming in on the eve of trial

22   with this sort of thing is really totally inappropriate.  But

23   I am not going to make a determination based on that.  It is

24   simply that your -- that none of the things that you have

25   said have any real relevance.

1          So we are going to go ahead with the present

2    proceeding, and I am going to continue with the things that I

3    think need to be dealt with that we had talked about at our

4    last session.  You have been furnished I understand -- well,

5    you didn't give her a copy of the proposed jury instructions?

6          MR. STUMP:  I did.

7          THE DEFENDANT:  I don't have them.

8          MR. STUMP:  Oh, you don't?

9          I have a copy.

10          THE COURT:  Let me then give you -- everybody these

11   because I had simply marked them with minor cosmetic changes

12   and edits so that it is better for you to have the one that

13   has my notations on it and that I have also included the form

14   that is given to each prospective juror in the process of

15   jury selection.  So this is your copy.

16          I have given you the red marked copy.

17          MR. STUMP:  Yes, your Honor.

18          THE DEFENDANT:  And what --

19          THE COURT:  Here is a copy for you.

20          MS. WEIL-SOLOMON:  Thank you.

21          THE COURT:  And pass one down to Miss Phillips.

22          Thank you.

23          THE DEFENDANT:  Your Honor --

24          THE COURT:  Yes?

25          THE DEFENDANT:  Before we proceed once again I

1    would like to ask you again in lieu of the motion that was

2    filed, the first motion which will be in reference to Rule

3    55, I would like to know if this is a, as you say, criminal

4    matter.

5              THE COURT:  I think that -- yes, that is true.

6              THE DEFENDANT:  And does the indictment pose a

7    charge?

8              THE COURT:  Twelve charges to be precise.

9              THE DEFENDANT:  Okay.  So does that mean that there

10   are some fine or fee involved?

11             THE COURT:  Fine or fee of what nature?  I don't

12   understand.  Fine by whom or fee by whom?

13             THE DEFENDANT:  Is there some fines or fees

14   attached to a charge?

15             THE COURT:  That isn't the way it works.

16             THE DEFENDANT:  I am asking the question.  Is it --

17             THE COURT:  I am telling you.  That isn't the way

18   it works.  When a civil case is brought, a fee has to be paid

19   to the Clerk's Office.  When an indictment is brought as

20   here, the -- there is no charge to the United States

21   Attorney's Office for having brought the proceeding before a

22   Grand Jury and for the Grand Jury to have returned the

23   indictment, which is the process that is followed.  So there

24   is no fee involved in connection with the institution of a

25   criminal case.

1           Now in terms of fine, there is the potential if a

2    case -- criminal case goes ahead and is tried and someone is

3    found guilty, the statute Congress has proscribed, that there

4    may be a fine.  There may also be a term of imprisonment in

5    connection with it.  There may also be a term of supervised

6    release that would follow any term of imprisonment.  That is

7    all proscribed by the statute.  And Congress has determined

8    what the scope is of any fine that might be entered.

9           Of course before a fine can be imposed -- the Court

10   can't simply take an arbitrary figure.  The Court might --

11   would have to consider as to a defendant who has been found

12   guilty or has pleaded guilty, the Court would have to

13   determine what that person is in a position to afford either

14   out of existing assets or out of the potential for earning.

15   And that is the place that a fine occupies in the criminal

16   justice system.

17           THE DEFENDANT:  Well, I have to say, by my

18   participation in this particular hearing could you give me

19   any assurance that it will not convey my unalienable rights

20   back into the public?

21           THE COURT:  You have an unfettered right, as I --

22           THE DEFENDANT:  Excuse me.

23           THE COURT:  -- as I described when we conducted the

24   last hearing to represent yourself.  That is the right that

25   you have in connection with a criminal charge.  You have

1    exercised that right.  And I have honored that right and I
2    have said that you may proceed to represent yourself in
3    connection with the criminal trial.  And that is your
4    entitlement.

5            I have tried to explain to you that that is a
6    difficult process for a nonlawyer.  And that is the reason
7    that I have ruled that a member of the Federal Defender Panel
8    would be there to assist you if you wish, but only if you
9    wish, as standby counsel.  That is the -- that is the meaning
10   of the word "standby" you understand, that they are there,
11   but they are not your lawyers, you are not being represented.
12   You have chosen to represent yourself and that is a decision
13   that is binding on you.  And it is binding on me for that
14   matter.  I can't -- I can't say, no, too bad, I don't think
15   that -- I am not going to honor the thing.

16           I asked you, if you remember, twice a whole series
17   of questions that are applicable in such situations to -- in
18   order to confirm the person's desire and ability to represent
19   himself or herself in a criminal trial.  I indicated that I
20   thought, as you will remember, that that was going to be
21   particularly difficult for you.  But you gave me the
22   assurances that you were capable of handling the thing
23   yourself, which is a precondition to your exercise of the
24   constitutional right.  And I have confirmed it.  I have said
25   okay.

1    THE DEFENDANT:  Can you show where there is any

2    controversy between the parties in this matter?

3    THE COURT:  Ma'am, I don't have to show that there

4    is a controversy.  What do you suppose these criminal charges

5    are?  They say you violated the law, and you are going to say

6    that you did not.  That is enough of a controversy, is it

7    not?

8    THE DEFENDANT:  Are they allegations?

9    THE COURT:  Ma'am, this is -- in candor this is

10   pointless.  If you think you are going to frustrate the

11   ability to go ahead with the trial, think again.  If I have

12   to do it in terms of the situation that I have tried to

13   avoid, which is to embarrass you hopelessly before a jury in

14   the prospect that they may -- they might decide to convict

15   you on some ground other than what they ought to convict you

16   on, that is a self-inflicted wound.  You don't seem to

17   recognize that.  You have this -- you are like this; you have

18   blinders on.  You can look only straight ahead, if at all.

19   And you are not listening to anything that I say.

20   So what is the point of your asking me questions

21   when I answer them and you don't listen?  That is -- that is

22   not a dialogue.

23   THE DEFENDANT:  Well, I am trying to get clarity

24   in regards to why a public trial is needed in the event that,

25   again, they are allegations and there is -- nothing has been

1    proven here.

2              THE COURT:  Of course not.  That is what a trial is

3    for.   If the Government doesn't prove it, you get acquitted.

4    That is what trials are.  You can't say that nothing has been

5    proved before a trial because that is what the trial is for.

6    It is to determine whether the Government can satisfy its

7    obligation to prove you guilty beyond a reasonable doubt of

8    one or more of the charges that are involved here.  That is

9    what a trial is for.

10             It is nonsense to say, well, nothing has been

11   proved.  Of course nothing has been proved.  That is because

12   we haven't had a trial yet.

13             THE DEFENDANT:  But --

14             THE COURT:  And we are going to have a trial.

15             THE DEFENDANT:  Again, but it seems before an

16   indictment is presented or, as you say, before a complaint is

17   presented, it seems that there would be some type of

18   relevance to that matter.

19             THE COURT:  Ma'am, you know, people spend years

20   going to law school and practicing law.  And you are asking

21   questions that frankly make no sense at all in the context

22   that we are dealing with.  I have tried to assist you,

23   frankly, in terms of encouraging you to consider that you

24   would be better off with counsel.  You have chosen not to.

25   But you cannot frustrate the system by choosing to represent

1    yourself and then not representing yourself.  We won't permit

2    it.

3              THE DEFENDANT:  Well, I thought I was in compliance

4    so far with everything that -- all the orders that is before

5    the Court I have been in compliance with.

6              THE COURT:  Well, that is what we are going to do

7    now in terms of setting ourselves up to begin our trial on

8    Monday.

9              THE DEFENDANT:  That is why I asked if the trial

10   was necessary because I have been in compliance with all of

11   the orders that have been --

12             THE COURT:  You have been in compliance with

13   getting ready for the trial, for the most part I should say.

14   But that is not the trial.  The trial itself is what is set

15   to begin.  All criminal cases are brought with a view toward

16   going forward toward the existence of a trial.  And that is

17   the operative -- that is the operative factor in connection

18   with a criminal case.  A person goes to trial and is either

19   convicted, if the Government satisfies its heavy burden, or

20   is not acquitted -- convicted, is acquitted by the jury

21   because the Government has failed to do that.

