IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 1:12-cr-872 |
| CHERRON MARIE PHILLIPS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Defendant Cherron Marie Phillips, also known as River Tali Bey, was charged with 12 counts of retaliating against a federal judge or federal law enforcement officer by false claim, in violation of 18 U.S.C. §§ 1521 and 2 (Doc. 1). Following a jury trial, Phillips was convicted of 10 of 12 charges. Defendant Phillips is now before the Court, by and through appointed counsel, seeking a judgment of acquittal (Doc. 187) and a new trial (Doc. 188).[1] The Government has filed a combined response in opposition (Doc. 193).

## Relevant Procedural History

The indictment lodged against Defendant Cherron Phillips (Doc. 1) alleged that in March and April of 2011, Phillips, with some assistance from others, knowingly filed or attempted to file, and/or aided and abetted the filing of false liens and encumbrances against the real and personal property of 12 officers and employees of the United States—federal judges, prosecutors and law enforcement agents. The liens were allegedly filed with the Cook County Recorder of

---

[1] Counsel was appointed to represent Defendant, over her objections and desire to proceed *pro se* (*see* Doc. 116).

Deeds in retaliation for the federal investigation and prosecution of Defendant's brother, Devon Phillips. Each lien claimed that the named official owed Devon Phillips $100 billion.

Phillips initially declined appointed counsel and proceeded *pro se* (*see* Doc. 23). On July 16, 2013, standby counsel was appointed in advance of the July 29, 2013 trial setting (Docs. 42, 43). On July 28, 2013, attorney Lauren Weil Solomon, entered her appearance (Doc. 60). On the morning of trial, July 29, 2013, just prior to the selection of the jury, Judge Shadur delayed the trial and rejected Defendant's decision to represent herself (*see* Doc. 62). When Defendant failed to secure counsel by a prescribed deadline, attorney Solomon was appointed as counsel of record to represent Defendant at trial.

The case was reassigned from Judge Shadur to Judge Mihm (Doc. 68). Defendant continued to object to being represented by counsel and attorney Solomon was re-designated as standby counsel; trial was reset to December 16, 2013 (Doc. 86). The Court subsequently determined that Phillips could not appropriately represent herself and attorney Solomon was again designated as counsel of record (Docs. 104, 115, 116). Trial was reset to June 16, 2014 (Doc. 106).

Defendant was ordered to undergo a competency and insanity evaluation (Docs. 92, 108). Psychologist Dr. Diana S. Goldstein found Phillips competent to stand trial, in terms of her cognitive capabilities and emotional status; Defendant's claimed inability to understand the reason she was in trouble was deemed due to willful rejection of American laws, not irrational or illogical thinking associated with severe mental illness or cognitive impairment (Doc. 108, p.

27).² No major mental illness was found, but based on demonstrated traits Dr. Goldstein offered a "provisional" diagnosis of Schizotypal Personality Disorder³ (Doc. 108, p. 25).

On May 19, 2014, the Court of Appeals for the Seventh Circuit designated the undersigned district judge in the Southern District of Illinois to take over the case (Doc. 117). During a May 19, 2014, telephone status conference, the Court observed that the Government had filed a notice of Rule 404 evidence (Doc. 40), which Defendant had never challenged; consequently, a June 2, 2014, deadline was set for motions in limine and Defendant's response to the Government's Rule 404 evidence (Doc. 120). A final pretrial conference and jury instruction conference was held on May 21, 2014, and the June 16, 2014, trial setting was reconfirmed (Doc. 125).

The Government's motions in limine (Docs. 127, 136) were granted, precluding Defendant from arguing ignorance of the law, and barring Dr. Goldstein from testifying (Doc. 144). The Court observed that ignorance of the law is no defense (*see United States v. Costello*, 666 F.3d 1040, 1048 (7th Cir. 2012)), and Phillips could be found guilty if she merely had reason to know—if a reasonable person with the same information would have known the liens were false (*see United States v. Williams*, 746 F.3d 987, 994 (10th Cir. 2014)). Relative to using Dr. Goldstein as an expert, the Court concluded: (1) Defendant had not provided written notice of expert evidence of a mental condition, as required by Federal Rule of Criminal Procedure 12.2(b); (2) other than when, because of mental disease or defect, a defendant is unable to

---

² Although the psychologist's lengthy report remains sealed, Defendant's motion quotes from the evaluation (Doc. 188, pp. 13-14).

