IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA       )
                                   )
            v.                   )        Case No. 12 CR 872
                                   )        Judge Michael J. Reagan
CHERRON MARIE PHILLIPS       )
                                   )

**DEFENDANT'S RESPONSE TO THE PRESENTENCE REPORT
AND THE COURT'S SENTENCING MEMORANDUM**

Defendant Cherron Phillips submits this response to the Presentence Report and the Court's Sentencing Memorandum. The district court has identified grounds for enhancing Ms. Phillips' sentence that were not included in either the Presentence Report or the government's version. Pursuant to Rule 32, the court has informed counsel for defendant of the specific grounds that it is "considering relying on to increase the terms of confinement." *United States v. Sharp*, 436 F.3d 730, 735 (7th Cir. 2006)(*quoting United States v. Jackson,* 32 F.3d 1101, 1108 (7th Cir. 1994)). Accordingly, defendant objects to the following findings of the Court.

**I. The Facts of the Instant Case Do Not Support an Upward
    Departure Under Application Note 4(B) to U.S.S.G. Sec. 2A6.1**

Both the government and the district court opine that an upward departure may be appropriate due to the number of liens involved in the instant case.

**a.  District Court's Position**

The district court states in its Sentencing Memorandum that an upward departure may be warranted because of the 10 to 12 liens that were involved in this case. Memorandum at 22. While twelve liens were involved in total, Ms. Phillips was acquitted at trial of two counts of filing false liens. The Court indicates that it is

considering an upward variance on the basis of the number of liens, including the acquitted counts because, if they were proved by a preponderance of the evidence, they can be included as relevant conduct at sentencing. Convictions under 18 U.S.C. sec. 1521 for liens not involving the same victim are not grouped under U.S.S.G. sec. 3D1.2. Accordingly, under the Sentencing Guidelines, all of the liens in the counts of conviction have been counted and 5 additional points have been added under the grouping rules. Even if the court were to add the acquitted counts to the counts of conviction, no additional points would be added under 3D1.2.

     **b. The government's position**

The government states in its version that an upward departure may be warranted because of the number of liens that were filed. Gov't at 8. In so opining, the government relies on Comment 4(B) of Section A6.1. However, Application Note 4(B) specifically states that "If the offense involved ...(iii) substantially more than two false liens or encumbrances against the real or personal property of the same victim...an upward departure may be warranted." The departure language focuses on the number of liens against the same victim. Each offense of which Ms. Phillips was convicted named a separate victim. No victim was named in more than one lien. Moreover, only one lien in one victim's name was even filed against property he owned —a parking place. Another victim, Judge Lefkow, did not own any property against which a lien could attach. In addition, no liens were filed against any of the other victims' real or personal property. For example, one of the properties attached to the lien in Judge Holderman's name was an office building in downtown Chicago, another was the Metropolitan Correctional Center, and a third was lodged

against property owned by his ex-wife. The remaining liens were lodged against random property throughout Chicago and its suburbs. Accordingly, no offense involved "substantially more" than two false liens against the same victim. Therefore, an upward departure is not warranted on the facts of this case. *Cf. United States v. Frazer,* at 3 (where there are substantially more than two threats against the same victim, Application Note 3(b) allows the court to impose an upward departure).

### II. A Two-To Four Level Enhancement for Obstruction Pursuant to U.S.S.G. Sec. 3C1.1 Should Not Be Applied in the Instant Case

Relying on *United States v. James*, 328 F.3d 953 (7th Cir. 2003) and *United States v. Georgia*, 569 F.3d 281 (6th Cir. 2009), this Court states that it is contemplating imposing a two to four point enhancement under Section 3C1.1 for the obstruction of justice. This potential enhancement is based on Ms. Phillips' serving the district judge and prosecuting AUSA in this case with a complaint on May 23, 2014. *Court*, at 21. In *James,* the district court applied Section 3C1.1 to enhance the defendant's sentence where, prior to trial, he mailed the judge, the prosecutor, clerk's office personnel and several potential witnesses, copies of a "contract and security agreement" requiring them to pay $500,000 for the use of his name and mailed the judge a bill for $151 million. *James*, http://open jurist.org/328/f.3d/953/united-states-v-r-james, at 4. The defendant also sent a box to the judge's house, the unknown contents of which caused concern about the security of the judge and his family. In addition, the Court asked the defendant to stop mailing documents, the defendant refused to comply. Moreover, members of the judge's staff asked to be relieved of duties connected to the case because they

were concerned that the defendant would send them a lien that would interfere with their ability to get student loans or financing for a house. *Id.* at 4-5. As a result, the judge did much of his own clerks' work on the case. *Id.*

In *United States v. O'Georgia,* the defendant was charged with 22 counts of aiding and assisting in the preparation of false federal income tax returns. 569 F.3d at 285. During the plea proceeding to one count, he falsely represented that he was a U.S. citizen. *Id.* He was release on bond and failed to appear for sentencing. He was found, arrested, and returned to federal district court where he was sentenced. During his appeal, he was indicted for conduct that occurred during the tax-fraud proceeding – i.e., failure to appear, making false claims of U.S. citizenship, lying to the Probation Office, and two counts of making false statements to judicial officials.

