1          IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3  UNITED STATES OF AMERICA,        ) Docket No. 12 CR 872
                                    )
4          Government,              )
                                    ) Chicago, Illinois
5          vs.                      ) October 16, 2013
                                    ) 11:00 o'clock a.m.
6  CHERRON MARIE PHILLIPS, also     )
   known as Cherron Phillips El,    )
7  also known as River Tali El Bey,)
   also known as River Tali Bey,    )
8  also known as River Tali,        )
   also known as River,             )
9                                   )
           Defendant.               )
10

11

12        TRANSCRIPT OF PROCEEDINGS - Pretrial Conference
             BEFORE THE HONORABLE MICHAEL M. MIHM
13

14

15  APPEARANCES:
    For the Government:      UNITED STATES ATTORNEY'S OFFICE
16                           SOUTHERN DISTRICT OF ILLINOIS
                             BY:  MR. NATHAN D. STUMP
17                           9 Executive Drive
                             Fairview Heights, Illinois  62208
18
    For the Defendant:       ATTORNEY AT LAW
19                           BY:  MS. LAUREN WEIL SOLOMON
                             P.O. Box 2013
20                           Highland Park, Illinois  60035

21

22

23              Laura LaCien, CSR, RMR, CRR
                    Official Court Reporter
24          219 South Dearborn Street, Suite 1902
                    Chicago, Illinois  60604
25                     (312) 408-5032

1        (The following proceedings were had in open court:)

2                COURTROOM DEPUTY:  12 CR 872, USA versus Cherron

3    Marie Phillips.

4                THE COURT:  Can you give me the sheet of the

5    lawyers' names on it?  Do I have a copy of that up here?

6                This is the case of *United States of America versus*

7    *Cherron Marie Phillips*, Criminal Number 12-00872.  And

8    Cherron Marie Phillips is here; is that correct?  Are you the

9    defendant?

10               THE DEFENDANT:  I'm not the defendant but I'm --

11               THE COURT:  Okay, fine.  Do you want to have a seat

12   up in front?

13               THE DEFENDANT:  Sure.  May I approach?

14               THE COURT:  I would prefer if you sit up at this

15   table.

16               THE DEFENDANT:  Okay.

17               THE COURT:  And we have stand-by counsel Lauren

18   Solomon, correct?

19               MS. SOLOMON:  That's correct.

20               THE COURT:  Okay.  And Nathan Stump?

21               MR. STUMP:  Yes.  Good morning, your Honor.

22               THE COURT:  Okay.  Good morning.

23               This is set for a pretrial conference this morning.

24   I want to spend a minute talking about the history of this

25   case and what brought us to where we are today.

1          This case was indicted in November of 2012.

2    Following that, there was a decision by the defendant that

3    she wished to represent herself.  She filed a number of

4    frivolous pleadings.  Frankly, frivolous is a kind word.  And

5    in that respect, Judge Shadur very patiently and

6    compassionately processed those frivolous pleadings.

7          At some point actually right before trial, he

8    reached a point where he felt that these pleadings had,

9    because of what they were and the number of pleadings that

10   had been filed, everything taken together, constituted

11   obstructive conduct on the part of the defendant and he ruled

12   that she could not represent herself and that's when he asked

13   Ms. Phillips, I believe, to become her counsel.  Right?

14          MS. SOLOMON:  Ms. Solomon.

15          THE COURT:  I'm sorry?

16          MS. SOLOMON:  Ms. Solomon.

17          THE COURT:  I'm sorry.  Ms. Solomon to become

18   counsel.

19          At the same hearing -- and I might add, by the way,

20   he in part relied on a Fourth Circuit case that I agreed with

21   him was very instructive called *U.S. versus Brunson*, 482 Fed.

22   Appendix 811.  In any event at the same hearing, he also came

23   to the conclusion that he should not be the judge sitting in

24   the case and there had been or was a decision made that a

25   judge should be brought in from outside the district and that

1    was me and I had a hearing on this case on August 28th.

2          At that time, the defendant renewed her request to

3    represent herself.  At the time the prosecutor joined in our

4    request, I believe, stating you believed that the nature of

5    her conduct did not rise to the level of obstruction that the

6    case is required and I had a conversation with the defendant

7    at that hearing and I think it's certainly fair to say that

8    she was polite, she appeared to be lucid, and she promised

9    that she would not file any more frivolous motions.  So at

10   that point, I granted her request to represent herself.

