```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
                   EASTERN DIVISION

UNITED STATES OF AMERICA,     )  No. 12 CR 872
                              )
              Plaintiff,      )  Chicago, Illinois
                              )  December 17, 2012
                              )  10:45 o'clock a.m.
     -vs-                     )
                              )
                              )
CHERRON MARIE PHILLIPS,       )
                              )
              Defendant.      )


         TRANSCRIPT OF PROCEEDINGS - STATUS
       BEFORE THE HONORABLE MILTON I. SHADUR

APPEARANCES:

For the Plaintiff:   HON. GARY SHAPIRO
                     United States Attorney, by
                     MS. NATHAN D. STUMP
                     Special Assistant United States Attorney
                     (219 S. Dearborn Street
                     Chicago, Illinois 60604)


For the Defendant:   MS. CHERRON MARIE PHILLIPS, pro se
                     P.O. Box 802625
                     Chicago, Illinois









Court Reporter:      ROSEMARY SCARPELLI
                     219 South Dearborn Street
                     Room 2304A
                     Chicago, Illinois 60604
                     (312) 435-5815
```

1                THE CLERK:  12 CR 872, United States of America
2    versus Cherron Phillips.
3                THE COURT:  Yes?
4                MR. STUMP:  Good morning, your Honor, Nathan Stump
5    on behalf of the United States.  The Court had set this time
6    for a status conference.  And I believe the first issue of
7    business or the primary issue was whether Miss Phillips
8    intended to retain counsel and that she was going to apprize
9    the Court of her efforts.
10               THE COURT:  Yes, that is the question of course
11   that I had posed earlier and as to which I have explained on
12   several occasions to Miss Phillips that she has an absolute
13   freedom of choice in that respect, either as a constitutional
14   matter either to represent herself or to retain counsel if
15   she is in a position to do that.  Or if she is not in a
16   position to do that and qualifies in the way that our
17   Criminal Justice Act provides, she is in a position to have
18   members of the Federal Defender Program apply to represent
19   her.
20               The third alternative that I suppose is really a
21   variant on self-representation is that normally in situations
22   in which somebody says, "I want to represent myself, that is
23   my constitutional right and I am going to do that," I have
24   consistently assigned someone from the Federal Defender
25   Program simply to serve as a possible standby to the extent

1  that a defendant may feel that there is some matter of a
2  technical nature or otherwise on which defendant would like
3  to have assistance.  And, as you know, Mr. Levy happened to
4  be the duty attorney the first day that Ms. Phillips came in
5  for arraignment, and so I have asked him to continue to
6  appear simply for that purpose in connection with each of the
7  successive appearances.
8        So, Miss Phillips, have you reached a decision
9  about which direction you plan to go in terms of your own
10 constitutional exercise of your rights?
11        THE DEFENDANT:  I have attempted to obtain counsel.
12 The problem that I am having right now is basically some of
13 the time constraints that have been imposed.  I was just --
14 my issue is because I have had some time constraints -- and I
15 have actually talked to Brian in regards to those things --
16 but I have had some scheduled meetings.  They weren't very
17 long because of the time constraints.  And a few appointments
18 were cancelled.  So I would need some more time at this time
19 to obtain counsel.
20        THE COURT:  I don't want to encroach, you know, on
21 your exercise of the constitutional rights, but let me just
22 ask, when you have talked about efforts to obtain counsel,
23 that has been on some kind of compensated basis that you are
24 seeking to retain counsel, is that right, or not?
25        THE DEFENDANT:  I have some family who is going to

1   try to support that issue, so, yes.

2              THE COURT:  And what kind of time are you talking
3   about, because we have to basically move forward?  There is a
4   -- we have the Speedy Trial Act provisions that are both
5   provided for in the Constitution and also under the law that
6   set time limits within which any criminal case has to go
7   forward.  There are proper exclusions of time under that
8   statute.  One of them is what is called continuity of
9   counsel, in other words, it provides for the possibility of
10  excluding time on the Speedy Trial clock for efforts like
11  that are made, but obviously those have to be reasonable in
12  terms of total time.

13             What is your best sense of what kind of time frame
14  you are talking about for that?

15             THE DEFEBDANT:  Well, given what you have just
16  stated -- again, I have been so restricted in movement those
17  -- since last time we were here I didn't have the opportunity
18  or the flexibility to actually vigorously obtain or
19  vigorously seek.  So I am asking now if I could get some more
20  leeway and to do that, and I would ask for two weeks.

