```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3     UNITED STATES OF AMERICA,        )  No. 12 CR 872
                                        )
 4                       Plaintiff,     )  Chicago, Illinois
                                        )  July 16, 2013
 5                                      )  10:00 o'clock a.m.
       -vs-                             )
 6                                      )
                                        )
 7     CHERRON MARIE PHILLIPS,          )
                                        )
 8                       Defendant.     )

 9
                     TRANSCRIPT OF PROCEEDINGS - STATUS
10               BEFORE THE HONORABLE MILTON I. SHADUR

11     APPEARANCES:

12     For the Plaintiff:    HON. GARY SHAPIRO, by
                             MR. NATHAN D. STUMP
13                           Special Assistant United States Attorney
                             9 Executive Drive
14                           Fairview Heights, Illinois 62208

15
       For the Defendant:    Cherron Marie Phillips, pro se
16                           P.O. Box 802625
                             Chicago, Illinois
17

18

19

20

21

22

23     Court Reporter:       ROSEMARY SCARPELLI
                             219 South Dearborn Street
24                           Room 2304A
                             Chicago, Illinois 60604
25                           (312) 435-5815
```

1          THE CLERK:   12 CR 872, USA versus Cherron Marie
2     Phillips.

3          THE COURT:   Step up, please.

4          MR. STUMP:   Good morning, your Honor, Nathan Stump
5     on behalf of the United States.

6          THE DEFENDANT:   River Tali on behalf of defendant
7     Cherron Phillips.

8          THE COURT:   Good morning.  As you know, we are
9     scheduled for trial on the 29th of this month.  And the
10    Government has filed two things.  One is a motion for a
11    hearing, Ms. Phillips, as to your status pro se, that is, to
12    represent yourself, and also as to the possible appointment
13    of standby counsel.  They have also filed a motion that has
14    to do with the some aspects of the evidence that they are
15    saying should be permitted in the course of trial.

16         But the first thing that I have to do is basically
17    to deal with the question about your self-representation.
18    And, Mr. Stump, there is no reason you have to be standing
19    here.  I am going to have Ms. Phillips do that only because
20    she is at the microphone, and that helps Rosemary with the
21    machine.

22         It seems to me that early on I advised you that you
23    have a constitutional right to go in either of two
24    directions.  One is to have an attorney representing you,
25    which is the most usual aspect of criminal proceedings, and

1    the other one is to represent yourself.  The Supreme Court

2    has confirmed in a case years ago, Faretta against

3    California, that every individual has that constitutional

4    right.

5              Looking at the first part is the other alternative.

6    You understand that if you are not able to afford an

7    attorney, the Court would appoint one without cost under the

8    -- what is called the Criminal Justice Act if that -- if your

9    inability is established.

10             And the offense that, as you know, you are charged

11   with actually, although it is short, it covers what are

12   called 12 different counts because each one of the 12 counts,

13   even though the thing is only, what, twos pages long I guess

14   -- yes, each one of the 12 counts charges a separate action.

15   And what that means is that basically it is as though we

16   would have 12 mini trials going on at the same time in

17   connection with that.

18             Now let me just ask as a confirmative matter, you

19   do understand that you have a right to an attorney if you so

20   choose?

21             THE DEFENDANT:  Yes.

22             THE COURT:  And have you considered and have you

23   decided that you want to want to obtain counsel or not?

24             THE DEFENDANT:  I do object to counsel.

25             THE COURT:  So I guess the short answer is that you

1    are choosing to represent yourself, is that right?

2              THE DEFENDANT:  Yeah.  For the record, your Honor,

3    I would make all of the continued -- I will continue to obey

4    all of the Court's request, and I think that I should be able

5    to --

6              THE COURT:  Well, I have to go through a lot of

7    questions in that regard, if you will be somewhat patient.

8              THE DEFENDANT:  Okay.

9              THE COURT:  Once you have said, as you have, that

10   it is really not a matter of the financial aspect but

11   actually your desire to represent yourself as that exercise

12   of your constitutional right.  You are not saying that you

13   want to represent yourself because you can't afford a lawyer,

14   am I right?

15             In other words, your reason for saying you want to

16   represent yourself is not based on the financial inability to

17   compensate a lawyer, am I right about that?

18             THE DEFENDANT:  Well, you are -- basically you are

19   asking me is it a financial issue?

20             THE COURT:  Right.

21             THE DEFENDANT:  Financial issues -- I don't know --

22   by answering that question will I prejudice myself at all?

23             THE COURT:  No, I don't think so.

24             THE DEFENDANT:  Okay.

25             THE COURT:  Okay.

1          THE DEFENDANT:  Okay.  I would rather not answer

2     that question because it is not about financial, it is --

3          THE COURT:  Well, I am not trying to probe into

4     your finances --

5          THE DEFENDANT:  Okay.

6          THE COURT:  -- or ask what you have in the way of

7     assets.  I am asking a different question, and that is -- I

8     tried to explain.  If your concern is in part or in whole the

9     idea of having to compensate a lawyer, the -- we have the

10    Criminal Justice Act under which if somebody makes

11    appropriate filing that shows inability to pay counsel, the

12    Court appoints counsel from what we call the Federal Defender

13    Program.

14         So that I simply want to make sure that you are not

15    saying that the reason you are making the choice that I will

16    be getting into is -- you are not saying that that is because

17    of the fact that you can't afford counsel.  Is that a fair

18    statement?

19         THE DEFENDANT:  Yes, that would be a fair

20    statement.

21         THE COURT:  Okay.  So let's then go through the

22    kinds of questions that I have to ask in order to make sure

23    that you are able to represent yourself.  Okay?  The first

24    question is, have you ever studied law?

25         THE DEFENDANT:  By answering that question will I

1    prejudice the defendant?

2         THE COURT:  I don't know what you mean by
3    "prejudice the defendant."  That is -- the -- it is not a
4    question that subjects you to the -- to some kind of criminal
5    charge.  It is a question that you can respond without
6    subjecting yourself to any kind of criminal proceeding as
7    such, although I do expect that you are going to be providing
8    truthful answers to the questions that I pose.

9         THE DEFENDANT:  Well, can I just make a statement.
10   I -- just for the record I will obey the Court based on the
11   continuing notice of reservation of my rights, titles and
12   immunities without prejudice, if I can make that statement.

13        THE COURT:  Well, you can make all the statements
14   you want, but that doesn't excuse the fact that I have an
15   affirmative obligation under the law to make inquiry into
16   some things in order to make sure that you are indeed capable
17   of representing yourself because criminal proceedings are
18   complicated.  They are sometimes difficult for lawyers, let
19   alone non-lawyers.  And I have to make sure of your ability
20   to handle matters as they come up in the course of a
21   lawsuit -- a criminal case because you see I cannot represent
22   either side, you understand.