22             But that is -- everything focuses toward the trial.

23   And that is what we have been moving toward -- slowly, with

24   fits and starts, I must say, but we have been moving toward

25   that.  And here we are five days short of that.  And now the

1    reason for having today's session so that you could be

2    educated about the procedure with which you are not familiar,

3    and that is the purpose of today's session.

4            Now, if you are saying that you are not going to

5    cooperate in that, I am not sure what the appropriate action

6    for the Court is, but I haven't -- I haven't yet given up on

7    that, although maybe I should.  I don't know.  What --

8            THE DEFENDANT:  Again if you can assure me that my

9    unalienable rights will not be infringed upon, then --

10           THE COURT:  What do you mean by "unalienable

11   rights"?  The right to defend yourself is the one that we are

12   talking about.  And that you have and you have exercised it.

13   And I don't know what other unalienable right you are

14   referring to.

15           THE DEFENDANT:  I am -- excuse me.  Pardon me.

16           THE COURT:  That is okay.  Do you need water?

17           THE DEFENDANT:  No, I don't need water.

18           THE COURT:  Yeah, go ahead.

19           THE DEFENDANT:  It is a little dry, but I will

20   survive.

21           Again, I am objecting to the proceedings in lieu of

22   again my understanding of whether or not there is some

23   liability here.  And that is all I am asking the Court to

24   provide.  And I did that through the motion.

25           THE COURT:  What liability are you talking about?

1    I don't understand what liability you are talking about.  If
2    you are --

3              THE DEFENDANT:  Any liabilities or obligations.

4              THE COURT:  If you are tried and if you are
5    convicted, there is the potential for liability of two
6    sorts -- three sorts.  One is a prison sentence.  Another one
7    is a fine.  And a third one is if there is a prison sentence,
8    the prospect of supervised release after -- release
9    afterwards.  So those are the potential consequences of going
10   to trial.

11             If you are -- if you are successful in that the
12   Government is unable to prove you guilty by -- beyond a
13   reasonable doubt of these charges, then there is no
14   consequence, that is, you are acquitted.  That is what the
15   jury is going to decide, not I, not the prosecutor, not your
16   standby counsel who is there to assist you if you want.  But
17   that is the answer.

18             Now, I am -- I don't know what other answer to give
19   you because you don't seem to be able to grasp the ones that
20   I have given you.

21             THE DEFENDANT:  And that is why I am trying to
22   figure out at this point -- I mean --

23             THE COURT:  It is a little late for trying to
24   figure out at this point.  That has been explained again and
25   again and again.

1        THE DEFENDANT:  The obligation?  My obligations?
2    That is what -- I am saying --
3        THE COURT:  Your obligation is to be here for
4    purposes of a trial.  That is your obligation.
5        THE DEFENDANT:  And have I not fulfilled the
6    obligation prior to now?  I am just looking for, is there any
7    further liability on the plaintiff and a defendant?
8        THE COURT:  What do you mean by "liability"?
9    Liability is a consequence.  The -- you know, when you have
10   in your vocabulary words whose content you really don't
11   understand, then that is what leads to -- leads to the
12   necessary confusion of concepts.  You use "liability" because
13   -- in the sense that has no meaning in this context.
14       The potential liability that exists on the part of
15   a criminal defendant are the -- in the areas that I have
16   already described.  And they are the consequence of going to
17   trial and the Government being successful in proving you
18   guilty beyond a reasonable doubt, a situation on which you
19   had no obligation at all to offer any evidence if you choose
20   not to.  You have the right but not the obligation to offer
21   evidence.  You can simply say let the Government prove it if
22   they can.  And if they do and satisfactorily to a jury, then
23   a jury makes a decision.  I don't.  It is not my role.
24       So let me go back to the place of beginning I
25   guess.  Did you -- we asked whether you might in preparation

1    for this provide the three things that we had talked about.

2    You have had the opportunity to see the Government's proposed

3    jury instructions.  Have you conceived any additions to that

4    or objections to whatever the Government's jury instructions

5    are?  There would be a conference to talk about instructions

6    in any event.  But if you have -- if you have any to offer to

7    supplement what they have done, if you have any objections,

8    those can await the actual jury instruction conference which

9    will come at the end of the trial.

10           So my question is, have you looked at those and

11   have you decided whether you do or do not want to come up

12   with any other or added instructions?

13           THE DEFENDANT:  I have not considered these

14   documents because I have not seen them.

15           THE COURT:  No, no, wait.  You did get them.

16           THE DEFENDANT:  I am just getting them now.

17           MR. STUMP:  Your Honor, if I can interject.

18           THE COURT:  Yes.

19           MR. STUMP:  I apologize.  When we were in court

20   last week --

21           THE COURT:  Yes.

22           MR. STUMP:  -- I had handed up to your Honor a copy

23   and I also had a copy that I handed to Miss Phillips.

24   Somehow I think that copy ended up back in my stack.

25           THE COURT:  Oh, really.

1          MR. STUMP:  So if she needs additional time --

2          THE COURT:  I am not -- I am not going to ask you

3    -- then I am not going to ask you -- one of the reasons that

4    we do this in advance of trial is so that we get this.  You

5    now have them with my notes that as you will see are what I

6    characterize as cosmetic.  I have not made any substantive

7    changes.  And I have not approved the Government's version.

8    I have simply marked them, for example, with things, as you

9    will note, that are -- that are punctuation and things of

10   that nature.

11         So you will have an opportunity now, now that you

12   have received it, to study those and to determine whether you

13   have any supplement that you want to provide or even

14   modifications.  You know, you may not agree with the

15   particular language that they have included in a specific

16   instruction.  And if you have anything of that nature, I will

17   be glad to entertain that as well.  But we are not going to

18   be doing that right now.  I had thought -- and I am sorry to

19   hear that you didn't get a copy of it.  But you now have it.

20   Okay?

21         Next question I had was whether you had seen -- now

22   I trust that you gave her the copy of the voir dire

23   questions.

24         MR. STUMP:  I did, your Honor.

25         THE COURT:  Did you -- okay, you saw the voir dire

1    questions that the Government came up with?

2          THE DEFENDANT:  Are they attached to this as well

3    because I didn't --

4          THE COURT:  No, they are separate.

5          THE DEFENDANT:  They might have been in that same

6    stack.

7          MR. STUMP:  You know, these were all provided in

8    court when they were handed up to the Court.  I have a copy

9    that I just pass to her right now.

10         THE COURT:  Once again those are questions that are

11   asked of prospective jurors in terms of determining whether

12   any party wants to object to a particular juror serving so

13   that we get answers by the prospective jurors to these voir

14   dire questions.  If you have any that you would suggest that

15   would be asked of prospective jurors for that purpose, I

16   would like to have your suggestions in that regard, and of

17   course sometime before the end of this week so that I have

18   everything from each side in that regard.

19         If you have a problem with any of the proposed

20   questions that are included in that, I would also want to

21   know about that so that I can consider whether those should

22   be questions addressed to the jury or not. You may want to

23   have, for example, something similar but with different

24   language.  And I am perfectly willing to entertain that.  I

25   do always.  And so I would say that by the -- by Friday I

1    should have, so I can work on the thing over the weekend, any

2    additions or modifications or objections that you may have to

3    these voir dire questions that are proposed to be asked of

4    prospective jurors.

5           So let's talk about how the jury gets selected,

6    which I told you I was going to be covering.  What happens is

7    that each side gets the opportunity to object to -- are you

8    okay?

9           THE DEFENDANT:  Yes.

10          THE COURT:  -- object to prospective jurors.  The

11   defense gets the opportunity to object, to challenge as many

12   as ten prospective jurors.  The Government has the

13   opportunity to object, to challenge as many as six

14   prospective jurors.  And that can be done on any ground or no

15   ground at all, with two exceptions.  One is no one can be

16   challenged because of that person's race or color.  The other

17   one is that nobody can be challenged in that fashion because

18   the person is a man or because the person is a woman.  But

19   outside of that, challenges are not limited in any respect,

20   except in the total number.