³ Schizotypal Personality Disorder is described as " 'a pervasive pattern of social and interpersonal deficits marked by acute discomfort with, and reduced capacity for, close relationships as well as by cognitive or perceptual distortions and eccentricities of behavior.' " (Doc. 108, p. 25 (quoting Diagnostic and Statistical Manual)).

appreciate the nature and wrongfulness of her acts, mental disease or defect is not a defense (*see* 18 U.S.C. § 17(a)); and (3) the introduction of such evidence was not relevant and would confuse the jury.

Defendant's motion in limine aimed at the Government's Rule 404 evidence (Doc. 129) was denied (Doc. 145). In pertinent part, the Court ruled the following would be permitted to be introduced at trial:

1. Evidence that, during the federal prosecution of her brother in the United States District Court for the Northern District of Illinois, Defendant Cherron Phillips was repeatedly disruptive in the courtroom, filed numerous documents in the case, including a "Summons to Appear," and ultimately became the subject of an Executive Committee Order; and

2. Evidence that in March 2011, Defendant – using the names "River Tali" and "Cherron Phillips El" – caused a package to be delivered to the Chief United States District Judge for the Northern District of Illinois that included (among other things) (a) a "Common Law Bill of Indictment" calling for the arrest of the Chief Judge; (b) an "Administrative Notice and Demand" authored by the defendant seeking a "remedy for the law I am currently accused of violating"; and (c) a "Commercial Affidavit" setting forth the necessary characteristics of a valid commercial lien.

Following the Court's rulings on the parties' motions in limine, Defendant filed a Rule 12.2 notice of expert evidence of a mental condition (Doc. 147), and a belated response to the Government's motion in limine regarding Dr. Goldstein (Doc. 148). Defendant contended that Dr. Goldstein's testimony only became necessary when the Court denied Defendant's motion to limit the Government's Rule 404(b) evidence. Defense counsel further asserted that she was not converted from standby counsel until April 4, 2014; Phillips had not been communicating with counsel; and she was not aware of the Government's notice regarding 404(b) evidence until the May 21, 2014, final pretrial conference. The Court reconsidered the issue, but found the notice untimely, and otherwise stood by its prior rulings (Doc. 150).

Trial commenced on June 16, 2014, as scheduled. At the conclusion of the Government's case, Defendant moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a), but the motion was denied (Docs. 165, 166). Defendant did not present any witnesses and a renewed motion for judgment of acquittal was denied (Doc. 165). The jury returned a verdict of guilty on 10 of 12 counts (Docs. 167-178).

On July 2, 2014, Defendant timely filed her motions for judgment of acquittal (Doc. 187) and motion for new trial (Doc. 188), to which the Government filed a response in opposition (Doc. 193).

## Analysis

### Applicable Standards of Review

Defendant Phillips moves for a new trial pursuant to Federal Rule of Criminal Procedure 33(a), based on the Court's denial of her motion in limine to preclude evidence under Federal Rule of Evidence 404(b), and the exclusion of her proffered expert witness, psychologist Dr. Diana S. Goldstein (Doc. 188). Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED.R.CRIM.P. 33(a); *see also United States v. Berg,* 714 F.3d 490, 500–01 (7th Cir. 2013). When a defendant seeks a new trial because of an alleged trial error, the Court will grant a new trial if there is a reasonable possibility that the error had a prejudicial effect upon the jury's verdict. *See United States v. Van Eyl,* 468 F.3d 428, 436 (7th Cir. 2006). Such motions are granted "sparingly ... only in those really exceptional cases." *United States v. Reed,* 986 F.2d 191, 192 (7th Cir. 1993).