The defendant filed various *pro se* pretrial motions, including seeking recusal of the judge, a change of venue, exclusion of prior convictions, ten interlocutory appeals from the rulings on these matters and five other appeals including duplicate appeals and a habeas corpus petition. *O'Georgia*, 569 F.3d at 287. Among other enhancements, the sentencing judge applied a two-level enhancement for four instances of perjury. *Id.*

In addition, the court imposed a two-level upward departure pursuant to Section 5K2.0, concluding that the defendant's meritless appeals and frivolous motions, plus a refusal to accept documents offered by his attorney warranted the departure. These circumstances were of a kind not contemplated by the obstruction guideline. 569 F.3d at 290.

4

The Sixth Circuit Court of Appeals found that the district court erred when it added an additional departure on top of the obstruction enhancement. In so ruling, the court stated: "The Sentencing Commission makes no provision for upward departures based upon a pro se defendant's meritless filings – however, vexatious, numerous, or annoying. Nor does any case to our knowledge endorse such a departure." *O'Georgia*, 569 F.3d at 291.

While departure language is no longer valid in the post *United States v. Booker*, 543 U.S. 220 (2005) era, the Sixth Circuit case is instructive for it supports an argument against this Court's contemplated double Section 3C1.1 enhancement based on Ms. Phillips' serving both the court and the prosecutor with the complaints. First, no case upon which the court relies has applied two obstruction enhancements under Section 3C1.1. Indeed, the conduct involved in any of the obstruction cases, where even one enhancement is applied is far more egregious than in the case at bar. Here the serving of two documents that were never filed, and which did not impede, delay or disrupt the proceedings, are not at all analogous to the examples of obstructive behavior listed in section 3C1.1, which include perjury, failure to appear for a proceeding, providing false statements to judges and other officials, tampering with witnesses, destroying evidence or escape. *See U.S.S.G.* Section 3C1.1, Application Note 4. *Cf. United States v. Furkin,* 119 F.3d 1276, 1284 (7th Cir. 1997) (applying old departure language to enhance sentence under both Section 3C1.1 and Section 5K2.0 where conduct was more severe than the ordinary case where the obstruction of justice enhancement ordinarily applies; in that case, the defendant instructed three witnesses to lie to the grand jury, encouraged others

5

to falsify evidence, and intimidated another).  *See also United States v. Ventura*, 146 F.3d 91 (2d Cir. 1998)(applying Sec. 3C1.1 for failure to appear and Sec. 5K2.0 for a fraudulent birth certificate).  In *Ventura*, the Second Circuit affirmed because the "defendant obstructed justice more than once through **wholly discrete and unrelated acts**." (Emphasis supplied).

The court here opines that Section 3C1.1 can apply even where there is attempted conduct, relying on *James.*  However, in that case, the Seventh Circuit found evidence that the defendant's repeated and varied actions did intimidate and harass.  *James*, at 4-5.  In opining that an unsuccessful attempt could also qualify for an enhancement under Section 3C1.1, the Court uses as an example a jury's failure to believe a defendant's perjured testimony – conduct that clearly is covered by Section 3C1.1, Application Note 4.  To the extent the Court stated that Section 3C1.1 applies to unsuccessful attempts to intimidate, such statement is unnecessary to the holding in the case, as there was evidence of intimidation.

Furthermore, this statement is contrary to other cases that have interpreted Section 3C1.1.  In *United States v. Perez*, 50 F.3d 396 (7th Cir. 1995), the Court vacated the district court's application of a 3C1.1 enhancement where the defendant's failure to appear in a state court proceeding prior to the filing of federal charges did not "interfere with the federal investigation, prosecution, or sentencing" of the federal case.  *Perez,* 50 F.3d at 401.  While the mailing of the complaints occurred during the pendency of the federal prosecution in the instant case, defendant did not interfere with the proceedings.  As she never filed the complaint in any court, she did not even attempt to interfere with the proceedings.  She did

not seek to recuse the judge or the prosecutor from the case, she did not move to continue the trial date, nor were any such motions filed on her behalf. While Ms. Phillips was represented by counsel at the time that she mailed the documents, she never consented to that representation. As a result, the mailings in this case were more like the "abysmal lawyering" at issue in *O'Georgia*, than the obstructionist conduct that is included in the Sentencing Guidelines Section 3C1.1. 569 F.3d at 290.

Indeed, an examination of the document that Ms. Phillips mailed contains the same language that she espoused throughout the proceedings against her. Essentially, she claims yet again that the district court lacked jurisdiction over her and her case. In addition, she seeks damages for being held in federal custody although at the time she remained on pretrial release. Accordingly, these documents were more of the same claims that she had made throughout the case. They were never filed, were never attempted to be filed, they were promptly disregarded by the court and the trial went ahead as scheduled. Accordingly, because the documents that were mailed do not fit into the kinds of conduct that is included in Section 3C1.1, the enhancement is inapplicable to the case at bar. Moreover, even if the Court were to find that the documents are sufficient to trigger the obstruction enhancement, there is no authority for enhancing her sentence by 4 points under U.S.S.G. Section 3C1.1.