11         There was an issue about her conditions of bond.  I

12   ruled on that.  I said I would reconsider that at this

13   hearing today.  I asked her if she had any pretrial motions.

14   She said, in fact, she did and that she would be prepared to

15   file that motion within just a few days of that hearing on

16   August 28th.  I set at that moment for the filing of such a

17   motion of September 13th.  There was no motion filed;

18   nothing.  I might add parenthetically that I told her at the

19   time when we were discussing this motion that she hadn't

20   filed -- I had no idea at the time what the motion might be

21   but I said that in view of everything that had happened

22   before, I saw this motion as a test of sorts as to whether or

23   not she appeared capable of representing herself and she

24   assured me that she would not file the kind of motions that

25   she had been filing.

1    She filed a motion on December 11th, a motion to

2  dismiss.  It is perhaps an understatement to say that it is

3  total gibberish.  There's one assertion at the beginning and

4  it's correct, I believe she was indicted on November 8th, and

5  then virtually everything after that is totally nonsensical

6  and frankly incoherent.  She says, for example, the United

7  States has mistakenly sought to attach the living body of the

8  executrix River Bey of the Cherron Marie Phillips' trust as

9  territorial property of the United States; and it goes

10  downhill from there.  And attached to that are various

11  affidavits and other documents that are equally incoherent.

12  They have no bearing -- and I underscore the word no --

13  bearing on the matter that brings her to this court which is

14  the indictment, the criminal charges in this case.

15    So in regard to my comment to you that this --

16  any motion that you file would be considered kind of a test

17  to see if you were going to keep your word or if you were

18  capable of keeping your word as to the substance of what you

19  made, you failed that test utterly and completely so now I

20  have very serious concerns.

21    I certainly have the same concern that Judge Shadur

22  had as he expressed and for the same reasons but with the

23  additional type of thing that's set out in her most recent

24  motion to dismiss as to the question of whether or not it is

25  appropriate for me to allow you to represent yourself but

1  frankly that concern has become secondary.  My major concern

2  at this point after reviewing again everything that Judge

3  Shadur had and now what's been put in the file since I've had

4  the case, I have a very serious question about your

5  competence to stand trial.

6      This question of whether or not a defendant is

7  competent to stand trial is usually raised by counsel,

8  sometimes by defense counsel or other times by the

9  prosecutor, but the choices are not limited to that.  In

10 fact, the statute which is 18 U.S.C. 4241 says that the

11 defendant or the attorney for the government may file a

12 motion for a hearing to determine the mental competency of

13 the defendant.  The Court shall grant the motion or shall

14 order such a hearing on its own motion.

15     And there are also some Seventh Circuit cases.  For

16 example, the case of *U.S. versus Andrews*, 469 F.3d. 113 --

17 1113, I'm sorry, it's a Seventh Circuit case from 2006, that

18 says:  As this Court explained, unquestionably due process

19 requires a defendant to be competent to stand trial.  To be

20 competent, a defendant must have the sufficient present

21 ability to consult with his attorney with the reasonable

22 degree of rational understanding and must have a rational as

23 well as factual understanding of the proceedings against him;

24 and I would point out that this most recently filed motion

25 indicates to me with utter clarity that the defendant does

1    not appear to have a factual understanding of the proceedings

2    against her.   Regardless of whether the defendant moves for a

3    competency evaluation, the due process clause requires the

4    trial judge to inquire sua sponte into a defendant's mental

5    state if events in court imply that the accused may be unable

6    to appreciate the nature of the charges or assist counsel in

7    presenting a defense.   That's where I believe we are now.

8         I'm certainly open at this point before I make a

9    decision on whether or not to order an examination and

10   hearing on the question of the defendant's competency to

11   stand trial.   I'm certainly willing to hear what counsel,

12   stand-by counsel and the defendant have to say on this point

13   before I make a decision.

14        Do you have anything that you would wish to say on

15   this matter?

16             THE DEFENDANT:   Yes.

17             THE COURT:   And if I could ask, because I'm a little

18   hard of hearing, if you could come up and use the microphone

19   at the podium, I would appreciate it.   Right there.   Thank

20   you.

21             THE DEFENDANT:   Okay.   I'd like to ask -- excuse me.

22   For the record, what does the competency exam have to do with

23   the charges brought against the trust?