21             THE COURT:  When you talk about constraints, are we
22  talking about the monitoring, or what?

23             THE DEFENDANT:  Yes, that is exactly what I am
24  speaking towards.

25             THE COURT:  Counsel.

1    MR. STUMP: Your Honor, I spoke just briefly right
2  before we walked in with Miss Phillips and Mr. Levy about
3  this issue. Certainly it is the position of the United
4  States that we would like to facilitate Miss Phillips being
5  able to obtain counsel if that is her choice, so I think it
6  is probably something we can work out between my office and
7  Miss Phillips and the Probation Office after this proceeding
8  because if there is some restriction on her movement that is
9  keeping her from being able to obtain an attorney, we are
10 going to lift that.
11    THE COURT: Yeah. I have got to tell you that
12 puzzles me because, for example, whenever we have monitoring
13 and somebody let's say is working, we always create an
14 exceptional window to permit the person to work. Now if we
15 have some other need and that the defendant has and the
16 defendant is subjected to security that is provided by
17 electronic monitoring, we also build in a provision that says
18 it is okay to spend time doing that and that does not somehow
19 violate the conditions.
20    So I don't know that we are really talking about a
21 problem. Tell me.
22    MR. KOLBUS: Good morning, your Honor, Brian
23 Kolbus, Pretrial Services. I could speak to that briefly.
24 Miss Phillips has requested time to go out and meet with
25 attorneys, and she has been given those opportunities to go

1  do that. We do expect her to give a time when she is leaving
2  and an estimated time of her returning.
3          THE COURT: Yes.
4          MR. KOLBUS: Those may be the constraints that she
5  is --
6          THE COURT: Is that a constraint, Miss Phillips?
7          MR. KOLBUS: And then, your Honor, as well the only
8  movement she wasn't given that I -- that I am aware of is
9  when she called the same morning of the time she needed it.
10 Unfortunately I was out of the office sick. We do ask people
11 to do schedules in a timely manner and in advance.
12         THE COURT: Miss Phillips, I was -- I really am
13 sort of mystified because the -- this program that we have is
14 not one that is graven in stone. You know, it provides
15 reasonable opportunities for whatever the particular needs
16 are. So the idea of saying that you were subject to
17 constraints doesn't sound -- doesn't sound as though it is a
18 real problem.
19         It sounds to me -- I don't know that any
20 modification has to be made, very frankly, because as far as
21 I am concerned reasonable time that is required to make
22 efforts to meet with potential counsel are certainly
23 something that I would expect that the -- that the Pretrial
24 Services people would be cooperative on. And I don't hear
25 anything different from what I have just heard.

1          So what is the constraint that you are talking
2  about?
3          THE DEFENDANT:  Again, as I stated before, I --
4  well, I didn't state this prior.  I have only had movement in
5  the morning and movement in the evening just to -- well, take
6  my children to and fro to school and back.
7          THE COURT:  Yeah.
8          THE DEFENDANT:  And then there has been some times
9  when I have set appointments, but the appointments were
10 scheduled due to other attorneys having trial dates or
11 whatever.
12         THE COURT:  Yeah.
13         THE DEFENDANT:  So those appointments were not
14 kept.  So then in the interim I had to reschedule, but it
15 didn't -- it conflicted with his schedule because he -- I can
16 only talk to him -- or, you know, he said I tried calling
17 that particular day.  I cannot -- it -- I won't get the
18 movement basically.  So if something is changed and the
19 schedule has changed, then there is no way that I could -- I
20 would make the appointment.
21         THE COURT:  I really don't understand that.
22         THE DEFENDANT:  Okay.  Well, I don't know how --
23         THE COURT:  When people make appointments, they
24 typically don't do it saying, "Okay, I will meet you in a
25 half hour and only then."  That is not how things work.  That

1   is not how ordinary gainful or non-gainful activity works
2   out.
3         When you want to make arrangements to meet with a
4   lawyer, typically there is no reason that that appointment
5   can't be made for day after tomorrow, or whatever it is, and
6   give you plenty of time to make the necessary arrangements
7   because that is properly built into the monitoring
8   arrangement.  Simply get enough lead time and then go ahead
9   and engage in your efforts to get a lawyer.
10        I am -- I am certainly willing to give you a couple
11  of weeks.  That is a non-problem.  What I am saying is that
12  in terms of your planning there -- I see no reason at all
13  that you shouldn't be able to accommodate yourself so the
14  requirements that you give enough lead time to the people who
15  are in charge of monitoring the monitoring to say, "That is
16  okay, that fits."  So it beats me that that should somehow
17  offer a problem.
18        I am willing to give you let's say two weeks from
19  now and then see where we stand.  Actually two weeks from now
20  would get us into -- that is -- that would get us into the
21  holiday week and that is -- you are probably going to need
22  more time than that.  Suppose that I set this for the --
23  January 3rd or 4th, that is, Thursday or Friday.  That is
24  like two and a half weeks.  That should give, I would think,
25  enough time for you to explore whatever you are planning to

1    explore in terms of retaining counsel.  Okay?