23        THE DEFENDANT:  I do.

24        THE COURT:  That is not my role.

25        So again, have you ever studied law as such?

1          THE DEFENDANT:  I have read the criminal justice --

2    whatever -- sorry -- excuse me, the Federal Rules of Civil

3    Procedure and the Federal Rules of Criminal Procedure.

4          THE COURT:  Okay.  So have you ever represented

5    yourself in any other criminal action?

6          THE DEFENDANT:  Again I would have to say, by

7    answering that question will I prejudice the defendant?

8          THE COURT:  I don't mean what you mean by prejudice

9    yourself.  I am -- I guess what I am asking is in terms of

10   experience.  You have just said that you have studied the

11   Federal Rules of Criminal Procedure.  Rules of Civil

12   Procedure don't apply here.  You have read the Federal Rules

13   of Criminal Procedure.  And I have asked -- I am now asking

14   whether you have ever represented yourself in some other

15   criminal case.

16         THE DEFENDANT:  I have never had a criminal case.

17         THE COURT:  Okay.  Well, that is a good answer to

18   that one.

19         You understand that you are charged with these 12

20   crimes that are set out in -- the indictment says that while

21   aiding and abetting, that is assisting basically, and while

22   being aided and abetting -- abetted, that means that other

23   persons may have assisted you -- that you filed and attempted

24   to file in the public record of the Cook County Recorder of

25   Deeds what the Government charges is a false lien and

1    encumbrance against the real and personal property of 12

2    persons.

3              And the allegation in the indictment is that all of

4    them were then employees and officers of the United States

5    Government.  So those persons who are identified in these

6    counts are the Chief United States District Judge, another

7    United States District Judge, the United States Attorney and

8    Assistant United States Attorney, United States District

9    Court Clerk, a -- four different federal task force officers,

10   one federal agent and two United States Magistrate Judges.

11             Those are the charges that are here.  I am not

12   asking you to speak to those.  You have already entered a --

13   or I shouldn't say "entered."  You didn't enter any plea, but

14   I entered a not guilty plea on your behalf in connection with

15   these because you didn't -- you wouldn't take a position on

16   that.

17             And then the indictment goes on to say that you

18   filed those false liens and encumbrances against each of them

19   because of the performance of their official duties.  And it

20   is further charged that you knew and had reason to know that

21   each of those liens and encumbrances was false and contained

22   a materially false, fictitious and fraudulent representation,

23   including a false claim that each of those listed persons

24   owed your brother $100 billion.

25             So that is the nature of the -- of the charges.

1    You understand that?

2            THE DEFENDANT:  Judge, my answering that question,

3    will that prejudice the defendant?

4            THE COURT:  I am simply asking whether you

5    understand that that is the nature of the charges.  I am not

6    asking you to take a position with respect to the charges as

7    such.

8            THE DEFENDANT:  Yes, but by answering -- I am

9    asking you now, by answering that question will that

10   prejudice the defendant?

11           THE COURT:  I don't know what you mean by prejudice

12   you because I am not asking questions -- any questions in

13   this respect that would subject you to an adverse

14   determination.  Indeed I have deliberately been posing these

15   questions without your being placed under oath so that it is

16   not a matter of your being subject to a claim of perjury or

17   making a false statement.  I am just trying to get factual

18   responses to factual questions.

19           THE DEFENDANT:  Yes, sir.  But again, by answering

20   that question will it prejudice the defendant because there

21   is also a record here?

22           THE COURT:  Ma'am, you know, what we have here is a

23   failure to communicate.  I don't know if you ever saw Cool

24   Hand Luke.  But I have posed questions to you that are really

25   straightforward questions.  I don't know what you mean by

1    "prejudice" in that context.  I have given you the only kind

2    of assurance that I have -- can give you, and that is I have

3    not -- I have deliberately not had Sonya place you under oath

4    because I just want to get a straightforward factual response

5    which then enables me to make a determination about whether

6    you are capable of representing yourself as you want to do.

7           THE DEFENDANT:  Okay.  Well, again for the record,

8    I will continue to obey the Court based on a continuing

9    reservation of my rights, titles and immunities without

10    prejudice.

11           THE COURT:  Okay.  You understand that if you are

12    found guilty of more than one of these crimes, the Court

13    would have the power to order that your sentences be served

14    either one after the other, that is consecutively, or what

15    are called concurrently, that is all at the same time.  So

16    that the fact that there are 12 different charges means that

17    the potential penalty is much greater if the -- if a court

18    were to decide that the sentences would be consecutive or in

19    part.  You understand that?

20           THE DEFENDANT:  Again I have to say, will -- by

21    answering that question -- or I ask you by answering that

22    question --

23           THE COURT:  You don't have to repeat what you have

24    said because in candor you are not understandable when you

25    talk about prejudice.  And so if your -- I will simply take

1    it that you are a sufficiently intelligent person to

2    understand what I have just dealt with.  Although I continue

3    to have to ask them and ask questions.  Okay?

4              And I -- backing up for a minute, you understand

5    that each one of those charges carries with it a potential

6    for ten years of imprisonment which as I say could be

7    concurrent, that is, all served at the same time, or

8    consecutive.  So that you know at least the theoretical

9    component of it is that being -- if you were to be found

10   guilty of all 12 and if the Court were to impose the

11   sentences consecutively, that could add up to 120 years,

12   although the realistic prospect of that is nonexistent, but I

13   am obligated to apprize you of that fact so that you have

14   that fact before you for purposes of my going on with other

15   questions.

16             I should also represent that I believe that each

17   count has a potential for I think probably a $250,000 fine,

18   and therefore if that were to be tacked on to each other,

19   that could technically be as much as $3 million, although the

20   Court is not in a position simply to take a boxcar number and

21   say that is it.  Before any kind of fine would be imposed the

22   Court would have to make a determination about your capacity,

23   your ability to bear a fine either out of what your assets

24   are or out of what your earning potential is.

25             And whether or not I impose a nickel's worth of

1    fine, each count does carry with it what is called a special

2    assessment of $100.  And that one is clearly an add-on

3    figure.  So that if you were found guilty of more than one of

4    these charges, it would be that number of guilty findings

5    times $100, whether or not a fine is chosen to be imposed.

6              So let me go on.  You have talked about the federal

7    -- well, let me back up.  If you decide to represent

8    yourself, just as I have indicated, you know, I -- you are on

9    -- basically on your own.  It is not my potential to either

10   tell you or even advise you on how you should try your case.

11   That is going to be your decision.  You understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Okay.  Are you familiar with the

14   Federal Rules of Evidence?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Really?  Can you tell me what your

17   understanding of hearsay is.

18              THE DEFENDANT:  I am familiar with the Federal

19   Rules of Evidence.  However, at this time I could not

20   elaborate on it.