21          Now if in the course of questioning the juror --

22   prospective jurors we get a sense that anyone is biased or

23   prejudiced or has some good cause for being disqualified,

24   that kind of excuse is not charged to either side.  In other

25   words, we would simply disqualify somebody on the grounds of

1   bias or prejudice or some other good cause.  So that the ten

2   and the six that I have talked about don't get reduced by any

3   challenges that are made based upon -- based upon good cause

4   or bias or prejudice.  And we always talk about that at a

5   side bar, which I will explain in just a couple of minutes.

6          So the process is this:  There is a large pool of

7   prospective jurors called every two weeks because we have

8   jury service that contemplates that jurors are going to be

9   called on a two-week basis, up to two weeks, although some

10  trials take longer.  And so they pick -- they are picked at

11  random from the voting lists.  When an individual case comes

12  up for trial such as your case, Sonya, my courtroom deputy,

13  calls downstairs and says we need a jury for a criminal case.

14  And they choose out of that random group a smaller group,

15  probably somewhere under the circumstances here I would --

16  somewhere I would think in excess of 40, probably 45 to 50 I

17  would guess.  And they send them up taken at random from the

18  larger random group.  And to make sure that the process in

19  its entirety is random, a computer scrambles the names and

20  that determines the sequence in which prospective jurors are

21  called.

22         So when they come up here, each of them is

23  furnished that Dear Prospective Juror letter that you have

24  gotten.  And the first 12 names on the list are called, and

25  they occupy the jury box over there.  And we ask them a whole

1   series of these voir dire questions that I talked about.  So

2   they give us not only the autobiographical information but

3   they also answer the questions.

4   And each round of jury selection before a decision

5   is made about what challenges are going to be given, we

6   always meet over here at side bar, which means it is out of

7   the hearing of prospective jurors.  And if any -- if either

8   side has a further follow-up question to ask of one or more

9   of the prospective jurors, we talk about those at side bar

10  and we will ask follow-up questions so that everybody has the

11  same information for purposes of making the selection of

12  challenges.

13  I always require that the challenges be made in

14  writing and simultaneously.  And I will explain why in just a

15  couple of minutes.  So that if, for example, you were to

16  challenge three of the original 12 people, you would write

17  down their names.  And Sonya my courtroom deputy would pick

18  up the slip that contains your challenges, pick up the

19  Government's slip.  And at that point then I announce who has

20  been challenged, and that is because we don't want either --

21  don't want the jurors to be aware that one side or the other

22  is exercising challenges.  They don't know what the source

23  is.

24  In order to protect on that, I expect that every

25  time we have one of these -- every round of selection that we

1    have, the party writes something on the -- on the thing so

2    that jurors who are pretty savvy don't see that one side has

3    handed up a blank sheet of paper and the other side has

4    handed one up with writing.  And then I announce three names.

5    And guess who has made the objection, right?  So we want to

6    make sure that each side writes something and the things are

7    handed up.

8            Now suppose that each -- suppose that each side has

9    put three names on and one of the names is common to the two

10   lists.  It wouldn't be fair to charge both sides with that

11   challenge.  And so for that purpose we play what I refer to

12   jocularly as the NCAA rules.  Are you a basketball fan?

13           THE DEFENDANT:  No.

14           THE COURT:  No?  Well, NCAA rules indicate that

15   somebody -- when the players on opposing teams tie up the

16   ball and they have got to have either a jump ball or award

17   possession, the arrow points in one direction, so that when

18   that happens, one side or the other gets possession.  And so

19   I do something that is very similar to that.  And the way I

20   would work that is very simple.  I will take -- I will take a

21   dollar bill.  And you tell me whether you want odd or even,

22   that is, whether the number on the bill is going to be odd or

23   even.  Which one would you prefer?  You are not prejudicing

24   yourself, honestly.

25           THE DEFENDANT:  Let Nathan play.

1          THE COURT:  You want him to do it.  He can't see

2     the bill.

3          MR. STUMP:  I can't see it.  I will say even.

4          THE COURT:  The bill ends in seven, which is odd,

5     and so the Government is going to get charged with the first

6     common name.  So that in the hypothetical example that I gave

7     you in which each side has exercised three challenges and I

8     read five names to the jurors in terms of who is excused, at

9     that point each one of you will think that you have been

10    charged with three and the other side has been charged with

11    two.  But that mystery is cleared up immediately because what

12    happens is that the next five names on the list are called

13    and they occupy the vacated spots.  And now they know all the

14    questions, so they have -- and they have been told, by the

15    way -- the people in the back have been told, you make notes

16    about whatever questions apply to you, so if you get called

17    up here, I am not going to ask the questions all over again;

18    instead give us all the information.

19          So we will hear from those five people.  And we

20    will once again meet at side bar.  And at that point I will

21    announce, you got stuck with three, you got stuck with two,

22    the arrow has reversed direction so that if the same name

23    shows up in another round, you get hit with that, which evens

24    the thing up.  So that is how the system works.

25          And what happens is that we go through that process

1    on a continuing basis until we finally end up with 12 people

2    that nobody has objected to.  And that is your jury.  Indeed

3    they are your judges in an important sense because they are

4    the ones who decide -- I do not -- whether you are to be

5    found guilty or not guilty of these charges.  So that is how

6    the system of jury selection works.

7            Once the jury is chosen in that way, we have what

8    are called alternate jurors.  The reason that we have

9    alternate jurors is that once a jury begins to -- that

10   somebody can get sick, for example, during the trial and we

11   don't want to be in the situation in which we have to start

12   all over again because we have only got 11 instead of 12

13   jurors.  So we choose alternate jurors.  And for the

14   alternate each side gets one challenge.

15           And there are no carryover challenges, that is, if,

16   for example, the Government has used four challenges in

17   getting to the first 12, they don't have the remaining two to

18   deal with the alternate.  Start all over again.  They have

19   only got one.  Same way if you have used up let's say eight

20   of your ten challenges with the original jurors, you don't

21   get two more plus the one in dealing with the alternate.  So

22   each side gets one challenge to an alternate, and it follows

23   exactly the same system.

24           So that is our system of jury selection.  Any

25   questions about that procedure?

1    THE DEFENDANT:  No.

2    THE COURT:  Okay.

3    MR. STUMP:  Your Honor, I had one quick question

4    about that.

5    THE COURT:  Yes.

6    MR. STUMP:  I may have missed it, but are we going

7    to receive any information about the jurors before we start?

8    THE COURT:  You are not.

9    MR. STUMP:  Okay.

10    THE COURT:  You are not.  There are views on that,

11    but, frankly, the problem with that is an obvious one I

12    think, and that is that the Government, whether it is federal

13    government or state government or a city government, has an

14    advantage over a private litigant.  They have resources that

15    are not available to the private litigant.  And I don't

16    believe that it is appropriate for anybody to get added

17    information for purposes of making what is supposed to be an

18    equal opportunity to select a jury.  So I do not permit added

19    source information to go to either side in connection with a

20    case.

21        I know some of my colleagues differ from that, but

22    I don't think that that is fair.

23        Now let's talk about something else, and that is

24    the length of trial day.  I don't know how often we have had

25    proceedings in the morning as contrasted with over the noon

1   hour.  But basically every day I have what are called status

2   calls in which I handle other cases on my calendar at 9:00

3   o'clock, sometimes 8:,45 particularly when they are people

4   from out of the City or out in the suburbs or something, they

5   do it telephonically.  And then each day I have what is

6   called a motion call in which lawyers can notice up motions

7   for the day.  But almost invariably I am in a position to

8   begin the trial day at 9:30.

9           During the morning -- the first morning we will

10  automatically have one mid-morning break.  And the obvious

11  time for that is that the first time you are dealing with

12  prospective jurors, you are looking at 12 people and it may

13  take time obviously to make a decision about whom to excuse

14  and whom not to excuse.  So we always take a break at the

15  point when we have been through with that first round in

16  which we have gotten 12 people that are the first 12 people

17  who have given us all the information about themselves.  So

18  we have that break.