Phillips also moves for a judgment of acquittal and new trial pursuant to Federal Rule of Criminal Procedure 29(c), challenging the sufficiency of the evidence supporting her conviction

(Doc. 187). Phillips argues that, had the Court not precluded her proffered expert witness, psychologist Dr. Diana S. Goldstein, there would have been evidence of her mental state that would have been a defense to the charges, depriving the Government of sufficient evidence to convict. "A defendant who makes an insufficient evidence claim 'faces a nearly insurmountable hurdle.' " *United States v. Tucker,* 737 F.3d 1090, 1092 (7th Cir. 2013) (citing *United States v. Morris,* 576 F.3d 661, 666 (7th Cir. 2009) (quoting *United States v. Pulido,* 69 F.3d 192, 205 (7th Cir. 1995))). When considering a motion for judgment of acquittal, a court must view all facts in the light most favorable to the Government and determine whether any rational trier of fact could have found that the Government proved the essential elements of the crime beyond a reasonable doubt. *United States v. Torres–Chavez,* 744 F.3d 988, 993 (7th Cir. 2014).

Because Phillips' two motions are intertwined, they will be analyzed simultaneously to determine whether there was error impacting the sufficiency of the evidence, and any prejudicial effect on the jury's verdict or Phillips' substantive rights. Because the Court finds no errors in its prior rulings warranting a new trial or entry of judgment of acquittal, the Court adopts its prior analysis and conclusions (Docs. 144, 145, 150) and will focus its analysis on the few new points made by Defendant Phillips.

**The Offense**

The charged offense provides the foundation for analyzing the post-trial issues. Defendant Cherron Phillips was charged with 12 counts of violating 18 U.S.C.A. § 1521, retaliating against a federal judge or federal law enforcement officer by false claim—in this situation, false liens. Section 1521 makes it a crime to file or attempt to file in any public record "any false lien or encumbrance against the real or personal property of an individual described in

[18 U.S.C. § 1114[4]], on account of the performance of official duties by that individual, knowing or having reason to know that such lien or encumbrance is false or contains any materially false, fictitious, or fraudulent statement or representation…." 18 U.S.C. § 1521.

Section 1521 requires that a defendant acted knowingly, making it a general intent crime, as opposed to a specific intent crime. *See generally United States v. Stewart*, 411 F3d 825, fn. 2 (7th Cir. 2005); *United States v. Altier*, 91 F.3d 953, 957 (7th Cir. 1996).

### **Rule 404(b)Evidence**

Federal Rule of Evidence 404 provides in pertinent part:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

A four-part test is used in analyzing such evidence; Rule 404(b) evidence is admissible if:

1. the evidence is directed towards establishing a matter other than the defendant's propensity to commit crimes charged;

2. the other act is similar and close enough in time to be relevant;

3. the evidence is sufficient to support a jury finding that the defendant committed the other act; and

4. the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Causey*, 748 F.3d 310, 317 (7th Cir. 2014). *See also* FED.R.EVID. 403 (Preclusion of Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons).

---

[4] Section 1114 pertains to "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services)." 18 U.S.C.A. § 1114.

**Categorizing the Evidence**

The Government's notice of 404 evidence described three categories of evidence sought to be introduced; only the following two categories are relevant to Defendant's post-trial motions:

1. Evidence that, during the federal prosecution of her brother in the United States District Court for the Northern District of Illinois, the defendant was repeatedly disruptive in the courtroom, filed numerous documents in the case, including a "Summons to Appear," and ultimately became the subject of an Executive Committee Order[; and]

2. Evidence that in March 2011, the defendant – using the names "River Tali" and "Cherron Phillips El" – caused a package to be delivered to the Chief United States District Judge for the Northern District of Illinois that included (among other things) (a) a "Common Law Bill of Indictment" calling for the arrest of the Chief Judge; (b) an "Administrative Notice and Demand" authored by the defendant seeking a "remedy for the law I am currently accused of violating"; and (c) a "Commerical [sic] Affidavit" setting forth the necessary characteristics of a valid commercial lien.

(Doc. 40).

**Disruptive Conduct**

Defendant takes issue with the Court allowing the introduction of certain acts—her disruptive conduct—in connection with the criminal case against her brother, *United States v. Devon Phillips*, Case No. 06-CR-778 (N.D. Ill. 2011). All of the disruptive acts occurred prior to the time the liens at issue in this case were lodged.