### III. An Upward Variance is Not Warranted Based On the Victims' Status

The court states that the status of the victims may warrant an "upward departure because of the potential disruption of governmental functions."

Memorandum at 23.  The advisory Sentencing Guidelines already factors the status of the victims in imposing sentence.  Under advisory Sentencing Guideline sec. 3A1.2(a)(1)(A) and (2), and 3A1.2(b), the sentence for each count of conviction is increased by 6 levels when there is a government officer or employee victim, the offense was motivated by the victim's status and the offense of conviction is covered by Chapter 2, Part 2.  Application Note 5 to U.S.S.G. sec. 3A1.2 provides that "if the official victim is an exceptionally high-level official, such as the President or the Vice President of the United States, an upward departure may be warranted due to the potential disruption of the governmental function."

The advisory Application Note, thus, makes clear that such an upward variance would be appropriate for only the highest-level government officials.  In including only the President and the Vice-President, it makes clear that the enhancements that are included in advisory U.S.S.G. sec. 3A1.2 address all but the rarest of cases.  This is not such a case.  As the court points out in its memorandum, the filing of false liens against government officials has a long history from at least the 1980's to today.  Memorandum at 6.  Furthermore, false liens commonly are filed against I.R.S. employees, judges, and other governmental officials.  *Id.*  Indeed, by 1995, "there was no county in the state of Washington "without at least one false lien filed against a public official."  Memorandum at 6.  As a result, 27 states have passed laws to prevent the filing or effect of these documents.  *Id.*  As the court noted, "these statistics show the widespread nature of the problem Congress addressed when it enacted Section 1521." Memorandum at 7.

Moreover, although the advisory guideline focuses on the potential disruption of the governmental function, the court has pointed to no disruption of governmental function that occurred as a result of Ms. Phillips' filing of the false liens. As a matter of fact, none of the individuals named in the liens even knew they were there. Furthermore, they were so hidden, FBI Agent Joshua Rongitsch had to go deep into the bowels of Chicago's City Hall to even find them. The court refers to Ms. Phillips misconduct before its predecessors and the revocation of her pro se status. However, that conduct was not directed toward any of the targets of the liens and as discussed above cannot form the basis for an obstruction enhancement. It is also proper for the court not to consider the disruption in her brother's case as grounds for enhancement in this matter as it did not impede the investigation, prosecution or sentencing in the instant case.

## IV. No Target of the False Liens Suffered Any Collateral Damage

Finally, this court considers collateral damage from the false lien to be an aggravating factor in this case. However, as discussed above and as the testimony at trial made clear, while the liens named the various officials as the vessels for the Maritime Liens against them, with one exception, the liens were not filed against any of their property. Former Clerk of the District Court discovered a false lien against his condo parking place when he was in the process of selling it. He further testified that he was able to remove the lien and to sell the property. None of the remaining victims were even aware of the liens because they were not filed against their property. A lien filed against random property in someone else's name will not

cloud anyone's title especially where, as here, it is patently absurd on its face. Clearly, no lawsuit will be required to quiet title.

### V. Mitigating Circumstances

The court states that only Ms. Phillips' minor child constitutes a mitigating factor in this case. Memorandum at 24. Factors in mitigation are discussed in Ms. Phillips' sentencing Memorandum that is filed under separate cover. Essentially, she has been a hardworking, productive member of society for most of her life. She has raised two sons and has assisted in the care taking of her disabled sister and her two children. She has worked as a real estate and insurance broker, and a math teacher at her mother's school. She is a member of a close-knit, hardworking extended family. Until her brother's prosecution, she lived a quiet life dedicated to her children and her work far away from the spotlight. Her sons and her family need her.

### Conclusion

A federal sentence must be sufficient but not greater than necessary to meet the goals of sentencing. Mitigating factors exist that justify a below advisory guideline sentence. A probationary sentence with home confinement or house arrest and strict conditions with mandatory counseling would be sufficient to meet the goals of sentencing. In the alternative, a sentence at the low end of the advisory guideline range set forth in the Presentence Report is sufficient but not greater than necessary to achieve the goals of sentencing. The Court's proposed guideline ranges of 78-97 months or 97 -121 months are far greater than necessary to meet the goals of sentencing. Accordingly, Ms. Phillips respectfully requests that this

Court a sentence in accordance with this memorandum and Ms. Phillips' Sentencing

Memorandum.

Respectfully submitted,

/s/Lauren Weil Solomon
Attorney for Cherron Phillips

Lauren Weil Solomon
P.O. Box 2013
Highland Park, IL 60035
ljwsolomon@yahoo.com
847-756-0489