24             THE COURT:   Because we believe that in our criminal

25   system, it's not appropriate to go forward with prosecution

1  of someone in a criminal case unless it's determined that the

2  person is competent to stand trial which means competent to

3  understand the factual circumstances leading to the charges

4  and, secondly, being able if they're represented by counsel

5  to effectively communicate with their attorney.  That's why.

6  THE DEFENDANT:  Okay.  I guess I would say I don't

7  quite understand because if there's charges that's been

8  brought and there's been an asset that's been presented to

9  satisfy those charges, then where is the conflict, sir?

10  THE COURT:  Okay.  Do you have any other -- I'm not

11  going to try -- I'm not going to get into the same kind of

12  discussions that you had with Judge Shadur where every

13  question is asked -- is responded to with another question.

14  I've told you where I am.  I have serious concerns

15  as to whether or not you are competent to stand trial.  If

16  you have anything you wish to say to me before I make a

17  decision on that, I'm happy to hear it but please address

18  that point.

19  THE DEFENDANT:  Right.  And I guess my question to

20  you was I'm not clear -- I'm not clear how that has -- how

21  that has anything to do with the charges that's been brought

22  against the trust.

23  THE COURT:  Okay.  Well, I've already answered that

24  question.  Does the prosecutor have any input on this?

25  MR. STUMP:  Your Honor, I just say for the record

1    that I understand why the Court has that concern.  I guess I

2    share that concern about her competency only for purposes of

3    protecting a record and making sure that we are not

4    inadvertently prosecuting somebody who is mentally

5    incompetent.  But from where I stand, this is not some sort

6    of mental defect or something like that.  This is a situation

7    where the defendant is taking what may be a misguided but

8    deliberate obstructionist strategy in terms of her defense

9    and that's what I think this is.  But beyond that, my

10   own dealings her, my own observations, she's rational, she's

11   lucid.  She's just pursuing a strategy that manifests itself

12   in this way.

13            THE COURT:  Okay.  Do you have anything you would

14   like to add?

15            MS. SOLOMON:  Yes, your Honor.

16            THE COURT:  I'd be very happy to hear what you have

17   to say.

18            MS. SOLOMON:  I have -- Lauren Solomon on behalf of

19   the -- stand-by counsel.

20            THE COURT:  Right.

21            MS. SOLOMON:  In my brief dealings with

22   Ms. Phillips, it has become apparent to me that it is, for

23   whatever reason, that Ms. Phillips is not able or willing to

24   assist counsel in the preparation of a defense and I don't

25   believe that it's my personal appearance or interactions with

her, that it would be the same with any counsel that was
appointed on her behalf.

THE COURT:  Okay.  And I appreciate that input
from -- and I know you're in a difficult situation in this
case.

All right.  My ruling is that pursuant to Title 18,
Section 4241, I am going to order that the defendant be
examined to determine her competency to stand trial.  I would
also suggest just as a -- I don't have to do this and I'll be
happy to hear what your input is on this.  When I have a case
like this in Peoria where I order such an examination, I also
ask them to consider the question of insanity because that is
an issue that could come up in the trial and since they're
being examined, it's a two-fer, if you would, so the process
doesn't have to be repeated.

If I were in my home court, what would happen is
that the defendant would be taken into custody and would be
examined by the Bureau of Prisons which usually means 30
days, 60 days, sometimes 90 days.  I know in my court people
who are sent for examination sometimes go to Rochester or
sometimes they go to Springfield, Missouri.  Once in a while,
they'll actually come to Chicago and be examined here.

I'm completely open at this point as to the
question -- now that I've decided that there is going to be a
mental examination, I'm completely open to suggestions as to

1  how best to accomplish that.  For example, if it could be

2  accomplished with her remaining on bond and being examined by

3  some appropriate person here in Chicago or maybe even at the

4  Bureau of Prisons, I don't know, obviously that would be

5  ideal.  I don't know if that works or not; and I know I'm

6  hitting everybody with this cold so -- but I'm very happy to

7  hear what you have to say about that.

8         Ms. Solomon, do you have any experience up here in

9  this type of situation?

10         MS. SOLOMON:  I have not had -- I have not had

11  experience with that but I would like to make inquiries to

12  make sure -- to inquire whether or not that would be possible

13  with Ms. Phillips out on bond as she does have young children

14  at home.