2    THE DEFENDANT:  Okay.  I would just like to say as
3    well just the liberty has been taken away just to be able to
4    do that.  And like I said if we could -- if we could make
5    some type of arrangements with the ability to move in between
6    that time, that would be a --

7    THE COURT:  I am not -- I am not mindful of the
8    notion of reconsidering the order that was entered that
9    provided for -- you say liberty has been taken away.  In fact
10   it is the other way around.  Liberty has been conferred by
11   having the modest requirement of the monitoring arrangement
12   as contrasted with detaining you, which was not our desire.
13   And I thought that cooperation was demonstrated quite
14   admirably with the fact that when we adjourned that first
15   time around, you were able to work out a release order.

16   Remember that it was your not well-considered
17   filing that I finally I hope got you to see the light of day
18   and you withdrew your protest against the release order that
19   permitted me to continue the thing in force.  So don't talk
20   about restraints being implied -- employed.  It is the other
21   way around.  The efforts have been made to assist you by
22   giving you and retaining the release conditions that you
23   yourself had disclaimed.  I didn't do that.  And you really
24   have got to think about that.

25   So I have no problem with -- I am willing to give

```
 1  you either the 3rd or the 4th at let's say 9:30 as a status
 2  to find out your success or lack of it in terms of being able
 3  to retain counsel.  And any preference?
 4            MR. STUMP:  Not from the United States, your Honor.
 5            THE COURT:  How about you?
 6            THE DEFENDANT:  The 4th would be better.
 7            THE COURT:  All right.  So status is set for
 8  January 4th, 2013 at 9:30.
 9            Sandy, double check, do I already have a 9:30?
10            THE CLERK:  No, I think you have got a 10:00
11  o'clock.  Let me look.
12            You have got a 10:00 o'clock.
13            THE COURT:  Okay, 9:30 then.  And time is excluded
14  under 3161(h)(7)(a) and (b)(iv), again continuity of counsel,
15  and that applies for the entire period of 18 days inclusive
16  that runs from tomorrow through January 4th.  Okay?
17            Thank you.
18            Yes?
19            MR. STUMP:  Your Honor, while we are here there is
20  one issue I wanted to bring up for the Court.
21            THE COURT:  Yes.
22            MR. STUMP:  It is very small.  There was a search
23  warrant that preceded this case.  And the search warrant was
24  placed under seal.  And I need to provide a copy to the
25  defense and also some States Attorneys' offices have
```

1 contacted me about possibly providing them with a copy of the
2 search warrant. And all I would need to know, your Honor, is
3 how you would like me to address that motion. If I can make
4 that orally here today.
5       THE COURT: Who placed that one under seal?
6       MR. STUMP: It was placed under seal at the time
7 while the investigation was still ongoing.
8       THE COURT: So it was before indictment?
9       MR. STUMP: It was before indictment, your Honor.
10       THE COURT: So the Chief Judge probably, right, or
11 not?
12       MR. STUMP: That was the question I had, your
13 Honor, how to address that motion.
14       THE CLERK: It was probably a miscellaneous case
15 number assigned to it. Right?
16       MR. STUMP: Yes.
17       THE CLERK: So you are probably going to have to
18 address it to the Chief Judge or the Magistrate Judge?
19       THE COURT: Why don't you find out who entered it
20 because basically whoever the judicial officer is who entered
21 it ought to be consulted in the first instance about lifting
22 it. I certainly don't have a problem with that.
23       MR. STUMP: Yes, sir, I will do that. Thank you.
24       THE COURT: Yes, thank you. Thank you all.
25       MR. STUMP: Thank you, your Honor.

1 (Which were all the proceedings heard.)

2 CERTIFICATE

3 I certify that the foregoing is a correct transcript

4 from the record of proceedings in the above-entitled matter.

5

6 s/Rosemary Scarpelli/    Date:  February 11, 2015