21              THE COURT:  Let me go on.  You understand that the

22   Rules of Evidence control what kind of evidence can or may

23   not be introduced during the trial.  And in representing

24   yourself you would have to abide by rules that I will tell

25   you by definition are technical in nature.  I served some

1    penance as the chairman of the Judicial Conference's Advisory
2    Committee on the Rules of Evidence, and I can assure you that
3    to describe them as complex is probably an understatement.
4    But I frankly had a serious concern as to the ability of
5    someone who is unlettered in what are really highly technical
6    and really arcane rules to be able to handle that in the
7    context of a trial.

8         Let me go on.  You have referred to the Federal
9    Rules of Criminal Procedure.  You understand that those rules
10   also govern the way that any criminal case goes forward and
11   that you are bound by those rules as well.  Understand that?

12        THE DEFENDANT:  Right.  I have explained to the
13   Court and stated that I will obey the Court based on the
14   continuing notice of reservation of rights and titles and
15   immunities.

16        THE COURT:  Now let me -- let me tell you I am
17   compelled to advise you that in my opinion a trained lawyer
18   would defend you much better than you are in a position to
19   defend yourself, and I believe that it is not wise of you to
20   try to represent yourself.  Although you have said in general
21   terms that you are familiar with this or you are familiar
22   with that, you really are not sufficiently familiar with the
23   law, rules of evidence.  You have demonstrated in the past in
24   connection with this case that you are sufficiently familiar
25   with court procedures to be representing yourself, and as a

1    result I will tell you I urge you very strongly not to try to
2    represent yourself.

3           With my having said that, because I think it is my
4    obligation to do that in light of the penalty that you might
5    suffer if you are found guilty of one or more of these
6    charges, and in light of the difficulties of representing
7    yourself, do you still desire to represent yourself and give
8    up your right to be represented by a lawyer?

9           THE DEFENDANT:  Well, I -- I do continue -- I plan
10   to continue to reserve my rights.

11          THE COURT:  Well, reserving your rights -- once you
12   get started you can't have it both ways, that is, although
13   the practice -- in the rare cases where defendants choose to
14   represent themselves the practice is to appoint standby
15   counsel.  Standby counsel is -- we have had some background
16   experience in this case in which standby counsel had been
17   appointed, but you understand that the standby counsel is not
18   really your lawyer and therefore a person can't say, "Well, I
19   am going to represent myself," and then in midstream say, "I
20   change my mind and I want a lawyer to represent me."

21          The practice is that once you have launched on a
22   course in either direction, that is the course that gets
23   pursued throughout the trial.  So that your decision as to --
24   as to saying that you are choosing to represent yourself, but
25   you may have second thoughts, you may have buyer's remorse or

15

1    seller's remorse, or whichever it would be, is not something

2    that is available because the constitutional right is not one

3    that is a hybrid right.  A person can't have both -- have it

4    both ways.

5              And I am not -- I am not basically telling you.  I

6    have already strongly urged you not to try to represent

7    yourself.  And that being true and hearing your responses, I

8    am not sure that your decision is knowingly as well as

9    voluntarily waiving right to counsel.

10             Let me -- let me ask, if I may, the prosecutor.

11   What is -- what is the Government's position on this one?

12             MR. STUMP:  Your Honor, I -- the Government's

13   position is that if the defendant wishes to represent

14   herself, that the Court should grant her that right but also

15   appoint a standby counsel.  And I will add to this.

16             THE COURT:  Standby -- but you have got to

17   understand something.  You know, if I believe that someone is

18   not fully capable of representing himself or herself -- I

19   don't mean to say that this then is an analogous situation

20   because I -- this is certainly not true of Ms. Phillips.  But

21   suppose that I made a determination after conducting a

22   hearing that a defendant was not competent in the legal

23   sense.  I could not under those circumstances permit that

24   defendant to go ahead and represent himself or herself simply

25   because they say, "I want to do it."  I think that

1  misunderstands the role of the Judge, the Court, in terms of
2  what should and has to be done.

3  And just as I could not properly permit someone
4  whom I found not mentally competent to represent himself or
5  herself -- and I want to emphasize I am not saying that for a
6  second, Ms. Phillips, that is -- I don't mean to have an
7  imperfect analogy, but basically it amounts to the same
8  thing, that is, if I determine that notwithstanding the
9  things that you have said, that you really haven't
10 demonstrated an effective ability to represent yourself, I am
11 hardly in a position to deal with that.

12 And I haven't had the opportunity to review myself
13 the case law on this to see whether Faretta and its progeny
14 come out that way or not.  I will tell you that I have very
15 strong reservations about permitting this trial to proceed
16 based on what I have now been hearing from Miss Phillips.  It
17 may be necessary, I believe, to appoint counsel to represent
18 her because -- not standby counsel -- counsel to represent
19 her because I do not view her as effectively capable of
20 defending herself against very serious criminal charges.

21 You know, this is -- this is not a game at all.
22 This is serious business.  The kind of penalty that Congress
23 has proscribed as potentially there -- and I am not
24 suggesting what an ultimate penalty might be if you were to
25 be found guilty -- but the very fact that Congress has put

1    that kind of labeling on the charged offenses here under

2    Section -- what is it, 1521 -- yeah, under Section 1521 of

3    Title 18, that is serious business.

4          And I cannot in good conscience permit somebody

5    essentially to subject herself to that potential if I am --

6    if my belief is, based on what I have heard, that she is

7    really not -- she may have all the self-confidence in the

8    world, but that is not equivalent of the ability effectively

9    to represent herself.

10         MR. STUMP:  Your Honor, may I be heard on that

11   briefly?

12         THE COURT:  Pardon?

13         MR. STUMP:  I just would like to address the Court

14   on that issue, if I could.

15         THE COURT:  Go ahead.

16         MR. STUMP:  It is the position of the Government --

17   and, you know, this case has been pending since November of

18   last year --

19         THE COURT:  I am well aware of that.

20         MR. STUMP:  -- and that we have been over this

21   ground to some degree before.  And in discussions with Miss

22   Phillips that were not in the courtroom -- she and I have

23   also discussed this issue -- from where I stand, your Honor,

24   there is nothing new in what she has presented to the Court

25   today in the way that she has responded to the Court's

1  questions.

2       I understand that the --

3       THE COURT:  Well, I have been concerned about that
4  right along, but I haven't had to make an ultimate
5  determination in that respect.  I have respected Miss
6  Phillips' position.  I respected everything that she has
7  filed.  I have paid attention to that.  But that is a quite
8  different matter from her subjecting herself to jeopardy in
9  connection with the actual conduct of a criminal trial where
10  I do not believe that she has established her capacity on a
11  knowing basis.  Even the hedged responses that she has been
12  making this morning tend to reinforce what I have said, and
13  it is my call I believe to -- I appreciate your view, and I
14  know that you have -- you had included in your -- in your
15  motion the prospect of appointment of standby counsel.  And
16  of course at a minimum that would be the thing that would
17  have to be done.

18       But I have tried to visualize the procedure and
19  proceedings and the experience that we have had up to now
20  without a jury and without this being a trial, with standby
21  counsel making an effort to assist, do not -- does not
22  instill confidence, as far as I am concerned, in her ability
23  to proceed.