19          And every other trial day we have a mid-morning

20  break typically, and we wind up somewhere in the range of

21  noon to 12:15, 12:30, whatever it is, which is a convenient

22  time in connection with whatever witness is being examined at

23  that point, what a convenient break time.  So that occupies a

24  noon brook.  In the afternoon we also have a midday break.

25          And on the first day -- although I always caution

1   the jurors they cannot talk about the case and that is a

2   continuing caution for them, they may not use -- resort to

3   other devices, electronic or otherwise; not to talk about but

4   to learn anything about the case, on the first day I tell

5   them that the one exception is that at that mid-afternoon

6   break I expect them to confer and tell me the first time at

7   which somebody is going run into a problem, for example, with

8   commuting.  We draw jurors from a very wide radius, all the

9   way down to LaSalle and Ottawa and Peru, although I typically

10  don't keep them for trials of any length because if they have

11  to travel something like two hours plus in order to get here

12  -- and carving four or five hours out of their day doesn't

13  seem to me to be fair.

14          But almost always someone is going to end up with

15  -- for example, they have to take public transportation, and

16  taking a train at 5:00 o'clock or 5:15 is going to bring them

17  to some milk train which gets them home at an ungodly hour,

18  what I always do is to say to the jurors at that first break,

19  confer among yourselves and tell me when the first among you

20  is going to run into a problem of that nature.  Almost always

21  they typically will come back with something in the range of

22  4:45, something close to that as the -- as the end point for

23  the day.

24          And that is a rule that applies throughout the

25  trial.  It applies indeed throughout the -- when the jury

1    gets to deliberating on the last day, I don't hold them past

2    that time.  The British system, when they invented the jury

3    system, they used to deprive jurors of food and drink until

4    they came to a verdict, which was a good pressure point.  But

5    we don't do that.  And so what happens is that if jurors, for

6    example, start to deliberate and they haven't reached a

7    determination as of the ending point, they come back the

8    following morning to resume deliberations.

9            But that establishes the basic pattern for the

10   trial, the length of the trial day.  As I say, it typically

11   starts at 9:30.  And we have an hour or and an hour plus a

12   little for the noon break.  We have two, mid-morning and

13   mid-afternoon, breaks.  And then the end of the day is as I

14   have described.

15           Does either of you have any questions about that?

16           MR. STUMP:  I have one question, your Honor.  With

17   regard to the deliberations --

18           THE COURT:  Yes.

19           MR. STUMP:  -- if the jury unanimously wanted to

20   stay past the end of the normal day on -- would the Court

21   allow it or not?

22           THE DEFENDANT:  I would prefer not to pose that as

23   a -- I don't want to create undue pressure in a situation in

24   which, for example, they say, well, we would like to stay

25   because maybe we can do it, because I have a concern that

1   people may not be exercising their full deliberative powers

2   in connection with arriving at a decision if they feel that

3   they are under any pressure, even self-imposed pressure.  It

4   strikes me that that is not a -- that is not a reasonable

5   way.

6               These trials are serious business.  And the idea

7   that somehow the result could be impacted by what I consider

8   extraneous factors has never appealed to me.  And so the

9   answer to that is, no, I would not -- I don't even suggest

10  that.  I tell them at the beginning that this is going to be

11  the -- this is going to be our trial pattern and it is going

12  to operate throughout the trial, including the time of

13  deliberation.  And jurors really particularly do not quarrel

14  with that.

15              Any questions that you had about the procedure that

16  I have described?

17              THE DEFENDANT:  Well, I am just going to say I

18  don't consent to the proceedings, so --

19              THE COURT:  Well, too bad.

20              THE DEFENDANT:  Right.

21              THE COURT:  I am sorry that -- I am sorry to hear

22  that because you are going to be here.  I trust that you are

23  not going to fail to appear, because regrettably I had a

24  situation involving a defendant who had been -- had been

25  tried and convicted and had received from one of my

1  colleagues who has left the Court a three-month sentence.

2  And she unwisely took an appeal.  And the Government took a

3  cross-appeal.  And the Court of Appeals reversed and said

4  that was an insufficient sentence and accordingly ordered a

5  resentencing, which ended up with a two-year term.  And then

6  she failed to appear to serve the sentence.  And I inherited

7  the subsequent case which was based upon the Government

8  bringing an indictment for her failure to appear.

9          So, you know, people create problems for themselves

10  needlessly.  And it is a shame.  But I trust that you are not

11  going to be a scofflaw and just not show up.

12          THE DEFENDANT:  I have not indicated that.

13          THE COURT:  I understand that.  And I am not -- I

14  am not suggesting that you would.

15          THE DEFENDANT:  I had not indicated --

16          THE COURT:  I have too much respect for you to

17  think otherwise.

18          Okay.  Now let's just have as a matter of record,

19  as I understand it, you have been designated by the Federal

20  Defender Program to serve -- to be available -- I shouldn't

21  say "serve" because it is not an obligation -- as standby

22  counsel?

23          MS. WEIL-SOLOMON:  That is correct.

24          THE COURT:  Do you want to identify yourself for

25  the record.

1    MS. WEIL SOLOMON:  My name is Lauren Weil Solomon,

2    and I am a panel lawyer.

3         THE COURT:  Now you understand that Miss Phillips

4    has resisted the notion of standby counsel.  And I have tried

5    to make it plain that standby counsel is not her lawyer --

6    she understands that because she is representing herself --

7    and also that standby counsel is not here to volunteer

8    matters but rather to be a potential resource if, as and when

9    Miss Phillips believes that she wants to consult with you on,

10   for example, some technical matter or something of that

11   nature so that you would be available for that purpose.

12        So you are not in a position in which you are

13   practicing law by advising her.  You are not volunteering

14   anything.  You are simply, as I say, a passive resource in

15   case she decides that she wants to make sure of your

16   understanding of the -- primarily technical matters,

17   obviously, such as documents that may call for filing.  But

18   it is entirely up to her.

19        Do you understand that?

20        MS. WEIL SOLOMON:  I do understand that.

21        THE COURT:  Okay.  And, Ms. Phillips, I will repeat

22   to you what I have said to you from the beginning, and that

23   is that the standby counsel is here simply to be available in

24   case you decide that you want to make use of her -- whatever

25   knowledge she may have in areas.  And I would expect it would

1   probably be of a technical nature.  You are not going to

2   consult with her for legal advice because she is not going to

3   provide it.

4                   THE DEFENDANT:  Well, then should she be excused?

5                   THE COURT:  No, she is not going to be excused

6   because I don't have total confidence of your familiarity

7   with the technical procedures sufficiently to be able to

8   handle that by yourself.  If you can, wonderful, then you

9   don't call on her.  But if not, you have to have somebody who

10  is available.  And that is the purpose of standby counsel.

11                  THE DEFENDANT:  Which I have objected to already.

12                  THE COURT:  I know.  I know.  You have made your

13  record on that.  Okay?

14                  Now let me talk about -- or inquire about exhibits.

15  Do you plan to use the Elmo for exhibits, or what?

16                  MS. STUMP:  Yes, sir, I do.

17                  THE COURT:  Okay.  Now do you know -- do you know

18  what the Elmo is, Ms. Phillips?  That is a -- something that

19  causes a document to be projected on a large screen so that

20  they don't have to hand copies of the documents from juror to

21  juror and they don't have to provide a book for each juror

22  that contains the exhibits.  So that to the extent that the

23  Government has exhibits, they are going to make arrangements

24  -- and you have exactly the same opportunity.  If there is

25  anything that you want to offer in the way of an exhibit and

1    it is a document, for example, then the -- our electronic

2    guru who sets the thing up will have the machine here so that

3    you can utilize it.  And that way, as I say, you don't have

4    to provide 12 copies for juries and a copy for me, although I

5    am going to get -- I am going to get from the Government a

6    book of whatever exhibits they have so that I have my own

7    set.                    But if you would -- if you need that at

8    all, the fellow who handles that for the Court would be

9    available to assist you in that connection, show you how it

10   is used.  It is really quite simple.  You put the piece of

11   paper down on the surface and it projects the thing to the

12   jury on a large screen.  Okay?  I don't know whether you have

13   exhibits that you are planning to offer or not, but if you

14   do, that is the way that it will be handled.  Understood?