Defendant asserts that none of the evidence in this first category of evidence goes to prove the elements of the offense, and the disruptive acts were too remote in time. As discussed in the Court's prior order (Doc. 145), the specifics of Defendant's activities during her brother's trial, documents filed during that case, and the Executive Committee Order, were relevant and admissible, as they go toward proving the Defendant filed false liens or encumbrances on account of the victims' performance of official duties, making it more than mere propensity

evidence.  Defendant's assertion that her actions during her brother's trial are too remote to the filing of the liens at issue in her case is specious.  Section 1521 does not place a time limit between the official's act(s) that motivated the defendant to file the false lien, so there is no reason to exclude her behavior during her brother's trial.

The Court recognized that Section 1521 is a "cause and effect" offense; "[t]he gist of the Government's case is that the liens and encumbrances at issue were the culmination of a series of acts and behavior beginning when Defendant's brother was tried in *United States v. Devon Phillips*, Case No. 06-cr-778 (N.D.Ill.)" (Doc. 145, p. 5).  The February 5, 2010, Administrative Notice and Demand (Case No. 06-cr-778, Doc. 136) establishes that Defendant interjected herself into her brother's trial—a trial she considered to be a crime itself—and that she was in search of a "remedy."  Defendant warned that there could be a future adverse action.  The January 14, 2011, Writ of Quo Warrant was in a similar vein.  The Court's Executive Committee Order restricting Defendant's access to the courthouse could be viewed as fuel for Defendant's perception that she and her brother were subjected to an injustice that warranted a remedy.  The February 18, 2011, post-sentencing Summons to Appear addressed to Judge Holderman refers to penalties of perjury and arrest.   All of the disruptive conduct evidence goes to the "performance of official duties" element of the offense, as well as to motive, intent, preparation and absence of mistake.

Defendant correctly observes that the Court did not specifically weigh the probative value of the evidence of disruptive conduct compared to the possible prejudice to Defendant, consistent with Federal Rules of Evidence 403 and 404.  Rather, the Court's initial ruling was provisional, and the Court explained that "such evidence may be circumscribed at trial pursuant to Rule 403,

<u>if</u> the amount and nature of the details becomes too prejudicial, or the Government's evidence becomes cumulative." (Doc. 145, p. 6 (emphasis in the original)).

Defendant ignores the fact that her motion in limine did not identify any prejudice or otherwise offer specific analysis of how the probative value of the disruptive conduct evidence was outweighed by prejudice. Aside from noting the Rule 403 principle, Defendant offered only a general assertion: "In this case, the probative value of the evidence is minimal and the danger of unfair prejudice is great." (Doc. 130, p. 6). In any event, for the reasons already discussed, the probative value of the evidence outweighs any prejudice to Defendant. Furthermore, at trial, certain inflammatory phrases were redacted from the documentation and other measures were taken so as to minimize any prejudice to defendant.

Defendant's assertion to the contrary, the fact that Defendant was not denying her intent does not wholly obviate the Government's burden of proving its case—it is not as though Defendant had formally stipulated to any of the elements of the case. *See United States v. Gomez*, __F.3d __, 2014 WL 4058963, *8 (7th Cir. Aug. 18, 2014) (The degree to which a fact is contested is important to the Rule 403 balance; if a defendant stipulates to a fact, additional evidence may have little probative value.). Defendant is otherwise mistaken in attempting to dictate the minimum amount of evidence from which the jury could connect the dots to sufficiently establish the Government's burden, at least in this situation where the evidence was not particularly cumulative. It was Defendant's own misconceived legal theories that caused the multi-step process leading to the liens.

This Court finds no error in denying Defendant's motion to preclude evidence of Defendant's disruptive conduct.

**The Package of Documents**

The second category of Rule 404 evidence is a 50-page package of documents delivered to Chief Judge Holderman in March 2011 (Government's Exhibit 50). The Government highlighted three particular documents: "(a) a 'Common Law Bill of Indictment'" calling for the arrest of the Chief Judge; (b) an 'Administrative Notice and Demand' authored by the defendant seeking a 'remedy for the law I am currently accused of violating'; and (c) a 'Commerical [sic] Affidavit' setting forth the necessary characteristics of a valid commercial lien." (Doc. 40). The Government's response to the motion in limine specifically discussed nine of the documents in the packet (*see* Doc. 137). Defendant's memorandum in support of her motion in limine addressed all of the documents in the package (*see* Doc. 130). Thus, the Court's prior order was addressing all of the documents in the package, even though not every document was discussed..