15         THE COURT:  What is the government's position on

16  this?  I mean --

17         MR. STUMP:  I have another case right now where the

18  defendant has been sent to the MCC here for an evaluation.

19  She was taken into custody for that purpose.

20         THE COURT:  Right.

21         MR. STUMP:  I know the examination can be done here

22  and done well.  And in terms of whether she needs to be in

23  custody for that or not, I just have to defer to the person

24  conducting the examination.  I know that there is some value

25  when a person is in custody, they can be observed in the

1    general population, that sort of thing.

2              THE COURT:  I know.

3              MR. STUMP:  I don't know that that's necessarily

4    needed in this case.

5              THE COURT:  Well, I mean, in an ideal world -- and I

6    don't even know who the possibilities are -- but if there

7    could be an agreement, for example, that she be examined by

8    some doctor without being taken into custody, then that would

9    be -- that would obviously be the best situation.

10             MS. SOLOMON:  It would be most likely someone who

11   comes in from the outside who goes into the MCC to conduct

12   the examination so it would probably be preferable to that

13   person as well to do it on the outside of the prison than

14   versus being inside.

15             THE COURT:  Do we know --

16             THE DEFENDANT:  Your Honor, if I may.

17             THE COURT:  Do we know whether it's possible for a

18   person to receive a mental evaluation at the MCC facility

19   without being in custody?

20             MR. STUMP:  Your Honor, I don't know the answer to

21   that question.  I'd be happy to look into it immediately.

22             THE COURT:  Yeah.  And then the other thing is -- I

23   mean, normally what happens is if some doctor other than

24   someone with the Bureau of Prisons, say a privately retained

25   person, does a mental examination, they come back with a

1  report and it may be very favorable to the defendant and then

2  what almost always happens next is then the prosecution says

3  well then all right now we want our guy to test her and then

4  she ends up going off to the Bureau of Prisons.  So I'm

5  trying to figure out if there's some way that we could meet

6  everyone's legitimate needs and at the same time leave her on

7  bond.  I don't know the answer.

8          Let me ask you this:  I have a hearing at 1:00

9  o'clock.  I don't know what your schedules are.  Is it

10 possible that we could have another hearing at 1:30?

11          MS. SOLOMON:  Yes, your Honor.

12          MR. STUMP:  That's fine with me, your Honor.

13          THE COURT:  Could you be here at 1:30?

14          THE DEFENDANT:  Can we make it 2:00 if that's okay?

15          THE COURT:  I'm sorry?

16          THE DEFENDANT:  Can we make it at 2:00 o'clock?

17          MS. SOLOMON:  I'm sorry, Judge.  I would not be

18 available at 2:00.

19          THE COURT:  I think it would have to be at 1:30.

20          THE DEFENDANT:  Okay.  I'll have to juggle some

21 things --

22          THE COURT:  Sorry?

23          THE DEFENDANT:  Okay.  That's fine.  2:00 o'clock.

24 I mean, 1:30.

25          THE COURT:  Okay.  So we'll all be back here at 1:30

1  and I'll make a decision at that time about the details of

2  the mental examination and hopefully you'll have some time to

3  confer and look at the possibilities.

4  Because that's where I am, any issues concerning

5  whether or not I feel it's appropriate for her to represent

6  herself it seems to me have to be put aside until the

7  question of her competency to stand trial have been answered.

8  Yes?

9  THE DEFENDANT:  If you don't mind, again I'd like to

10 ask the question, what does the competency have to do with

11 the charges brought to the trust?

12 THE COURT:  Because if you're not competent to stand

13 trial, the government cannot pursue the prosecution until and

14 unless it's determined that you are, in fact, competent to

15 stand trial.

16 THE DEFENDANT:  Would there be need for a trial if

17 the charges have been satisfied?

18 THE COURT:  If what?

19 THE DEFENDANT:  If the charges has been satisfied,

20 then why would there be a need for the trial?

21 THE COURT:  Well, I can't speak for the prosecutor.

22 I'm not aware of anything at this point that would satisfy

23 the charges.  The options concerning the charges as I

24 understand them are, he could decide to dismiss the charges,

25 you could decide to plead guilty, or the case would go to

1  trial.  I am not aware of any other possibilities.