24       I will tell you what I am -- I am going to do:  I
25  am going to recess these proceedings until just shortly after

1   1:00 o'clock.  In the meantime I am going to take a look to

2   see whether I am correct in my belief because this is an

3   extraordinarily unusual situation and I have not had occasion

4   to deal with it up to now, although I suspect over the years

5   I have been called on to deal with most of the problems that

6   may arise.  This is not one of them.  And I will -- I will

7   take a look to see whether it is in fact the Court's

8   obligation and power to reject a stated decision of wishing

9   to exercise constitutional rights of self-representation.

10          There are limits, and the obvious one that I have

11  identified is if someone with respect to whom we have serious

12  question about competence were to give exactly the same

13  answers that Miss Phillips has given, there isn't any

14  question in my mind that the Court would have the

15  responsibility to say, "No, you can't do it.  You have got --

16  you are not competent to make that decision."

17          This is not exactly a parallel, obviously, and I

18  have tried to make that very plain.  I am not for a moment

19  challenging Ms. Phillips sincerity nor am I challenging her

20  ability to respond, if she chooses, to questions.  But she

21  has chosen not to, you know.  That is her call.  And that in

22  turn makes it my call, as I view it.

23          MR. STUMP:  Yes, your Honor.

24          THE COURT:  So we are going to stand in recess

25  until 1:00 o'clock.

```
1              And I don't have anything else on the call for
2    today, right?
3              THE CLERK:  No.
4              THE COURT:  Let's make it 1:15 instead.
5              THE DEFENDANT:  Excuse me.
6              THE COURT:  Yes?
7              THE DEFENDANT:  Your Honor, may I -- are you
8    stating that you are saying that I have not answered -- did
9    you just make a statement that I had answered your question?
10   Is that --
11             THE COURT:  Oh, no, I heard your answers.  But that
12   is somewhat different from whether they have been fully
13   responsive to my questions.  No, I heard what you have said.
14   I listened very carefully to what you have said.
15             But in any event we are in recess until 1:15.
16   Thank you.
17             THE CLERK:  This Court stands in recess.
18
19
20
21
22
23
24
25
```

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3        UNITED STATES OF AMERICA,        )   No. 12 CR 872
                                           )
 4                         Plaintiff,      )   Chicago, Illinois
                                           )   July 16, 2013
 5                                         )   1:15 o'clock p.m.
          -vs-                             )
 6                                         )
                                           )
 7        CHERRON MARIE PHILLIPS,          )
                                           )
 8                         Defendant.      )

 9
                     TRANSCRIPT OF PROCEEDINGS - STATUS
10              BEFORE THE HONORABLE MILTON I. SHADUR

11        APPEARANCES:

12        For the Plaintiff:    HON. GARY SHAPIRO, by
                                MR. NATHAN D. STUMP
13                              Special Assistant United States Attorney
                                9 Executive Drive
14                              Fairview Heights, Illinois 62208

15
          For the Defendant:    Cherron Marie Phillips, pro se
16                              P.O. Box 802625
                                Chicago, Illinois
17