15              THE DEFENDANT:  By answering that question, again

16   will I prejudice the defendant?

17              THE COURT:  You can ask whatever questions you

18   want.  You are not satisfied with the answers but ask away.

19   I will try.

20              THE DEFENDANT:  No, I said, by answering that

21   question will I prejudice the defendant?

22              THE COURT:  Of course not.  Of course not.  Okay?

23   So you understand, though, that it will be available for you.

24   That is the point that I am making.  Just as it is available

25   for the Government.

1              Okay.

2              MR. STUMP:  Your Honor --

3              THE COURT:  Yes.

4              MR. STUMP:  -- you just mentioned you would like

5    one book.

6              THE COURT:  For me.

7              MR. STUMP:  Is that all the Court needs is just one

8    binder?

9              THE COURT:  For me.

10             MR. STUMP:  In other trials I have sometimes

11   provided a book for the court reporter, for the law clerks.

12   Is there anyone else I need to be providing a book to from

13   your staff?

14             THE COURT:  I don't know, Rosemary, do you need --

15   do you need a set?

16             THE COURT REPORTER:  I don't need to have a

17   separate set.  If I need to use it, then I can always check

18   the Judge's.

19             THE COURT:  Yes, okay.

20             MR. STUMP:  All right.

21             THE COURT:  All right.  So the answer on the Elmo

22   is yes.  So you will not contemplate providing the jurors

23   with a book?

24             MR. STUMP:  That's right.

25             THE COURT:  Good.

1          MR. STUMP:  Judge, I do intend to have a book

2     available at the witness stand.

3          THE COURT:  Yes, I understand that.

4          Okay.  So let's talk now about the opening

5     statements.  The first thing that -- the way that a trial

6     commences is with opening statements.  A defendant can

7     sometimes, if he or she wishes, waive opening statement at

8     the beginning.  Sometimes they defer opening statement until

9     after the Government has presented its proof.  But there is a

10    right on the part of each party to present an opening

11    statement to jurors.

12         Now opening statement has to be understood very

13    carefully.  An opening statement is not argument.  It simply

14    advises the jury of what is anticipated to be presented in

15    the evidence.  It is a statement -- it is a kind of

16    prediction about what the evidence is likely to show.  When I

17    am in the process of selecting jurors, I explain to them that

18    although no analogy is perfect, the one that comes closest to

19    the mark is a situation in which when you work a jigsaw

20    puzzle, there is a picture on the outside of the box that

21    contains the completed picture.  And the purpose of that of

22    course is that when you work a jigsaw puzzle, the pieces come

23    to you one piece at time, and in trying to fit them together

24    it is obviously very valuable for you to have an

25    understanding of what the completed picture is going to look

1  like.

2  The reason that is not a perfect analogy is that

3  lawyers don't always know how -- and unrepresented parties

4  don't always know how the evidence is going to come out.  So

5  that when the -- when somebody says, I expect that the

6  evidence is going to show this, that and the other thing, if

7  if turns out to be incorrect, it is different from the jigsaw

8  puzzle because the manufacturer of the puzzle knows exactly

9  what the final picture is going to look like.

10  So I always caution jurors that if and to the

11  extent the evidence doesn't come in the way in which the

12  parties had presented it in the opening statements, it is

13  their memory that counts and not what those openings

14  statements were because lawyers and parties do not --

15  unrepresented parties who are acting to represent themselves

16  do not themselves offer evidence as such.  They -- so a

17  lawyer's questions, for example, are not evidence.

18  The answers that witnesses give are evidence, but

19  the lawyer's questions are not.  So a jury is not to draw any

20  kind of inference from the way in which a question is phrased

21  or anything of that nature in order to make a judgment about

22  what the facts are.  If, for example, a question is asked and

23  the other side objects to the question and I sustain the

24  objection, the jury is not going to hear the answer.  I

25  always tell the jurors it is just as though the question was

1   not asked at all because you are going to draw any kind of

2   inference from the asking of the question.  You are not to

3   draw any inference from what you think the answer might have

4   been.  It is just as though the question had never been

5   posed.

6          Now I suspect that that aspect of the matter is

7   going to be particularly difficult for you, frankly, because

8   it is not always easy to draw the line between argument and

9   anticipation -- stated anticipation of what the evidence is

10  going to be expected to show.  My preference would be that

11  you be very careful about that because one thing that I also

12  don't want to have to do is to be riding herd on you and

13  correcting you in front of the jury because I don't want to

14  create any kind of adverse inference for the jury.  I don't

15  want them to be making a judgment based on the fact that I

16  had been correcting you in areas where you crossed the line

17  on that or any other aspect of the case.

18         So I have to rely on you to be careful in those

19  terms.  It is your decision to represent yourself.  I expect

20  that you are going to do it in the appropriate way.  But if

21  you have any questions, by the way, about whether something

22  is going to be permissible, you can ask that question.  You

23  haven't been bashful about asking any other questions today,

24  and I wouldn't expect you to be bashful on that score because

25  it may be constructive for you to get an advance heads up in

1  terms of whether something is going to be considered

2  permissible or not.

3  　　　　　The one thing that is troublesome in connection

4  with trials -- this has nothing to do with whether somebody

5  is representing himself or herself or not -- one thing that

6  is troublesome is for a jury to get a sense that somebody is

7  crossing the boundaries on a continuing basis.  I don't want

8  that to happen here.  I don't want that to happen in any

9  situation in which there are lawyers on both sides.  I

10  certainly don't want to have that happen here because I think

11  that you would be doing yourself a disservice if that were to

12  take place.  But it is up to you, you know, how you handle

13  yourself.

14  　　　　　Any other questions that you have about procedure?

15  　　　　　THE DEFENDANT:  The fact that we are being forced

16  to either go through a public trial is an issue.  That is an

17  issue.

18  　　　　　THE COURT:  You want it to be a private trial?  We

19  don't have private trials.

20  　　　　　THE DEFENDANT:  No, that is not what I am saying.

21  I am saying once again it appears that -- it hasn't been

22  established that there is any controversy between the

23  plaintiff and the defendant.

24  　　　　　THE COURT:  Oh, really?  You --

25  　　　　　THE DEFENDANT:  There again --

1    THE COURT:  Let me ask you a question.  Do you

2    agree that you filed or attempted to file a false lien and

3    encumbrances against the real and personal property of 12

4    people?  You don't agree to that or do you agree to that?

5    THE DEFENDANT:  Sir, by answering that question

6    will I prejudice the defendant?

7    THE COURT:  No, I am just trying to demonstrate to

8    you that when you say there is no controversy, the very fact

9    that you can't say, "Oh, I agree that I did that" --

10    THE DEFENDANT:  Well, there is other documentation

11    --

12    THE COURT:  -- is the best indication -- wait a

13    minute.

14    THE DEFENDANT:  Okay.

15    THE COURT:  -- is the best indication that there is

16    a controversy because you disagree with what the Government

17    is saying.  And that is what decides what a controversy is.

18    When people disagree, that is a controversy.  So your

19    question that says -- you don't prejudice yourself, by the

20    way, by disagreeing.  You are simply reconfirming that it is

21    the Government's burden to prove it and not your burden to

22    disprove it.

23    Oh, I should have asked, by the way, you did get

24    this long list of -- laundry list of people, did you not?

25    THE DEFENDANT:  That -- is that in this packet

1    here?

2            MR. STUMP:  We will do this as well, your Honor.

3    This was also provided in open court, but it may be that it

4    came back to me somehow.

5            THE COURT:  All right.  If -- this is simply for

6    purposes of telling the jury that I am going to give them a

7    laundry list of names, and if they are familiar with any of

8    them, I would like them to identify that.  Now it is very

9    possible, given the nature of the charges here and the

10   identity of some of the people, that we will have jurors who

11   will recognize names.  And what we typically do in order to

12   avoid the prospect that one juror can somehow create a sort

13   of domino effect by making a comment that will affect other

14   prospective jurors, I typically ask that those things be

15   discussed at side bar so that if a juror says, yes, I know

16   some of the names on this list, we would have them come over

17   to side bar and find out what the particulars are about that

18   to assist us in the determination whether, for example, that

19   knowledge might be prejudicial and might affect the person --

20   the prospective juror's ability to be a fair and impartial

21   juror. So that is the -- part of the process.