The Court used a categorical approach in its analysis of the package of documents sent to the Chief Judge Holderman (Government's Exhibit 30) (*see* Doc. 145). Defendant argues that the Court should have addressed each document in the package with particularity. Defendant cites the Seventh Circuit's admonition:

> First, a statement of the judge's rationale always facilitates our appellate review of discretionary decisions like the decision to admit or exclude evidence. Having such a record is especially important in the Rule 404(b) context, given that the trial judge is necessarily much closer to the case, the evidence, and the parties' respective theories, and is therefore better able to evaluate the ramifications of the proffered evidence and to determine whether and why that evidence is relevant without posing an undue risk of prejudice to the defendant. Second, articulating the rationale for admitting other-acts evidence also helps to ensure that the district judge is genuinely exercising his discretion and observing the limits of Rule 404(b) by thinking through the relevance of and the potential prejudice posed by the proffered evidence. Our cases have long stressed the need for careful evaluation of other-acts evidence. As we stated in [*United States v. Beasley,* 809 F.2d 1273, (7th Cir.1987)]:
>
>> [T]here must be a principled exercise of discretion. The district judge must both identify the exception that applies to the evidence

> in question and evaluate whether the evidence, although relevant and within the exception, is sufficiently probative to make tolerable the risk that jurors will act on the basis of emotion or an inference via the blackening of the defendant's character....

809 F.2d at 1279….

*United States v. Lee*, 724 F.3d 968, 977-978 (7th Cir. 2013).

*Lee* does not require a document-by-document analysis, as Defendant suggests. This Court's prior analysis of both categories of evidence sufficiently addressed the bases for admission of the categories of evidence and the specific concerns raised by Defendant (*see* Doc. 145). Defendant's demand for a more particularized analysis of the documents is disingenuous, considering that Defendant at times also used a categorical approach relative to the package of documents sent to Chief Judge Holderman—which Defendant described as "largely incoherent documents," and referred to as "clotted nonsense" by Judge Shadur (*see* Doc. 142, pp. 2-3, 6).

The Court's order (Doc. 145) offered the rationale for admission of the category of evidence—the package—in a sufficient fashion, addressing Rule 404 considerations and Defendant's more specific concerns, and allowing for appellate review:

> The March 2011 package, as with the first category of evidence, goes toward proving that Defendant filed false liens or encumbrances because of, or in an effort to remedy perceived wrongs by the officials—making it more than mere propensity evidence. These documents illustrate a line of thinking loosely mirroring a judicial action, leading to the liens and encumbrances at issue in this criminal case. The fact that laws and rules and legal principles are misstated, and that the documents are in some ways nonsensical, is part-and-parcel of the Government's case, tied to the element of proof regarding the known falsity of the liens and encumbrances. In addition, this evidence goes toward establishing Defendant's motive, intent, preparation and absence of mistake.
> Defendant takes issue with the wide variety of names contained in this category of documents, fearing name confusion. She also fears prejudice and confusion from references to people, agencies and legal issues not a part of the false lien and encumbrance charges. By all indications, that all goes part-and-parcel with her motive, intent, preparation and plan. Phillips legal theories, including her theories regarding agency, can cut both ways, but the

> reasonableness of her beliefs and the falsity of the documents is for the jury to decide. *See United States v. Williamson*, 746 F.3d 987, 994 (10th Cir. 2014).
>
> Again, the admission of such evidence may be circumscribed at trial pursuant to Rule 403, if the amount and nature of the details becomes too prejudicial.

(Doc. 145, p. 7)

Defendant also argues that the documents in the package did not prove intent, but from this Court's perspective they do go to Defendant's intent to file liens against officials involved in her brother's trial, knowing the liens were false. As with the first category of documents, the fact that Defendant did not contest these issues does not completely tip the balance in favor of exclusion, nor does it make the evidence especially cumulative—Defendant did not stipulate to anything. The package of documents constituted the initial steps in Defendant's supposedly "legal" attack on the officials and their assets due to their prosecution of her brother, supposedly without jurisdiction.