2          THE DEFENDANT:  Okay.  Well, there's a sufficient

3  asset that's been presented to the Court that would satisfy

4  the charge.

5          THE COURT:  The discussion of the asset or the

6  assets you referred to in here, as far as I can tell, has

7  absolutely no relevance to this criminal prosecution.

8          THE DEFENDANT:  Is there any way I could get that in

9  writing, sir?

10          THE COURT:  I'm sorry?

11          THE DEFENDANT:  May I get that in writing?

12          THE COURT:  May you what?

13          THE DEFENDANT:  Can I get that in writing, please?

14          THE COURT:  I'm not going to write it down for you.

15  I've just told you that.

16          THE DEFENDANT:  Well, would the prosecution have

17  to --

18          THE COURT:  Did you hear me?  Did you hear me?  I

19  told you, it has no relevance.

20          THE DEFENDANT:  Would the prosecution --

21          THE COURT:  If you want a transcript of the hearing,

22  you can get that from the court reporter but I'm not going to

23  play these games.

24          THE DEFENDANT:  No.  It's not a game at all.

25          THE COURT:  You be back here at 1:30.  Counsel,

1  you'll be back at 1:30.  I would ask that you explore the

2  possibility of having her examined either by a private doctor

3  or someone affiliated with BOP but try to do it on an

4  out-patient basis but that may or may not work.

5        MS. SOLOMON:  Thank you, Judge.

6        MR. STUMP:  Thank you, your Honor.

7        THE COURT:  Okay.  All right.  Thank you.  1:30.

8     (Break in proceedings; after which the following

9  proceedings were had in open court at 1:30 o'clock p.m.:)

10        THE COURT:  Okay.  This is the case of *United States*

11  *of America versus Cherron Marie Phillips*, 12-00872.  The

12  defendant is in court.  Stand-by counsel Lauren Solomon is in

13  court and Attorney Nathan Stump is here representing the

14  government.

15        When we left, the question was what options were

16  available concerning mental testing.  Where are we on this?

17        MR. STUMP:  Your Honor, over the lunch break, I

18  spoke with a Dr. David Chehowski (phonetic) at the MCC here

19  in Chicago about the possibility of Ms. Phillips being seen

20  by their staff while she remains out on bond.  He told me

21  that that would not be possible.  They have a staff of three

22  psychologists there.  They could see her but she would have

23  to be remanded into custody to do that.  I asked him --

24        THE COURT:  This is MCC or --

25        MR. STUMP:  This is the MCC.  I asked him if there

1  were any other options for someone who is out on bond in the

2  City that he would recommend and he did recommend a group to

3  me called Isaac Ray.  I-s-a-a-c, R-a-y.  He told me that they

4  regularly perform evaluations in criminal cases both federal,

5  state and local and that they do a good job and they could

6  see her on an out-patient type basis.

7          THE COURT:  Okay.  Is this somebody you're familiar

8  with?

9          MS. SOLOMON:  Yes, I am.

10          THE COURT:  Pardon me?

11          MS. SOLOMON:  Yes.  I am, Judge.  I also contacted

12  the attorneys at the Federal Defender Office and they also

13  recommended that Isaac Ray Forensics Group be the ones who do

14  the -- conduct the examination.  They regularly do

15  examinations for federal court in this building.

16          THE COURT:  How long does that process usually take,

17  do you know, about 30 to 60 days?

18          MS. SOLOMON:  Something like that, your Honor.

19          THE COURT:  All right.  So this group -- Well, let

20  me ask you this:  So what you learned was that if she is

21  tested on an out-patient basis by these people that -- are

22  you telling me then that the government will not ask for

23  follow-up testing by the Bureau of Prisons?

24          MR. STUMP:  Your Honor, it's hard for me to promise

25  that at this time not seeing what they come up with; but

1   based on my discussion with the BOP forensic evaluator who

2   recommended them to me, said they do a good job, I can only

3   assume that we'll be satisfied with whatever they come up

4   with.

5        THE COURT:  Well, then it might be worth taking a

6   risk on it.  What I don't want to happen is to have her

7   examined twice, once by them and then by BOP.

8        MS. SOLOMON:  This is a group that regularly is

9   agreed upon by both the government and the defense.

10        THE COURT:  So are you willing to agree with this

11   process of going to wherever these people -- where are they

12   located, do you know?