18

19

20

21

22

23        Court Reporter:       ROSEMARY SCARPELLI
                                219 South Dearborn Street
24                              Room 2304A
                                Chicago, Illinois 60604
25                              (312) 435-5815
```

1        THE CLERK:  12 CR 872, USA versus Cherron Marie
2    Phillips.
3        THE COURT:  Do you want to step up and identify
4    yourselves once more for the record, please.
5        MR. STUMP:  Good afternoon, your Honor, Nathan
6    Stump on behalf of the United States.
7        THE DEFENDANT:  River Tali on behalf of the
8    defendant Cherron Phillips.
9        THE COURT:  Thank you.
10        Mr. Stump, you may be seated because I want to
11    continue with Mr. Phillips.
12        Mr. Stump has just handed up what he calls a notice
13    of case law in support of the Government's motion for the
14    appointment of standby counsel.  Not surprisingly the
15    principal case that he refers to is precisely the same case
16    that my own look had come up with, and that is a decision
17    about four years ago from our own Court of Appeals in which
18    my colleague, Judge Zagel, had a situation in which he was
19    confronting the same kind of problem, that is, someone that
20    he did not view, just as I do not view you, as lacking in
21    competence to handle the case.  But he had -- he shared the
22    concern that I did and do now about your ability to represent
23    yourself effectively.
24        And what is -- it is sort of startling in its
25    parallel because I want to read to you the -- what was quoted

1   in the Court of Appeals decision.  That is a case called

2   United States against Barry which was decided in 2009.  It is

3   565 F.3d, Page 385.  And I want you to listen and see

4   whether any of this has a familiar tone to you.

5           Judge Zagel went on in this way in a discussion:

6   "Mr. Barry, you have indicated to me that you wish to

7   represent yourself in this case, is that true?"  And the

8   defendant said, "Yes, it is."  And the Court then said, "I am

9   required by law to explain certain things to you, and even if

10  I weren't required by law, I would explain them anyway.  And

11  basically this amounts to a warning that it is almost never a

12  good idea to represent oneself in any kind of case and

13  particularly in criminal cases.  I have had occasion to read

14  now several of the papers you filed with me, and I have to

15  tell you that my impression is that you have very little

16  understanding of the law, very little understanding of the

17  rules of evidence, very little understanding of what would be

18  relevant in the nature of a defense.  There is nothing that

19  indicates to me that you have any ability to examine a

20  witness or to cross-examine a witness.  I believe that

21  evidence to which you might have a valid objection might be

22  offered, and I believe you would not know that you had the

23  right to object or how to object.  In short I believe that

24  representing yourself in this case, particularly this kind of

25  case which deals with financial issues" -- now that is

1  applicable there -- of course this present one is a different

2  one -- "is a very unwise and very foolish thing for you to

3  do.  I want you to understand that is my opinion."  Do you

4  understand that?  Defendant said, "Yes, I do."

5          Judge Zagel went on:  "In addition to my belief

6  that you would be unable to defend yourself adequately, I

7  also believe that if something went on during the course of

8  the trial that was an error, something where you had the

9  right to appeal, you know so little about the law that you

10  would be unable to preserve the record to permit you to

11  appeal even an error that was unmistakably wrong.  Do you

12  understand what I have just said to you?"  Answer:  "Yes, I

13  do."

14          "The other thing is I do not believe, and I am

15  particularly clear about this based on what I have heard from

16  you before, that if you had a good defense to these charges

17  and you would have wanted to put on evidence to establish

18  that defense, you would not know how to do it.  And as a

19  consequence even if you had a valid defense, you may be

20  unable to make it to the jury which would try the case.  Do

21  you understand that this is my opinion?"  Answer:  "Yes, I

22  do."

23          Judge Zagel again:  "In addition to that I think

24  you have obviously no experience with picking jurors and for

25  this reason you may not effectively be able to make

1    challenges for cause for certain jurors or make an informed

2    decision as to exercising preemptory challenges.  You

3    understand that is my view of your abilities here?"

4    Defendant said, "Yes, I do."

5        And Judge Zagel said, "And notwithstanding that,

6    notwithstanding the warnings that I have given to you in

7    repeating to you an old legal maxim, which is a lawyer that

8    defends himself" -- and you are not even a lawyer -- "has a

9    fool for a client.  Despite my warnings to you, do you still

10   desire to represent yourself?" And the defendant said:  "Yes,

11   I do."

12       And at that point Judge Zagel was satisfied that

13   what was involved was an informed choice, although he thought

14   it was a foolish one.  He permitted the defendant to proceed

15   pro se.  He did, however, urge the defendant to consider

16   standby counsel.  The defendant agreed to that.  And so the

17   case then went to trial.

18       Well, the end of that trial was a guilty verdict,

19   and the defendant then took an appeal on the ground that he

20   should not have been permitted by the Court to represent

21   himself.  And the Court of Appeals said, no way, you made

22   your choice and that is the consequence of your choice, and

23   we are not going to bail you out.  And having done that the

24   Court referred to what had been a quite recent Supreme Court

25   opinion -- well, I shouldn't say "quite recent."  It came

1    down a couple of years before -- but basically that -- that

2    determination by the Supreme Court was one that said that the

3    right to represent yourself is not absolute.  But the Court's

4    decision essentially dealt with the idea of forcing counsel

5    on an unwilling defendant who, incompetent to stand trial,

6    suffered from a mental illness that would cast doubt on the

7    ability to serve as his own lawyer.

8         And the Court, Supreme Court, at that point made it

9    clear that although the right to proceed on your own is

10   anything but absolute, they essentially limited the thing to

11   a situation in which there is something that might be a

12   severe mental illness, that is, incompetence or something

13   very close to it.

14        The bottom line is that our -- under the authority

15   of our Court of Appeals, despite my solicitude for your

16   ability or what I think of as a serious question about the

17   lack of ability to represent yourself, I am going to grant

18   your right to do that.  I do, however, feel that I can't

19   really -- given the technical aspects of it, I feel that it

20   is essential that you have standby counsel to assist you in

21   terms of technical aspects to the extent that you feel that

22   you need such assistance, and also in situations in which

23   from the context it is obvious that something has to be done

24   simply in order to comply with the technical aspects of

25   trial.

1       Now, do you have a problem with that?  Now you
2   understand standby counsel is not going to be your lawyer.
3   You are the one who is going to represent yourself because
4   that is your choice.  But standby counsel is there as a
5   resource to assist you with matters that I would characterize
6   as technical in nature that you really, because of lack of
7   full knowledge, of which I won't fault you for -- it is
8   certainly not your training -- would make it difficult for
9   you to handle the matter.
10      You understand that?
11      THE DEFENDANT:  Well, yes, I understand what you
12  just said.
13      THE COURT:  And do you -- and do you have a problem
14  with the appointment of standby counsel, which I think is
15  essential just to be available to you for that purpose, not
16  to make decisions for you.  You have a right not to --
17  certainly not to consult that person for purposes of deciding
18  on how you want to proceed, what questions you want to ask
19  and so on.  That is your call because that is what you are
20  are going to do when you represent yourself.
21      But on the other hand if, for example, a question
22  that you pose is an improper question and Government counsel
23  were to object, I think you would probably have difficulty in
24  explaining on what basis the question is proper in your view,
25  and I don't want you to be a position to be totally

1    disadvantaged in that situation.  Understand?

2          THE DEFENDANT:  Is it possible that I could choose

3    my own counsel, standby counsel?  I mean not saying that it

4    would be someone that is in the Court, but it would be

5    someone outside of the Court.  I mean I have people that are

6    assisting me.  So it doesn't matter if I --

7          THE COURT:  No, no, wait just a minute.  I don't

8    know if you recall -- do you recall a name Judge Ito?

9          THE DEFENDANT:  Who is that?