22           So if there are other names that you believe are

23   likely to -- A, likely to be witnesses during the trial or

24   are likely to be mentioned during the trial, even though they

25   are not witnesses -- as you can see from this laundry list,

1    if we had this many witnesses, they couldn't give name, rank

2    and serial number and get off the stand and have us occupy a

3    reasonable length of trial.  So obviously these are names

4    that to a large extent are anticipated by the Government as

5    perhaps going to be referred to or mentioned or something

6    like that.

7            So if you have anything of that nature, I would

8    also expect that you are going to provide me with that not

9    later than Friday -- let's say Friday afternoon so I get the

10   opportunity to work on the thing over the weekend.

11           Okay.  Now that is really -- let me ask you, how

12   long would you anticipate your opening statement is likely to

13   be?

14           MR. STUMP:  Your Honor, typically my opening

15   statements are short.  I don't know.  If I estimated right

16   now, I would say only about ten minutes.

17           THE COURT:  Okay.

18           MR. STUMP:  But if I -- you know, I am going to ask

19   for more than that --

20           THE COURT:  Okay.  No, I am not going to keep you

21   on the clock.  I just wanted to get some general sense.  And

22   you will be giving it?  Is your -- is your associate

23   DePodesta going to be sitting at counsel table with you or

24   not?

25           MR. STUMP:  No.  No, your Honor.  She may be filing

1    a motion to withdraw from the case simply because my office

2    is in the Southern District of Illinois.  I will be handling

3    all aspects of the trial.

4              THE COURT:  Okay.  Now let me ask you, who is the

5    case agent?

6              MR. STUMP:  That is Josh Rongitsch.  It is R-O-N --

7              THE COURT:  Wait just a minute.  Joshua R-O what?

8              MR. STUMP:  -- G-T-I-T-S-C-H.

9              THE COURT:  Rongitsch.

10             MR. STUMP:  Rongitsch.  And he is a Special Agent

11   with the FBI.

12             THE COURT:  I never knew any regular agents with

13   the FBI.  I don't know what Special Agent means in that

14   context.

15             MR. STUMP:  That is his title.

16             THE COURT:  And I know that.

17             MR. STUMP:  That is all I know.

18             THE COURT:  That is one of the Government things.

19             Now, Miss Phillips, apart from your unwanted

20   neighbor who is going to be here as standby counsel, is there

21   anybody else that you would be -- have sitting at table with

22   you?  Because I always introduce the people, you know, to

23   prospective jurors in the same way.  Now unless it is --

24   unless you have -- unless you change your mind and decide to

25   retain counsel, I don't know that anybody else would be

1    qualified to sit at counsel table with you.

2              THE DEFENDANT:  I would have someone here with me.

3              THE COURT:  Who would that be?

4              THE DEFENDANT:  I can't disclose the name at this

5    time.  I would have to confirm, but I will have someone with

6    me.

7              THE COURT:  But if that person is a nonlawyer, the

8    person really does not have standing to sit -- that is a bad

9    pun -- does not have the ability to sit at counsel table with

10   you.  A lawyer -- that is the function of lawyers.  And so

11   unless you can identify what function that person would be

12   expected --

13             THE DEFENDANT:  As a friend of the Court.  As --

14   excuse me.  As a friend of the Court they would be there as

15   my -- to assist me.

16             THE COURT:  Well, I don't know what you mean by

17   "friend of the Court."

18             THE DEFENDANT:  One who is there to assist.

19             THE COURT:  You are talking about somebody to help

20   you with documents, or what?

21             THE DEFENDANT:  They would be assisting and -- me.

22   They would be there to be my support.  They would assist me.

23             THE COURT:  You are going to have to be a little

24   more clear because I want to consider whether that is a real

25   possibility.  To assist you in what?

1            THE DEFENDANT:  In my function if I have to perform

2     -- if I am being forced and compelled to perform at a public

3     trial, then I will have assistance.  And they will assist me

4     in that matter.

5            THE COURT:  Well, you are going to have to be more

6     specific than that.

7            THE DEFENDANT:  I don't know what to --

8            THE COURT:  Nobody is going to be "carrying" you.

9            THE DEFENDANT:  Did you say carrying me?

10           THE COURT:  Yeah.  That -- you know, they are not

11    going to carry you in or out of court.  When you talk about

12    assisting you, I am not sure what you mean by that.  That is

13    what I am saying.

14           THE DEFENDANT:  Okay.  Well, I don't --

15           THE COURT:  You are not talking about a lawyer,

16    right?

17           THE DEFENDANT:  No.

18           THE COURT:  Well, I will certainly consider it, but

19    I have to have some notion because it is really quite -- it

20    is irregular.  Sometimes people have assistance, for example,

21    in the handling of documents or something of that nature.

22    And that is really kind of ministerial.  But I am not sure

23    what you are referring to.  So you think about that.  And I

24    would like to be apprized of that because I would like to

25    accommodate you if that is appropriate, but I can't tell just

1    from the blind statement, "I would like them to assist me."

2    So you are going to have to amplify that for me.

3                MR. STUMP:  Your Honor --

4                THE COURT:  Yes.

5                MR. STUMP:  -- if I could, I would like to just

6    make an objection on the record to that.  To the extent that

7    whoever she might ask for assistance would essentially be a

8    standby counsel that is not an attorney that is of her

9    choosing, in other words, when we --

10               THE COURT:  Well, I am not going to permit that.  I

11   made that clear, that is, I am not going to permit somebody

12   to perform amateur lawyering in a situation in which the

13   lawyers by definition have to be professional lawyers.  So

14   that is not an alternative that I am prepared to accept or

15   consider.  That is the reason that I wanted to get some sense

16   from Miss Phillips about what role, what function, is

17   contemplated to see whether that is appropriate.  I would --

18   I think it would be a difficult showing, but I want to hear

19   that.

20               MR. STUMP:  Yes, sir.

21               THE COURT:  Okay.  So that is where we are.  We are

22   -- just to recapitulate, by Friday I will have from

23   Ms. Phillips any proposed added jury instructions or in

24   situations in which it is proposed to have one as a

25   substitute for one of the Government's designated proposed

1   jury instructions, I would like to have that so I have

2   something for comparative purposes.  That is one thing.

3          The second thing is I expect that I will have any

4   voir questions that Miss Phillips wants to propose for asking

5   prospective jurors.  And that would also include any

6   objections that you may pose to the voir dire questions that

7   the Government has suggested and that you have been provided

8   with a copy of now so that I have an opportunity to say, "No,

9   I am not going to give that one because this objection seems

10  to me to be a sound objection."  So I would like to have your

11  views on that component as well.

12         And then the third thing is that I expect that you

13  will also be providing me with any supplement to the names

14  that are reflected in this list that has also been provided

15  to you.  And all of that, if I can have that by noon on

16  Friday, please.

17         And I think that is it for today --

18         MR. STUMP:  Your Honor, could --

19         THE COURT:  -- unless you have some other

20  questions.

21         MR. STUMP:  Your Honor, I have a few questions.

22         THE COURT:  Go ahead.

23         MR. STUMP:  And part of this is because I have

24  never tried a case before your Honor and also because I am

25  not used --

1          THE COURT:  You are bad luck.

2          MR. STUMP:  -- to this courtroom.  When we are

3    questioning a witness and we need to approach the witness for

4    a reason, do we need to ask your permission?

5          THE COURT:  To actually approach the witness, the

6    answer is yes.  You have to say, "May I approach the witness,

7    please."  If, for example, you want to furnish a document to

8    the witness for purposes of further questioning, the answer

9    is yes.

10          MR. STUMP:  All right.

11          THE COURT:  I don't adhere to Judge Grady's rule

12    which keeps people rooted to a podium, but I also don't want

13    anybody sitting in the jury's laps during the course of the

14    proceedings.  I am really very flexible about the physical

15    handling of it, but the one thing is that before you go up to

16    a witness -- and, frankly, the reason for that is so that the

17    jury will understand that people don't do that without

18    permission.