The "Administrative Notice and Demand" in the package questions the legality of the Controlled Substances Act, and also states that Defendant is "in search of a remedy for the law I am currently accused of violating." Defendant argues that the document suggests that Plaintiff was charged with violating that Act. However, the document, when read in full—without taking one sentence from the first paragraph and another from the third paragraph—makes clear that Phillips is discussing her belief that "most officers, agents and representatives of the people are operating outside the venue and subject matter jurisdiction of the law." She states that she is a witness to a crime: "case # 06CR00778 United States vs. Phillips," her brother's criminal case. She seeks "validation" of the Controlled Substances Act. Any confusion (due to Plaintiff's misstatement or poor syntax) could be, and was, clarified without omitting an otherwise relevant document.

For these reasons, and the reasons stated in the Court's previous orders directed at the 404 evidence, there was no error in denying Defendant's motion to preclude evidence of Defendant's disruptive conduct.

**Dr. Goldstein**

Defendant contends that the admission of the Government's Rule 404(b) evidence necessitates permitting Dr. Goldstein to testify to explain a mental state or condition that impacts upon an element of the offense, the *mens rea*. Although Defendant did not want to present an insanity defense, she did want to use Dr. Goldstein's expertise to show that she suffered from paranoid ideation, dysfunctional relationships, poor decisionmaking, rigidity of thinking, and maladaptability (*see* Doc. 188, p. 14). Defendant further argues that the Court erred in finding her Rule 12.2 notice of expert testimony was untimely. Defense counsel entered the case as standby counsel, and counsel's status and the presiding judge each changed multiple times prior to trial.

The Court stands by its rulings that Defendant's Rule 12.2 notice was untimely and the introduction of Dr. Goldstein's expert testimony would only muddle the issues and confuse the jury, particularly since Section 1521 is a general intent crime, not a specific intent crime. Therefore the Court adopts it prior orders (Docs. 144, 150) and reemphasizes the following salient points.

> Like all criminal defendants, [Defendant] has the right to present a defense and offer witness testimony. *Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (Criminal defendants must have "a meaningful opportunity to present a complete defense."). But this right is not absolute. Rather, "judges may exclude marginally relevant evidence and evidence posing an undue risk of confusion of the issues without offending a defendant's constitutional rights." *United States v. Alayeto,* 628 F.3d 917, 922 (7th Cir. 2010).

*United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012). *See also* 18 U.S.C. § 17(a) (other than when, because of mental disease or defect, a defendant is unable to appreciate the nature and wrongfulness of her acts, mental disease or defect is not a defense). Defendant now emphasizes that she did not intend to present a defense based on mental disease or defect.

Expert testimony regarding Defendant's mental condition (absent an insanity/diminished responsibility defense under Rule 12.2(a) and 18 U.S.C. § 17(a)), is not relevant, or is only marginally relevant in this situation. Again, Title 18 U.S.C. § 1521 requires that Defendant acted knowingly, making it a general intent crime, as opposed to a specific intent crime. *See generally United States v. Stewart*, 411 F3d 825, fn. 2 (7th Cir. 2005); *United States v. Altier*, 91 F.3d 953, 957 (7th Cir. 1996). Defendant indicates that she did not intend to present a defense based on mental disease or defect (at least for purposes of Rule 12.2), but that is how it would have appeared. However, Defendant ignores that the presentation of expert testimony—a provisional diagnosis—that she suffers from Schizotypal Personality Disorder, with paranoia and cognitive or perceptual distortions, would surely confuse the jury.

The Court appreciates that attorney Solomon's status changed more than a few times, and that Defendant was less than cooperative. However, the case proceeded in the usual course toward trial. The undersigned judge stepped in just three weeks prior to the trial setting. Looking forward from when attorney Solomon too full control over the case, she had six weeks to prepare for trial, yet at the final pretrial conference defense counsel acknowledged that she had overlooked the Government's notice of 404 evidence. The Rule 12.2(b) notice was not filed until after motions in limine were filed and decided—after the June 2, 2014, deadline for filing motions in limine, which were the only motions the parties anticipated would be necessary prior to trial. The notice was clearly untimely.

Defendant has offered no new arguments post-trial. The Court stands by its ruling(s) precluding Dr. Goldstein's expert testimony.

**IT IS THEREFORE ORDERED** that, for the reasons stated, Defendant's motion for judgment of acquittal (Doc. 187) and motion for a new trial (Doc. 188) and are **DENIED**.

**IT IS SO ORDERED.**

**DATED:  September 16, 2014**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**