13        MS. SOLOMON:  200 South Michigan Avenue just -- not

14   very far from here.

15        THE COURT:  And what's the name of the group again?

16        MS. SOLOMON:  It's Isaac Ray Forensics Group.

17        THE COURT:  Okay.  Are you willing to go there when

18   you're told to be there and participate in whatever the

19   testing process is?

20        THE DEFENDANT:  It has been your order; is that

21   correct?

22        THE COURT:  I'm sorry?

23        THE DEFENDANT:  I said it has been your order; is

24   that correct?

25        THE COURT:  It will be in my order; yes.

1          THE DEFENDANT:  Okay.  Then I will stay in honor

2     with the Court.

3          THE COURT:  Pardon?

4          THE DEFENDANT:  I said, then I will stay in honor

5     with the Court.

6          THE COURT:  Okay.  Yeah, because -- and I'm not

7     saying this just to threaten you; it's just true.  If you

8     don't cooperate, then I'll order that you be taken into

9     custody and be tested in the Bureau of Prisons so I think

10    this is the best alternative for you.  Now I'm going to need

11    an order.  I don't know if you have a form that you usually

12    use for this.

13         MR. STUMP:  Your Honor, I'm sure we can provide one

14    this afternoon.

15         THE COURT:  If you can confer with counsel on that,

16    submit something to me, I'll sign it when I get it.  It will

17    probably take a couple days, some period of time to set this

18    up.  And then maybe what we should do is set a status hearing

19    on this in, say, 45 days.  And if they're ready -- if they've

20    completed the report and submitted it, then we'll have the

21    hearing and take a look at it.  It's not unusual to ask for

22    more time in these things so we'll play that by ear.

23         What would about 45 days be?

24         COURTROOM DEPUTY:  December 2nd.

25         THE COURT:  Pardon?

1          COURTROOM DEPUTY:  December 2nd.

2          THE COURT:  December 2nd.

3          MR. YASUNAGA:  Christmas is 45 days.

4          THE COURT:  I'm sorry?

5          MR. YASUNAGA:  The holidays is 45 days so if you

6    want to put it the first week of January?

7          THE COURT:  She said it's December 2nd.

8          COURTROOM DEPUTY:  45 days from today?

9          MR. YASUNAGA:  Oh.

10         THE COURT:  When do you start celebrating?  What day

11   of the week is that?

12         COURTROOM DEPUTY:  Monday.

13         THE COURT:  Monday.  Monday is --

14         MR. YASUNAGA:  December 3rd, we're clear.

15         THE COURT:  Monday?

16         MR. YASUNAGA:  Tuesday, December 3rd, is empty for

17   us.

18         THE COURT:  That's better?

19         MR. YASUNAGA:  And that's one day.  I didn't hear

20   the other day.

21         THE COURT:  December 2nd.

22         MR. YASUNAGA:  December 2nd.  That's Monday --

23         THE COURT:  Well, Monday is my busy day.  Would

24   December 3rd work?

25         MR. STUMP:  Your Honor, that whole week is not good

1 for me unfortunately. I wonder if we had it set for a trial

2 December 16th, is it possible we just meet on the 16th which

3 is also I think a Monday?

4        THE COURT: That's fine. I don't think it's going

5 to go to trial on the 16th of December but we already have

6 that set for -- I have that time set so it is convenient in

7 that sense. Will that work for you?

8        MS. SOLOMON: That would be fine, Judge.

9        THE COURT: Is that -- Will that work for you?

10        THE DEFENDANT: Yes, your Honor. I'd like to also

11 ask, assuming that this motion that I presented to the Court

12 had been dismissed -- I mean, has --

13        THE COURT: The motion to dismiss that you submitted

14 on October 11th is denied.

15        THE DEFENDANT: Right. In the alternative, I'd like

16 to know if the Court can show cause why the leg band or the

17 home detention should continue.

18        THE COURT: Okay. That's a good point because we

19 did talk about it the last time and I said we'd talk about it

20 again this time.

21        I will tell you frankly that based on the filing

22 that you made here that I just dismissed and because of the

23 concerns that I have about your mental condition, I cannot

24 believe that -- I can't think of an argument that could be

25 made that would change the order as it now stands.

1          THE DEFENDANT:  Okay.  I don't see any reason why it

2   should continue because I don't have a problem coming to

3   court.  That's not the issue.