10         THE COURT:  Ito, I-T-O, out on the West Coast on a

11   case in which what happened was the proceeding was

12   interrupted regularly to take a recess while questions were

13   being dealt with outside of -- outside of the court

14   proceedings.  We can't have that.  That is really not an

15   appropriate way.

16         So, no -- the answer is no.  You can choose someone

17   to assist you, but the person is going to be here in court,

18   not outside of the court so that we have to adjourn every

19   time you want to consult with somebody.  That we cannot

20   permit.  So I don't care, you can -- you can use a lawyer to

21   assist you.  And I am not sticking you with somebody.  If you

22   are in a position to choose somebody to handle the matter for

23   you -- to assist you, I should say, it is all right with me

24   and I don't see any problem with it, but it is not going to

25   be in the context in which we interrupt the trial for

1    purposes of your saying, well, I have got to consult with so

2    and so and so let's take an adjournment for whatever in order

3    to permit to you do that.

4          Trial decisions have to be made right here in court

5    and as they arise, which is one reason of course -- it goes

6    back to the point that I have made, and that is that it is

7    awfully difficult for somebody who is not a lawyer to cope

8    with the requirements that are imposed on a person under the

9    law.  But I have already said I am going to honor your

10   determination because it seems to me that is the clear signal

11   I get from our Court of Appeals, drawing upon the more recent

12   Supreme Court determination.

13         So the answer is, yes, if you want to choose

14   somebody rather than having -- you know, the way, by the way,

15   that matters of this nature get determined, if we were to

16   look at the Federal Defender Program, is that we -- whoever

17   would be the duty attorney today would be the person who

18   would be chosen.  That is just a matter of their ordinary

19   routine that deals with that.  So I am not insisting that you

20   do that, but what I am telling you is if you want to choose

21   someone to assist you, be my guest.  It is not a problem.

22   But it has got to be somebody who is prepared to do it here

23   in court.

24         Now I don't know, do you want to make that decision

25   now, or what do you want to do?

1      THE DEFENDANT:  Well, could I make the decision

2  maybe by Friday?

3      THE COURT:  Yes, I don't see a problem with that.

4  Well, wait just a minute.  Yeah, because if then your

5  decision is that you are -- you are prepared to accept a

6  standby counsel that would be appointed in the regular

7  rotation in the Federal Defender Program, I think the time

8  between Friday and the start of the trial a week from Monday

9  would be enough to let that person get up-to-speed.  I don't

10  see a problem with that.  So if you want to make that -- yes,

11  counsel?

12      MR. STUMP:  The only concern I have is that, as the

13  Court is well aware, a defendant who receives appointed

14  counsel is not entitled to the appointed counsel of her

15  choice.  And I have a slight concern that whoever she might

16  choose would also be licensed to practice law, admitted

17  before the Court.

18      THE COURT:  Well, of course that is --

19      MR. STUMP:  So the prerequisites to --

20      THE COURT:  That is a given.  I talked about having

21  a lawyer, because you are not in a position to consult with a

22  nonlawyer to assist you.  If you want to have a lawyer,

23  somebody who is trained and can pick up on the kinds of

24  things that because of lack of experience you are not in a

25  position to do basically on your own, and you want to choose

1    a lawyer who is not part of the Federal Defender Program, I

2    will permit you to do that.  And I will designate that person

3    as standby counsel.

4              Of course that person would not be compensated out

5    of the -- under the Criminal Justice Act because I assume

6    that would be a person who is not qualified as part of the

7    Federal Defender Panel.  And under the law the compensation

8    of standby counsel, just as the compensation of appointed

9    counsel, can be done only pursuant to the Criminal Justice

10   Act.  And so if you were to pick someone who is a lawyer but

11   is not qualified as part of our Federal Defender Program,

12   then that person would have to understand that they are not

13   going to be compensated out of federal funds.

14             Do you understand the point?

15             THE DEFENDANT:  Oh, I am sure that would be not --

16   that is not a problem, sir, yes.

17             THE COURT:  So, as I say, if it is your desire to

18   make a decision let's say by Friday morning on how you want

19   to proceed in terms of the assistance by qualified counsel,

20   that is entirely up to you.  Okay?

21             THE DEFENDANT:  Okay.

22             THE COURT:  Now having said that, however, I want

23   you to understand that among the things that the Government

24   has presented for consideration today are issues about the

25   proposed admissibility of certain evidence.  And I would

1    expect that counsel would be assisting you in that respect

2    because the nuances of one of the sections, for example, of

3    the Rules of Evidence that they are talking about, which is

4    404(b), has some intricate aspects to it that I would not

5    expect a nonlawyer would really be able to cope with the

6    distinctions that are made.

7              And so that is all the more reason that what we

8    would have to have would be somebody who was knowledgeable in

9    law, trained in law, to be able to deal with that to assist

10   you in your decision.  Again that person is not going to be

11   the lawyer in the case.  I am simply talking about assisting

12   you because you are the one who is going to have to make all

13   the determinations here.

14             Understood?

15             THE DEFENDANT:  Yes.

16             THE COURT:  So now you have seen, have you not, the

17   Government's motion for the -- with respect to certain

18   aspects of evidence?

19             THE DEFENDANT:  No.

20             THE COURT:  Oh, you have not.

21             MR. STUMP:  Your Honor, it was -- I believe it was

22   just filed yesterday.  I can provide a copy to Miss Phillips

23   here in open court.  I did also include a certificate of

24   service.  We did mail it to her, but it just may be --

25             THE COURT:  Mailing is -- snail mail is not the way

1    to deal with these things.  You know, it takes a lot of time,

2    and we don't have a lot of time.  You provide her with -- by

3    hand with a counterpart of whatever you filed.

4            MR. STUMP:  Yes, your Honor.  As you might be aware

5    it is difficult when she doesn't have an attorney.

6            THE COURT:  I am certainly --

7            MR. STUMP:  In the ordinary course of things I can

8    e-mail it or fax it.

9            THE COURT:  I am certainly aware of that.  Nobody

10   is an electronic filer, and therefore you can't get the thing

11   automatically to the person on an electronic basis.  But on

12   the other hand the -- you are going to have to deal with the

13   -- with the thing as we have it.

14           And what that means is, Ms. Phillips, because there

15   is some things that you are going to have to do in

16   anticipation, you should provide the Government with some

17   means of getting information to you instantaneously.  Now I

18   don't know whether you have got, for example -- do you have

19   an e-mail address?

20           THE DEFENDANT:  We have communicated via e-mail.

21           MR. STUMP:  We have.  Your Honor, that is correct,

22   we have communicated via e-mail.

23           THE COURT:  Well, then you should simply make

24   things like this an attachment to an e-mail communication.

25           MR. STUMP:  That -- and that is fine, your Honor.

1  I have done that in the past and I will continue to do that.

2  THE COURT:  So that is fine because I want Miss

3  Phillips to have every opportunity.

4  Now, there is one other thing that struck me as I

5  read the indication about these -- the notices of Rule 404

6  evidence, and that includes the idea that the witnesses whom

7  you have indicated here include the lead prosecutor and

8  presiding judge in the prosecution of her brother as well as

9  our former Chief Judge and Chair of the Executive Committee.

10  Now, in candor, when I saw that, it struck me that the

11  Government would perhaps have been well advised to get a

12  judge from out of the district to preside over this case.

13  Now it is quite true that I am not going to be

14  making any credibility determinations, that is, that is for

15  the jury to determine, but the fact remains that if you are

16  going to be calling one of my colleagues or a couple of my

17  colleagues in connection with the evidence in this case, the

18  -- I am -- I can assure you that when it comes to selecting a

19  jury, I am going to say to them, just as I do in every case

20  in which there is any law enforcement person or any

21  Government person -- I always tell the jury and -- that they

22  are not to judge the testimony of any witness in a case based

23  on who that person is or what position that person occupies.