19          MR. STUMP:  Yes, sir.

20          THE COURT:  It is not so much for me, you know.

21    Okay?

22          MR. STUMP:  All right.  When it comes to making an

23    objection, do you want the objection stated on the record in

24    front of the jury or would you rather I just say "Objection"

25    and then deal with the objection at side bar?

1          THE COURT:  Well, if the objection is one that can

2     be characterized by a single word, hearsay, or something that

3     is in that category, and I want to have the statement as a

4     predicate for the objection, I don't want to have to be a

5     mind reader --

6          MR. STUMP:  Yes, sir.

7          THE COURT:  -- in that sense.

8          If it is anything that is more complex, the -- then

9     the thing to do is to ask for the potential for a side bar to

10    pose an objection.  If, for example, your argument is such

11    that it somehow involves potential prejudice to the

12    defendant, we don't want to have that exposed before the jury

13    as such.  So you interpose the objection, and I will deal

14    with them as they are tendered.

15         MR. STUMP:  Yes, sir.  Where in the courtroom is

16    the side bar?

17         THE COURT:  Right over here.

18         MR. STUMP:  All right.

19         THE COURT:  It is -- it is -- Rosemary has a

20    microphone that is over there so that people can keep their

21    voices down so that jurors can't hear what is being said, but

22    she gets it as a matter of record.  She stays in her place up

23    here and the microphone is just hooked up to her and not --

24    nothing else.

25         MR. STUMP:  Yes, sir.  One other question has to do

1   with the Elmo.

2              THE COURT:  Yes.

3              MR. STUMP:  I don't see it in the courtroom.

4              THE COURT:  Yes.

5              MR. STUMP:  Is that something I need to handle?

6              THE COURT:  You have to handle -- Joe Novak is the

7   -- and you talk -- get in touch with him.  Oh, you are not --

8   ask one of your colleagues in the U.S. Attorney's Office and

9   they will -- he is very accommodating and he will set it up.

10  He will set it up probably so that it is -- it is confronting

11  -- well, it may be there, but it may very well be over here

12  so that people's views are not blocked.  There is also

13  typically one that -- he may set up a smaller one at the end

14  of the jury box so that they may turn to that, although it

15  doesn't of course amplify as much, the smaller screen.

16             MR. STUMP:  Okay.

17             THE COURT:  And he typically -- well, no, you

18  wouldn't have to have one for me if I have gotten a copy of

19  the exhibits, so I wouldn't need a machine on the bench.

20             MR. STUMP:  And, your Honor, one last question

21  about that.  When he sets that up, is there a possibility

22  that you could -- that this courtroom might be available for

23  both parties to be able to see the technology and --

24             THE COURT:  Oh, yes, absolutely.

25             MR. STUMP:  -- learn the buttons before we start on

1  Monday?

2          THE COURT:  As a matter of fact, if you get in

3  touch with him, he will set it up before the weekend and you

4  will have an opportunity to observe it.

5          MR. STUMP:  Thank you.

6          THE COURT:  Okay.  And, Miss Phillips, that goes

7  for you as well so that, you know, if you want to see how the

8  thing operates, arrangements will be made so that both sides

9  can view that.  And he will have set it up in advance.  It is

10  not going to interfere with my call on Thursday or Friday to

11  have it here and operative.  You will just -- he will just be

12  picking an odd hour.  And I don't have -- as you know, I

13  don't have a trial going, so my schedule is flexible in that

14  regard.

15          Do you have any other questions?

16          THE DEFENDANT:  Yes.  Is it not true that a motion

17  to dismiss a case can be filed any time before a public

18  trial?

19          THE COURT:  Well, I never set in this case -- I

20  never set a deadline for the filing of motions, so I would

21  not -- I would not reject a motion on grounds of

22  untimeliness, although that is -- that is an obvious

23  inconvenience.  I would have expected that a motion, for

24  example, to dismiss is something that should have been

25  advanced earlier.  But in this instance I read the motion and

1    it was possible to rule on the motion simply by observation

2    because it reflected such a fundamental misunderstanding of

3    the concepts.  And so the answer is I did not set a deadline

4    and I am not -- I did not -- although I commented about the

5    the timing of it, I did not base my ruling on that.

6               Okay?  Anything else?

7               THE DEFENDANT:  Yes.  I would like to know by

8    volunteering in the public trial -- well, let me ask this

9    question:

10              THE COURT:  Sure.

11              THE DEFENDANT:  In reference to the petitions that

12   were submitted to the Court, have I not agreed to cover the

13   amount that was assessed in this particular case?

14              THE COURT:  What amount that you are talking about

15   that was quote "assessed" in this case?

16              THE DEFENDANT:  Based on the indictment that you

17   mentioned.

18              THE COURT:  There is no amount assessed in

19   connection with the indictment.  The indictment is a charge.

20   And if the charge is ultimately sustained, that may give rise

21   to some financial result.  But there is no financial

22   consequence that attaches to the indictment as such.  In

23   other words, if a defendant is acquitted in connection with a

24   trial, defendant doesn't to have to end up paying the

25   Government's attorney's fees, it doesn't have to end up

1    paying whatever is involved here.  So that there is no

2    financial consequence as such that attaches to the

3    institution of criminal charges.

4              THE DEFENDANT:  So what --

5              THE COURT:  Criminal charges.  If they are

6    sustained, as I told you earlier, can give rise under what

7    Congress has said to a -- to a potential fine as one of the

8    consequences.  One of a consequences of a guilty

9    determination can be a fine as well as the possibility of a

10   custodial sentence, a sentece of some prison time.  But the

11   -- but as such the bringing of a charge does not involve a

12   financial consequence.

13             Now I guess I have to modify that, but that is not

14   applicable here, and that is sometimes the Government will

15   couple criminal charges with what is called a -- seeking

16   forfeiture of some asset.  If -- for example, in a drug case

17   if the -- if a vehicle has been used in connection with the

18   distribution of drugs, the Government may move for forfeiture

19   of the vehicle or if a weapon has been used in connection

20   with some criminal offense, the Government can couple the

21   charge of the criminal offense with a request that the --

22   that the gun be forfeited.  And so the Court considers that

23   basically as well.  And indeed that is something on which

24   somebody would be entitled to a jury trial as well, although

25   most often forfeitures do not find their way into the jury

1    determination.

2            But that is not applicable here.  Nothing of that

3    sort has been advanced in this case.

4            THE DEFENDANT:  So the defendant in this case has

5    been charged, is that true?

6            THE COURT:  Oh, yes, that is true.

7            THE DEFENDANT:  So -- and if the charges have been

8    assessed, if you will, based on the indictment or the charge

9    and --

10            THE COURT:  Don't use "assessed" because that is a

11    word that has -- that has a meaning in law, and it doesn't

12    apply here.

13            THE DEFENDANT:  It doesn't apply here.

14            THE COURT:  Assessment is like if taxes are

15    assessed.  But there is nothing that -- in this that

16    constitutes an assessment.  Okay?  So it is a matter of

17    vocabulary, but it is an important one.

18            THE DEFENDANT:  Okay.  Well, have I not agreed to

19    cover the charge?

20            THE COURT:  I don't what you have agreed to, but

21    you are obligated to stand trial on the charges that are

22    involved here.  Whether you agree or not, the bringing of

23    charges obligates you to be here for purposes of responding

24    to the charge.  And you can respond by not responding.  In

25    other words, you can respond by saying, "Go ahead and prove

 1   if you can, people --

 2              THE DEFENDANT:  Okay.

 3              THE COURT:  -- but I don't have any obligation."

 4              THE DEFENDANT:  But that is just it, I have

 5   responded to the charges.

 6              THE COURT:  But not -- not really.  And so that is

 7   where we are.  We are -- whatever objections you have

 8   interposed have been resolved.  And so that is the reason

 9   that we are going ahead to trial.

10              MR. STUMP:  And, your Honor, of course Miss

11   Phillips and I have talked outside of court about her rights

12   under Rule 11 and -- in other words, she does not have to go

13   to trial.  But there is an -- there is an out for her under

14   Rule 11.  And I don't expect the Court to be involved in

15   that, but --

16              THE COURT:  That is true --

17              MR. STUMP:  I am putting that on the record.

18              THE COURT:  -- I am not involved in that.  That is

19   not part of the Court's function.