4          THE COURT:  Right.

5          THE DEFENDANT:  The issue is not me being present in

6   court.

7          THE COURT:  Right.

8          THE DEFENDANT:  I do have an issue with meeting

9   other deadlines because of the time constraints that I have

10  currently right now.  So here again, if there's nothing

11  before the Court, I do ask that this be removed.

12         THE COURT:  Well, I'm telling you that based on my

13  assessment of your mental situation based on the pleadings

14  that have just recently been filed, I am not willing to

15  change your conditions of bond.

16         THE DEFENDANT:  Okay.  Then my other question would

17  be can the Court account for the asset that's been presented

18  already to the Court?

19         THE COURT:  I'm sorry?

20         THE DEFENDANT:  Can the Court account for the asset

21  that's been presented to the Court or either return it?

22         THE COURT:  I'm not even going to go there.

23         THE DEFENDANT:  I'm asking that it returned.

24         THE COURT:  Are you talking about the asset that was

25  discussed in the motion to dismiss?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I'm not going there.  That motion was

3     dismissed.  That's it.

4          THE DEFENDANT:  But that was the request in the

5     alternative that the motion was dismissed.

6          THE COURT:  I'm not going there.  Anything else

7     today?

8          COURTROOM DEPUTY:  Judge, what time on the 16th of

9     December do you want them to come in?

10         THE COURT:  Well, we had planned to start trial that

11    day so I would say 9:00 o'clock.  I don't think the trial

12    could start on that day because we would be considering the

13    motion concerning her competence to stand trial.  And then

14    once that's resolved, then there's still the question of

15    whether she would represent herself or be represented and

16    what a realistic trial date would be.

17         MS. SOLOMON:  That's correct, Judge.

18         THE COURT:  Am I correct about that?

19         MR. STUMP:  I think that's the reality, your

20    Honor.

21         THE COURT:  So I'm going to find that the period of

22    time between today and December 16th is excludable time for

23    purposes of the Speedy Trial Act because of the need to

24    conduct a mental evaluation, give everyone an opportunity to

25    analyze that, allow us an opportunity to have a hearing on

1  the issue of competence and also depending on the Court's

2  findings make a final decision concerning representation --

3  self-representation or representation by counsel and then set

4  a realistic trial date, so.

5      COURTROOM DEPUTY:  We're striking the December 16th

6  trial date?

7      THE COURT:  I'm sorry?

8      COURTROOM DEPUTY:  We're striking the December 16th

9  trial date?

10      THE COURT:  It's -- yes.  We're striking it as the

11  trial date.  That's correct.  Are there any objections to

12  those findings?

13      MR. STUMP:  No, sir.

14      THE COURT:  Concerning the -- just concerning the

15  Speedy Trial.

16      MS. SOLOMON:  No, Judge.

17      THE COURT:  Okay.  Then we're done.

18      MR. STUMP:  Your Honor, the order that will be

19  provided to the Court this afternoon, that would be both as

20  to competency and sanity at the time of the offense; is that

21  right?

22      THE COURT:  Well, I recommend that because they're

23  going to be asking the same questions.  What normally

24  happens, or at least it has in the last few years, we used to

25  get it all in one report.  But in the last four or five

1  years, at least the Bureau of Prisons, they split it up the

2  findings into two parts separate.  I don't remember what the

3  reason for that is but -- I just recommend that it's in

4  everyone's best interest to consider both of those things at

5  the same time.

6          MR. STUMP:  Yes, sir.

7          THE COURT:  Okay.

8          MS. SOLOMON:  Thank you, Judge.

9          THE COURT:  Okay.  I'm going to be driving back to

10 Peoria this afternoon.  If you have conferred -- probably

11 tomorrow morning would be best to submit it for you and I'll

12 be in my chambers early tomorrow.

13         MR. STUMP:  Thank you, your Honor.  We will submit

14 it.

15         MS. SOLOMON:  Thank you, Judge.

16         THE COURT:  All right.  Thank you very much.

17     (Which concluded the proceedings in the above-entitled

18 matter.)

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2          I hereby certify that the foregoing is a transcript

3    of proceedings before the Honorable Michael M. Mihm on

4    October 16, 2013.

5

6

7    */s/Laura LaCien*
                                    January 26, 2015
8    _____              Date
     Laura LaCien
     Official Court Reporter
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25