24  They are not to believe, for example, the testimony of an FBI

25  agent any more or any less by reason of the fact that the

1  person is an FBI agent.

2          The same thing goes true about being a federal

3  judge.  They are not to make a different view of judgment

4  about credibility, about believability, of a witness because

5  that person is a federal judge, no more no less than if the

6  person got on the stand and said, "I am an airplane pilot for

7  United Airlines," or whatever.  So that is something I

8  specifically instruct every jury about.  And I always ask

9  prospective jurors, "Do you have any problem with applying

10  that principle in which you don't start tilting in either

11  direction when it comes to any witness?"  So that is

12  something that I would contemplate in all events.

13          And again as a presiding judge in a trial I do not

14  make credibility decisions.  I don't decide this person is

15  believable or that person is not.  I don't even hint that to

16  prospect -- to jurors in cases.  The judge is not the

17  fact-finder.  The jury is the fact-finder in collective

18  terms.  And so that is something that I am very careful about

19  in any case, not simply a case of this nature.

20          You understand that?

21          THE DEFENDANT:  I believe I do.

22          THE COURT:  Okay.  So I am not going to ask you --

23  obviously you have just seen this for the first time.  You

24  haven't even seen it.  I should say it just has been handed

25  to you for the first time.  But I expect that when you are

1    going to be making your determination for Friday morning, if

2    you have already decided on who that person is, you will

3    simply make this available to that person so the person can

4    assist you to the extent you wish in connection with what

5    kind of response you might give to this.

6              If, however, your determination is that you are

7    prepared to have somebody who is basically a random

8    assignment from the Federal Defender Program and hold that

9    position of standby counsel, and I would expect -- and you

10   tell us that on Friday morning, then I would expect that this

11   information would then be conveyed to that person.  And to

12   the extent you want to consult with that person on this

13   subject, you are free to do that.

14             Understood?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Okay.  Now the other thing that we want

17   to do, as we do in every case, is to have what we call a voir

18   dire conference which is a procedure under which we talk

19   about procedures to be handled during trial, essentially

20   laying out a game plan for that in which I inform parties

21   about the procedure that I follow in selecting a jury.

22             As the defendant you have the right not only to

23   object to people that you believe are biased or prejudiced on

24   a jury which leads them to their disqualification on that

25   ground, but you also have the opportunity to challenge as

1    many as ten people during the process of jury selection.  The
2    Government has a lesser opportunity.  They can challenge as
3    many as a half dozen people.

4           And for that purpose there are no rules that limit
5    the ability to challenge people -- well, there are two
6    exceptions to that.  One is nobody can be challenged that way
7    because of that person's race or color.  Second exception is
8    that nobody can be challenged in that way because the person
9    is a man or because the person is a woman.  But outside of
10   that the challenges are totally open-ended.  You may not like
11   the way a person is answering questions.  You might not like
12   the way they are looking at you.  And you don't even have to
13   have a reason.  You don't have to explain a reason.  As I
14   say, the two limited exceptions are very limited and they are
15   the ones I have described.

16          And I would expect to explain to you also, because
17   I want you to have the standby counsel available for that
18   purpose -- I explain my selection -- my process of jury
19   selection.  Each judge has his or her own method for that
20   purpose.  And so I want to have that explanation given when I
21   am talking with someone who can again assist you who is
22   familiar with legal process and procedures.  And so I would
23   expect that what we will do is we will have perhaps in early
24   the next week our jury instruction -- our voir dire
25   conference in which we talk about selection.

1    There is also the requirement that each side

2  identify for purposes of my telling prospective jurors the

3  anticipated both witnesses and names that may come up during

4  the course of the trial because we don't want to find

5  ourselves with somebody's brother-in-law, you know, on the

6  jury and having that person as a witness.  So I expect that

7  both sides are going to provide me with an accurate list of

8  names of persons either that are going to be called as

9  witnesses or that -- names that may come up during the course

10  of the trial.  It doesn't have to be designated witnesses.

11    You also have the need for jury instructions.  And

12  I expect that the Government will provide a set of proposed

13  jury instructions.  And you have of course the opportunity to

14  present jury instructions that you believe represent

15  appropriate matters to be presented to the jury because we

16  provide them with that again as the set of ground rules that

17  they must follow in order to make a determination about

18  whether you are to be found guilty or not guilty.

19    So those are things that we always talk about at

20  the voir dire conference, although we -- I wouldn't want to

21  have the Government version of proposed instructions

22  available earlier because again that is something that you

23  will want the opportunity to confer to the extent you wish

24  with standby counsel.

25    Now let's see.  I think that is pretty much it for

1    today, unless you have something further.

2              MR. STUMP:  Your Honor, could I be heard on four

3    short issues?

4              THE COURT:  Absolutely.

5              MR. STUMP:  All relating to what we have discussed.

6              THE COURT:  Yes.

7              MR. STUMP:  With regard to those filings that the

8    Court just discussed, the proposed jury instructions,

9    proposed voir dire --

10             THE COURT:  Yes.

11             MR. STUMP:  -- and a notice of potential persons,

12   my understanding is those are due Friday.  And I would ask

13   the Court's permission to file the list of names under seal

14   because I have a concern, given the way that this case arose,

15   about putting names on the record.

16             THE COURT:  Yes, you may certainly do that.

17             MR. STUMP:  Okay, that is one.

18             With regard to the appointment of standby counsel,

19   your Honor, I would ask that in her notice to the Court of

20   her selection for standby counsel that Miss Phillips provide

21   a resume or CV, some documentation of the person's license

22   and qualifications for the Court to consider.

23             THE COURT:  Even better if she has selected

24   someone, I would ask that that person accompany her for the

25   Friday -- for purposes of our determination on Friday because

1    that way we can make direct inquiry rather than saddling her

2    with the burden of having somebody put together a resume and

3    so on.

4            So, Ms. Phillips, you understand that the -- that

5    if you are going to be choosing someone other than the

6    Federal Defender Program to assist you as standby counsel,

7    make sure that that person is in a position to come in on

8    Friday when we have the -- your statement as to whom you are

9    going to be choosing.

10           Obviously you don't have to do that if it is going

11   to be somebody from the Federal Defender Program because they

12   have their own system.  They have a system under which each

13   day somebody is designated as what is called the duty lawyer

14   and any -- anything that arises during that day that person

15   automatically gets appointed.  So that I think this coming

16   Friday, if I am not mistaken, it is -- it is going to be one

17   of the staff people from the Defender Program.

18           They provide me each month with the list of the

19   names.  And I don't have that handy.  But my recollection is

20   that on this Friday would be a member of the Federal Defender

21   staff rather than one of the outside counsel who are members

22   of the Federal Defender Program.

23           So you wouldn't see any problem with having

24   somebody accompany you at that point if you have already made

25   your selection, right?

1    THE DEFENDANT:  If I -- right, I would -- exactly.
2    If I made my selection, I would have to have them to
3    accompany me.
4         THE COURT:  Okay.
5         THE DEFENDANT:  I am clear about that.
6         THE COURT:  That is fine.
7         THE DEFENDANT:  That would be the request of the
8    Court?
9         THE COURT:  Yes.
10        And your next item?
11        MR. STUMP:  Just on that point still, so then we
12   will have another -- a meeting here in court on Friday?
13        THE COURT:  Yes, do that.  That is for purposes of
14   her advising us of her decision and then something else
15   perhaps as a result of that.