20              MR. STUMP:  Your Honor, I do have a concern about

21   the defendant representing herself in this regard:  I am

22   concerned that she -- the -- that this line about the Federal

23   Rules of Civil Procedure and default judgments and

24   assessments and that sort of thing, while you and I

25   understand perfectly well that it has no place here, the jury

1    may be confused.

2          THE COURT:  The jury is not going to hear it.  That

3    is all.  The jury is not going to hear irrelevancies such as

4    the Federal Rules of Civil Procedure.  They will not.  And my

5    goal, frankly, is not to have to tell a jury that issues that

6    Miss Phillips is raising have no rational relationship to a

7    criminal charge.  I don't want her to be prejudiced by

8    raising issues that are going to necessitate court ruling

9    that makes her look bad in that regard.  That is not my goal.

10   My goal is exactly the opposite.  And that is what I have

11   been trying to strive at from the beginning, but she has been

12   not receptive to that.  And there is nothing I can do about

13   that, frankly.

14          MR. STUMP:  Yes, sir.

15          THE COURT:  I mean, you know, it is -- she is a

16   grown woman and she has made that choice.  And all the urging

17   in the world wouldn't succeed I think in doing that.  But the

18   short answer is that she is not going to be in a position to

19   override the law as it is in connection with criminal cases.

20   The Court is anticipating following the criminal law as

21   evidenced by the Criminal Code, Federal Rules of Criminal

22   Procedure, Federal Rules of Evidence.

23          Okay?

24          MR. STUMP:  Yes, sir.  If you would permit me one

25   other thing that just occurred to me --

1           THE COURT:  Yeah.

2           MR. STUMP:  -- while we are here.  In the event

3    that the defendant decides that she would like to testify in

4    her own defense, does the Court have a plan for how she would

5    do that?

6           THE COURT:  Yes.  I should explain that I will --

7    before a defendant chooses not to testify, I always inquire

8    of a defendant to make sure that the defendant knows that she

9    has an absolute right to testify or not to testify; and that

10   if the decision is not to testify, the jury is expressly

11   instructed that they may not consider at all the fact that a

12   defendant has chosen not to testify.

13          Now if the choice is made to testify, then what we

14   are going to have to do in anticipation of that is to get a

15   -- we are going to have to get what essentially amounts to an

16   -- I characterize it as a game plan, as essentially an

17   outline of areas on which she would plan to inquire.  And I

18   have no objection to her interposing the question and then

19   providing an answer to the question rather than having

20   somebody there to pose the question.  That could be of course

21   -- and it is her choice if she decides on wanting to

22   testify -- and that she doesn't want there to be basic

23   confusion between questions and answers, she can, if she

24   wishes, enlist the offices of the standby counsel simply to

25   pose the questions that she herself has prepared so standby

1    counsel doesn't have any -- any flexibility or leeway.  She

2    is simply bound to ask the questions exactly as Miss

3    Phillips has posed them so that Miss Phillips on the stand

4    can respond to the questions.

5           But again that is her call.  I am not urging that.

6    I am not requiring it certainly.  But it is something that

7    Miss Phillips may want to consider if her decision is that

8    she wishes to testify and wants to have the thing presented

9    to the jurors in the typical question-and-answer basis in

10   which the same person who asks the question is not the same

11   person who answers it.

12          MR. STUMP:  Yes, sir.

13          THE COURT:  It is entirely her call.  Okay?

14          So we are -- we are in -- we are adjourned, unless

15   there are further questions.  And I will expect to get

16   materials that I have talked about by noon on Friday.  And we

17   will take it then for Monday.  Okay?

18          MR. STUMP:  I apologize, your Honor, I had one

19   other question that I was bound to ask you, that is, that I

20   have a witness who is unavailable until Thursday morning.

21   She will be -- she is a victim witness, and she will be out

22   of town Monday, Tuesday and Wednesday.  I think that it is

23   likely we will still be in trial on Thursday, but in the

24   event that I run out of witnesses sometime on Wednesday and

25   there is a reasonable amount of time there, how would the

1  Court react to a motion either to recess until the following

2  morning or --

3         THE COURT:  Oh, that is -- scheduling like that is

4  never a problem.  I mean, you know, I have heard your

5  estimate which necessarily has to be a horseback estimate of

6  how long you are anticipating the Government's case in chief

7  is going to take.  I have not asked Miss Phillips because she

8  may not have really resolved this herself to make a judgment

9  about how long she would expect any defense aspect of the

10  case to take in terms of trial.  She does not have, as I have

11  said several times, any obligation to any defense at all.  It

12  is entirely her call.

13         But to the extent that the defense does anticipate

14  providing a defense, I do expect to get some handle early on,

15  if only for purposes of planning in terms of what the jury's

16  anticipation is.

17         I guess I should have mentioned one other thing in

18  that regard, and that is -- that is connected with my having

19  advised you about the length of each trial day, and that is

20  that if on the final day of evidence we have occupied so much

21  of the day that having a jury instruction conference after

22  that plus the obligation of some secretary to have to edit

23  the instructions for the following morning would be a real

24  problem, my practice is to give the jury the following day

25  off so that we can occupy ourselves with the jury instruction

1   conference and any edits that have to be made to jury

2   instructions on that intervening day.  So the jury returns

3   9:30 the following morning.

4               If on the other hand the evidence proves out -- and

5   this we have to play by ear because we don't know when it is

6   going -- how it is going to happen.  If the evidence part of

7   the trial ends let's say at noon on the day, well, my

8   practice is to let the jury off for the balance of the day

9   because that would give us enough time, I hope, to have our

10  jury instruction conference at that point and then have

11  whatever edits are made in order to do that.  So it is really

12  going to be a function of how the trial schedule pans out.

13              Okay?

14              THE DEFENDANT:  I have one more question.

15              THE COURT:  Sure.

16              THE DEFENDANT:  Are you available for another

17  conference between myself and Nathan for Friday?  Would you

18  be available for that?

19              THE COURT:  For a conference of what now?

20              THE DEFENDANT:  Another pretrial conference for

21  myself and Nathan?  Would you be available on Friday for

22  that?

23              THE DEFENDANT:  I don't have my schedule, but I am

24  sure that I would -- I would be able to work some time

25  appropriately, sure, for that.

1    THE DEFENDANT:  Are you okay with that, Nathan?

2    MR. STUMP:  Oh, I will be available.

3    THE DEFENDANT:  Okay.

4    THE COURT:  That is fine.

5    THE DEFENDANT:  Would you prefer the morning or the

6  afternoon, sir?

7    (Brief pause.)

8    THE COURT:  Sonya, what does Friday look like?

9    That is just going to be -- the Spearman is just

10  scheduling, right?

11    THE CLERK:  Right.

12    THE COURT:  Well, I will be able to work something

13  in if need be.  I have an anticipated sentencing, as I

14  suspected might be the case, scheduled for 2:00 o'clock, but

15  I could put that over if need be.  And so that I would be

16  available I think in the -- in the afternoon on Friday if

17  that is the best bet.

18    THE DEFENDANT:  Okay.

19    THE COURT:  Okay?

20    Yeah, thank you.

21    THE CLERK:  All right.

22    THE COURT:  All right.  Thank you very much.

23    MR. STUMP:  Thank you, your Honor.  So that date

24  and time will just come by order or minute entry, or is it to

25  2:00 o'clock on Friday?  Did we decide on a time?

1         THE COURT:  No, you --

2         THE DEFENDANT:  No, he says he has a 2:00 o'clock.

3         THE COURT:  You confer and then let Sonya know.  So

4   that is what you have got to do.

5         MR. STUMP:  Oh, all right.

6         THE COURT:  You don't need an order from me.

7         Okay?  Thank you all.

8         MS. WEIL SOLOMON:  Thank you, Judge.

9      (Which were all the proceedings heard.)

10                      CERTIFICATE

11      I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled matter.

13

14   s/Rosemary Scarpelli/          Date:  July 29, 2013

15

16

17

18

19

20

21

22

23

24

25