16        MR. STUMP:  Yes, sir, your Honor.
17        THE COURT:  And wait just a minute.  Sonya, take a
18   look -- quick look at Friday.  My recollection is that --
19        THE CLERK:  You are busy.
20        THE COURT:  -- after my morning --
21        THE CLERK:  You are busy the whole morning.  I mean
22   we can do it after -- we can do it at 10:00.
23        THE COURT:  No, I am talking about mid-morning,
24   maybe like 10:00 o'clock.
25        THE CLERK:  Yeah, yeah.

1     THE COURT:  Yeah, sure, of course.  10:00 o'clock

2  on Friday.

3     Yes, go ahead.

4     MR. STUMP:  Your Honor, with regard to the notice

5  of the 404(b) evidence I just wanted to make it clear on the

6  record I did file that as a notice.  I didn't style it as a

7  brief -- or as a motion.

8     THE COURT:  I understand.

9     MR. STUMP:  So I wasn't asking for a pretrial

10  ruling, just in case it was unclear from my filing.

11     THE COURT:  I understand.  But you are quite right,

12  I want to make sure the other side is apprised of what you

13  are planning to do, which is exactly right.

14     MR. STUMP:  Yes, sir.

15     And then the last point, your Honor, just had to

16  deal with -- you brought it up, the possibility of your own

17  recusal in this case.  I wanted to address that very briefly

18  on the record.  It is my understanding that that decision is

19  in your hands.  I think it is 28 U.S.C. 455(a), is the

20  provision that governs when a judge should --

21     THE COURT:  I am well aware of 455(a).  I also have

22  -- as a senior judge I have the prerogative under Section

23  294(b) to step out of any case I decide to step out of.  And

24  I have not done that and I -- despite the importunings of my

25  secretary who says I can get out of everything, I don't want

1    to do it.  But the 455(a) talks about the appearance of

2    impropriety essentially.  And if -- I clearly would not be in

3    a position to preside if, for example, this were a bench

4    trial.  In other words, if I were making a -- if I were

5    making a decision, the idea of having a colleague as a

6    witness and making a judgment about that colleague's

7    credibility would, of course, be totally inappropriate and I

8    wouldn't do it.

9         The only -- I simply made the point that I would

10   have expected that the Government would have given thought to

11   the fact -- I didn't know whom you were planning to call as

12   witnesses, although maybe if I had been focusing on it, I

13   would have expected that as a prospect.  But I would have

14   thought the Government might want to have considered simply

15   bringing in an out-of-district judge to preside over the

16   case, although I do not regard that as an essential

17   ingredient.

18        MR. STUMP:  Yes, sir.  And I guess I just say my

19   understanding was that was essentially your call to make, not

20   mine.  I have looked at the issue, and it is my opinion that

21   if your Honor is comfortable presiding over the case, that

22   there is no conflict that would require recusal.  The

23   Government isn't going to ask for it.

24        THE COURT:  I didn't suggest that.  What I

25   suggested was, as you know often happens, the -- when there

1  are issues that involve -- well, for example, when there were
2  threats to one of the judges and that was the subject of the
3  case, a judge was brought in from outside the District for
4  purposes of providing -- presiding over the case.

5         That is not the situation here.  I do not see -- I
6  do not anticipate that any aspect of the testimony is going
7  to involve a need for me to determine, yes, the person or,
8  no, the person is not qualified to testify.  It is not as
9  though any of these people would be sought to be called as
10 opinion witnesses, as what used to be called experts until I
11 banished that word from all my trials, so that, you know,
12 that involves making a determination about whether the person
13 is qualified to testify.  That is not an issue here.

14        MR. STUMP:  I agree, your Honor.  And I just would
15 suggest to the Court too that, you know, after the trial if
16 there is a conviction, there would be a sentencing and just
17 to put you on notice we would potentially call some of those
18 same witnesses back because they are victims of the case to
19 testify at a sentencing hearing.  I don't know if that makes
20 any difference to your Honor's determination at this stage of
21 the proceedings or not.

22        THE COURT:  In candor I don't like to jump ahead to
23 some kind of presumption about what is going to happen in
24 this trial because a trial is a trial.  But I don't -- I
25 really frankly don't understand any perceived need for the --

1    for any of the asserted victims to be testifying in

2    connection with any sentencing here, frankly.  I just don't

3    understand why that should be the case, but --

4              MR. STUMP:  Well, I guess maybe not testimony, your

5    Honor, but just to -- as you know the victims have a right to

6    be heard.  Very possible that even if I don't intend to call

7    a victim to the witness stand, a victim may submit a letter

8    or want the Court to otherwise consider their circumstances.

9              THE COURT:  Well, that is a bridge that I would

10   trust is not going to have to be crossed.  I am not fond of

11   that essentially sort of supplementation.  It is one thing

12   when the law requires that victims be given the opportunity,

13   but I don't -- I don't see that as potentially presented by

14   this -- by the charges here.  The -- I think -- one thing I

15   think the Court would want to take judicial notice of, and

16   that is none of the people had $100 billion and -- but that

17   is not really the occasion for calling somebody as a witness

18   to say, "I didn't have 100 billion" -- calling them as a

19   commentator at the time of sentencing to say "I didn't have

20   100 billion dollars."

21             MR. STUMP:  True.  But as all victims of crime they

22   may have some other impact on them that isn't financial, for

23   instance.

24             THE COURT:  I understand that.

25             Okay.  So we are in recess until Friday morning at

1    10:00 o'clock.  And if anything else comes up in the interim,

2    you will make sure that in addition to providing a hard copy

3    to the Court, you will take care of getting a communication

4    directly to Ms. Phillips, as I say, as an attachment to an

5    e-mail, which is instantaneous delivery.

6              MR. STUMP:  Yes, sir.  On Friday will we be

7    addressing any other issues aside from the -- this one issue?

8              THE COURT:  Probably not because -- well, except

9    for scheduling of the voir dire conference, and also I want

10   to make sure that you have put together -- I am not essential

11   -- requiring that it has to be ready on Friday, but I expect

12   that you will have got the jury instructions in work at this

13   point.

14             MR. STUMP:  Yes, sir.

15             THE COURT:  And also the -- you don't have to

16   actually present the list for purposes of jury selection.

17   That can wait until the voir dire conference.

18             MR. STUMP:  Yes, sir.

19             THE COURT:  Okay?

20             MR. STUMP:  All right.  Your Honor, as you know, I

21   travel up from Southern Illinois --

22             THE COURT:  Yeah.

23             MR. STUMP:  -- for each one of these.  I feel my

24   duty for the federal budget to just inquire whether I might

25   appear on Friday over the phone.  If not, I will be here.

1    And of course I would like to be here to judge the standby

2    counsel for myself in person, but --

3               THE COURT:  I would -- I would prefer that you be

4    present.  How far do you travel?

5               MR. STUMP:  It is four hours, your Honor.  Usually

6    when it is a morning setting, I spend the night in the hotel

7    the night before.

8               THE COURT:  Well, stuck is stuck.

9               MR. STUMP:  Yes, sir.  I asked.

10              THE COURT:  Thank you.

11              THE DEFENDANT:  Well, your Honor, for the purpose

12   of preparation I would like to motion the Court to possibly

13   extend the time on the monitoring program, if I could maybe

14   an hour or an hour and a half just for purposes of copying

15   and making other needs.

16              THE COURT:  What restrictions are you on now in

17   that purpose?

18              THE DEFENDANT:  For that purpose I do have to

19   report back at 6:00 o'clock in the evening.

20              THE COURT:  At 6:00 p.m.?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  No, I will certainly grant that.  That

23   is a non-problem.

24              THE DEFENDANT:  Okay.  Okay.

25              THE COURT:  Okay?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  All right.  Thank you.

 3              THE DEFENDANT:  Thank you.

 4              THE CLERK:  I need a time.  You are granting it to

 5   what time?

 6              THE COURT:  7:30.  She said an hour and a half.

 7              THE CLERK:  7:30, okay.

 8              THE COURT:  Okay.

 9         (Which were all the proceedings heard.)

10                           CERTIFICATE

11         I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled matter.

13

14   s/Rosemary Scarpelli/          Date:  February 11, 2015

15

16

17

18

19

20

21

22

23

24

25
```