1      IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3    UNITED STATES OF AMERICA,        )  No. 12 CR 872
                                      )
4                      Plaintiff,     )  Chicago, Illinois
                                      )  July 19, 2013
5                                     )  10:00 o'clock a.m.
     -vs-                             )
6                                     )
                                      )
7    CHERRON MARIE PHILLIPS,          )
                                      )
8                      Defendant.     )

9
          TRANSCRIPT OF PROCEEDINGS - STATUS/TELEPHONE CONFERENCE
10             BEFORE THE HONORABLE MILTON I. SHADUR

11   APPEARANCES:

12   For the Plaintiff:    HON. GARY SHAPIRO, by
                           MR. NATHAN D. STUMP
13                         Special Assistant United States Attorney
                           9 Executive Drive
14                         Fairview Heights, Illinois 62208

15
     For the Defendant:    Cherron Marie Phillips, pro se
16                         P.O. Box 802625
                           Chicago, Illinois
17

18   ALSO PRESENT:         FEDERAL DEFENDER PROGRAM
                           55 East Monroe Street
19                         Suite 2800
                           Chicago, Illinois 60603
20                         BY:  MS. ISELA ANTUENEZ
                                MR. PIYUCH CHANDRA
21

22

23   Court Reporter:       ROSEMARY SCARPELLI
                           219 South Dearborn Street
24                         Room 2304A
                           Chicago, Illinois 60604
25                         (312) 435-5815

1          THE CLERK:  12 CR 872, USA versus Cherron Marie

2    Phillips, motion hearing.

3          MR. STUMP:  Good morning, your Honor, Nathan Stump

4    on behalf of the United States.

5          THE DEFENDANT:  Good morning, your Honor, River on

6    behalf of defendant Cherron Phillips.

7          THE COURT:  Good morning.  As you know we had put

8    this one over until today so you could decide how you wanted

9    to handle the standby counsel arrangements.  Have you decided

10   that -- whether you would be retaining someone yourself or

11   whether you would seek to have someone from the Federal

12   Defender Program do that?

13         THE DEFENDANT:  It appears that I -- the defendant

14   will be proceeding without counsel.

15         THE COURT:  I know you are going to be proceeding

16   without counsel, but I am going to appoint standby counsel

17   for you.  And so my question -- you didn't respond to my

18   question, which is, in terms of standby counsel, the purpose

19   of putting it over until today was for you to explore, as you

20   had indicated, whether you wanted to choose someone of your

21   own choice and make arrangements for however you wanted to do

22   that, to play that part for you to assist you to the extent

23   that you need assistance during the course of the trial.  And

24   that -- and as I had said last time, if you were -- if you

25   were -- if you decided not to have someone designated of your

1    own choice, the answer was going to be I would appoint

2    somebody from the Federal Defender Program to play that role.

3           So maybe you didn't hear my question.  Have you

4    decided that -- have you not decided to have someone of your

5    own choice act as standby counsel for you?

6           THE DEFENDANT:  Well, the individual that I had in

7    mind declined to come in here today.

8           THE COURT:  Okay.  So that means that you are not

9    going to be using that individual?

10          THE DEFENDANT:  I won't be using that individual.

11          THE COURT:  Okay.  So I am going to appoint

12   somebody from the Federal Defender Panel to do that.  And as

13   I indicated last time, their procedure ordinarily is to

14   designate someone as the duty lawyer in the system for that

15   -- for a particular day.  And when an issue arises that has

16   that -- that has a need for someone, that duty attorney is

17   the one who is appointed for that purpose, unless that

18   presents some kind of conflict of interest, as sometimes

19   happen.  For example, they cannot have a duty lawyer in which

20   a Panel member is representing let's say a co-defendant.

21   They can't do that.  But that is not the situation here.

22   Here we have a single-defendant case.

23          And my list that I am provided at the beginning of

24   the month in connection with the attorney schedule for July

25   shows that today being the 19th, it is a staff attorney and

1    it is Imani Ciphe of that office.  So let me -- Sonya, why

2    don't you call the office.  It is 312.  Mr. Ciphe's number is

3    612-2029.  Because I want to find out if he is already been

4    committed for something as a result of his being duty

5    attorney for the day.

6                MR. STUMP:  Your Honor, I don't know if it will

7    come up, but I don't know that -- you know, this case also

8    will involve discussions of the trial of Devon Phillips.  I

9    don't know if their office had anything to do with that, but

10   that just may be something we want to alert him to.

11               THE DEFENDANT:  Your Honor, if I may --

12               THE COURT:  Yes?

13               THE DEFENDANT:  -- I would like to object to

14   standby counsel.

15               THE CLERK:  He is not there.  His voice mail.

16               THE COURT:  Just leave a message for him.

17         (Brief pause.)

18               THE COURT:  And what is the ground for your

19   objection?

20               THE DEFENDANT:  I think that it would prejudice the

21   defendant.

22               THE COURT:  Well, that is a nonstarter.  And the

23   reason it will not prejudice the interests of the defendant

24   is this:  I have made the finding based on the inquiry at the

25   last session that you -- that you are -- although because you

1   are not -- do not lack competence in the legal sense, you are

2   entitled to exercise the constitutional right that you have

3   identified to represent yourself.  That, however, does not

4   carry with it as a one-to-one correlation the knowledge --

5   the existence of an ability to handle a trial.  It is very

6   clear from what has happened before this and up to now that

7   you are not in a position to handle all aspects of a trial.

8   There are a great many that you cannot.

9           You have represented familiarity, for example, with

10  the Federal Rules of Evidence.  Those are extraordinarily

11  complex.  And I can -- I can assure you that if you were to

12  be given a quiz on that, you would have a great deal of

13  difficulty with a lot of things.  I am not saying that

14  critically, you understand, because it is not the province of

15  a nonlawyer to have a working familiarity with the Federal

16  Rules of Evidence in the way that means they can be handled

17  at a trial.

18          Similarly you have indicated a familiarity with the

19  Federal Rules of Criminal Procedure.  And I did not follow-up

20  in terms of particularization, but I am confident that any

21  such inquiry would reflect the fact that you are really not

22  equipped to handle the intricacies of a trial in that regard.

23          So it is not a matter of prejudice to your

24  interests at all.  Quite the contrary.  If you had to

25  flounder around on your own in connection with a trial, it

1   would create an impossible kind of procedure to go ahead with

2   a trial.  And I am not going to subject anyone to that.  I am

3   not going to subject prospective jurors to that, to whatever

4   vicissitudes you may create by your activity.  And you

5   understand that the standby counsel is not your lawyer.  If

6   -- well, let me add one other thing.

7           You talk about prejudice.  One thing that

8   potentially could prejudice someone in your position, as I

9   would see it, is to have a situation in which the judge had

10  to consistently intercede where you were committing errors in

11  connection with the thing, because I don't want the jury to

12  get a sense that you ought to be judged by or convicted based

13  upon the ordinary kinds of procedural deficiencies that

14  necessarily apply to someone who has not practiced law.

15          And so it is exactly the opposite of prejudice to

16  you that is represented by the appointment of standby

17  counsel.  And I want to add if you don't understand that,

18  then you are even more deficient in those things than I would

19  think.

20          I want to make sure that this is a fair trial.  You

21  are entitled to that.  You have chosen to exercise the

22  constitutional right to represent yourself.  I respect that.

23  I will honor it.  But you demonstrate by a constant

24  resistance to anything that is offered to try to assist you

25  in that process that you really are not equipped to do it.

1    You are not bringing the right mindset to the process.

2              So I -- what I want to do is to have you in a

3    situation which you can meet with, confer with a -- someone

4    who is there to assist you to the extent that you determine

5    during the course of matters that it is going to be useful to

6    you to have the opportunity to consult with somebody who is

7    knowledgeable, as you are not, about the intricacies of

8    trial.

9              THE DEFENDANT:  Sir --

10             THE COURT:  And so that is -- that is really the

11   message.

12             THE DEFENDANT:  And based on what you just stated,

13   if you -- if the defendant has the right to exercise a

14   constitutional right to defend themselves, wouldn't standby

15   counsel be just the opposite of that?

16             THE COURT:  No.

17             THE DEFENDANT:  Would it not?

18             THE COURT:  Not at all.  Not at all.

19             THE DEFENDANT:  Because then there wouldn't you --

20             THE COURT:  Because I am not obligating you to do

21   anything in this respect.

22             The -- you know, it is -- it is extraordinarily

23   difficult to deal with someone who says, "Don't argue facts

24   with me; my mind is made up."  And that is what you are

25   demonstrating and have consistently done that.  If you would

1    just listen and think what I have said to you, you would

2    recognize that this is for your benefit, not for your

3    detriment.  And I don't know -- you know, I can't persuade

4    you, obviously, because you are demonstrating a sort of

5    bullheadedness that resists the idea of thinking logically

6    about matters that are -- I seek to present to you logically.

7         I don't control you that way either.  You know, you

8    are going to make your own -- to the extent you make

9    mistakes, you will make mistakes.  But I am trying to

10   minimize those in connection with a trial, which assists you.

11   It doesn't operate to your detriment.  And you stand here and

12   the thing -- and what I say goes over your head like waves.

13   You don't seem to listen at all.  You are just getting ready

14   to say, "I won't do it."

15        And I am troubled by that because you somehow don't

16   seem to grasp the idea that your exercise of a constitutional

17   right doesn't entitle you, for example, to create a -- to

18   create a mess out of a trial because that is going to operate

19   to your detriment, not to your benefit.  Now, I can't -- I

20   can't elaborate more than that.

21        Now, I have left word.  And I will tell you what,

22   call Carol Brook for me.  She is the head of the program.

23   Wait a minute.  I have got their numbers here someplace.  She

24   is at 312-621-8339.

25             THE CLERK:  Carol Brook?

1            THE COURT:  Yes, she is the Executive Director.

2            THE CLERK:  Good morning.  May I speak to Carol

3    Brook's assistant?

4            A FEMALE VOICE:  She just stepped out for a break.

5    Can she call you back in 45 minutes?

6            THE CLERK:  Yes, that will be fine.

7            THE COURT:  No, it will not be fine.

8            THE CLERK:  No?

9            THE COURT:  No, I can't have this -- is -- are you

10   still on with them?

11           THE CLERK:  She just hung up.

12           THE COURT:  Call back and say 45 minutes will not

13   be fine.

14           THE CLERK:  Okay.

15           THE DEFENDANT:  Your Honor --

16           THE COURT:  Operator is 621-8300.

17           THE CLERK:  8300?

18           THE COURT:  Yep, that is their --

19           MR. STUMP:  That is what happens when a judge calls

20   our office, your Honor.

21           THE COURT:  Pardon?

22           MR. STUMP:  That is what happens when a judge calls

23   our office.  Somebody gets ahold of them.

24           THE COURT:  I am aware of that.

25           You people have not entered the 21st Century with

1    the phone system.

2              THE CLERK:  Oh, hold on.  Judge Shadur would like

3    to talk to you.  Please hold.

4              Okay.  Are you there?

5              MS. ANTUNEZ:  Yes, I am.

6              THE CLERK:  Okay, Judge.

7              THE COURT:  This is Judge Shadur.  I am calling in

8    connection with a matter on which --

9              MS. ANTUNEZ:  I can barely hear you.  I am sorry. I

10   don't know if we are on speaker or something, but I can

11   barely hear.

12             THE COURT:  All right.  Better now?

13             MS. ANTUNEZ:  Not really.

14             THE COURT:  What is the problem here?

15             THE CLERK:  You know what, hang up.  I am going to

16   call you from another system.

17             Hello, this is Sonya from Judge Shadur.  Can you

18   hear me now?

19             MS. ANTUNEZ:  It is big old echo, but I can hear

20   you.

21             THE COURT:  All right.  This is Judge Shadur and I

22   am here in court with a need to appoint one of the members of

23   the Federal Defender Program as standby counsel in a case

24   that is going to be tried here by someone who has chosen to

25   exercise her constitutional right to represent herself.  My

1    listing of the attorney schedule shows that Imani Ciphe is

2    the duty attorney for today.

3                MS. ANTUNEZ:  Okay.

4                THE COURT:  Is he around or unavailable?  What is

5    the situation?

6                MS. ANTUNEZ:  Hold on a moment.  He just walked in.

7    Hold on a moment, Judge.  Thank you.

8                The attorney on duty is Paul Flynn.

9                THE COURT:  Is who?

10               MS. ANTUNEZ:  Paul Flynn.

11               THE COURT:  Oh, really.  I had the beginning of the

12   month list and Mr. Chiphe had been shown.  But if he is the

13   duty attorney, I will talk with Paul Flynn.

14               MS. ANTUNEZ:  Okay.  Let me see if Mr. Flynn is

15   here and not at court.

16               THE COURT:  Thank you.

17               MS. ANTUNEZ:   Thank you.

18       (Brief pause.)

19               THE COURT:  Yes?

20               MS. ANTUNEZ:   Paul Flynn is out sick, but Piyush

21   Chandra stood in for him.

22               THE COURT:  I would very much appreciate your

23   reaching him because it would be important for him at the

24   earliest possible opportunity to come to my courtroom because

25   of the need for.

1          MS. ANTUNEZ:  Standby.

2          THE COURT:  -- services, okay?

3          MS. ANTUNEZ:  Okay.  What number should he call

4    back or should he just go to the courtroom?  What do you want

5    him to do?

6          THE COURT:  Find out when he is going to be

7    available and call back.  Sonya will give you the number you

8    should call.

9          MS. ANTUNEZ:  Okay.

10          THE CLERK:  312-435-5766.

11          MS. ANTUNEZ:  Okay.  I will let him know.

12          THE COURT:  Thank you.

13          MS. ANTUNEZ:  You are welcome, Judge.  Thank you.

14          THE COURT:  Bye-bye.

15          Well, we are going to have to have some further

16    information, but in the meantime let's go on to other things,

17    if we may.  The -- we have to set up a voir dire conference

18    which is, as I think you probably know, Miss Phillips, the

19    meeting that takes place in advance of trial for purposes of

20    explaining trial procedures.  And this is done, by the way,

21    in situations where there are lawyers.  It is not limited to

22    a situation where someone has chosen to represent himself or

23    herself because we have to talk about the procedure that we

24    follow for selecting a jury, the other aspects of procedures.

25          And what I would like to do in that regard is to

1   have the -- set it up so that you have had the opportunity,

2   to the extent that you want, to confer with whoever is going

3   to be acting as standby counsel, to do that, and then for us

4   to have our meeting which will cover the kinds of things that

5   I have talked about.  And that obviously ought to have

6   several days lead time before the July 29th commencement

7   date.

8          Now as it happens I have -- I had time that got

9   cleared away on Tuesday afternoon.  I don't know whether that

10  would be convenient for both you and Government counsel

11  because what we would do is to go through, as I say, the

12  explanation about procedures to be followed, and I would be

13  in a position to answer questions that you might have about

14  that.  And basically set up what I characterize as the game

15  plan for the trial, in other words, procedures and how we go

16  about the selection process and matters of that nature.

17         Now, is there any problem with a Tuesday afternoon

18  time let's say at 1:30?

19         MR. STUMP:  Your Honor, do you know about how long

20  you expect that might last?

21         THE COURT:  I would know if I were dealing with

22  counsel, but my guess is that it will probably last -- I am

23  sure it will last an hour to an hour and a half anyway for

24  sure.

25         MR. STUMP:  Your Honor, I can be available at 1:30

1  on Tuesday afternoon.

2              THE COURT:  How is it for you, Miss  Phillips?

3              THE DEFENDANT:  1:30 on Tuesday afternoon is fine.

4              THE COURT:  Okay.

5              THE DEFENDANT:  But I have to ask now, your Honor,

6  are you compelling me to perform with a Public Defender?

7              THE COURT:  I said I am not compelling you to do

8  anything.  I am saying that I want to give you the

9  opportunity to confer to the extent that you desire with the

10  member of the Federal Defender Program who will be standby

11  counsel so that you might get information about questions

12  that you would want to ask of that nature, although I am

13  going to be available to answer whatever questions.  So I am

14  not compelling you to do anything.

15              THE DEFENDANT:  Okay.  I would rather not -- again

16  I just want to make myself clear.  I would rather not have

17  standby counsel in this matter.

18              THE COURT:  Well, you lose on that one because I

19  find that you are not competent to proceed without the

20  availability of standby counsel.  You haven't demonstrated

21  that.  What you have demonstrated instead is your desire,

22  which I am honoring, to represent yourself.  But you can't

23  make a mess of things by mistaken aspects of how you think

24  something has to be done in the process.  So what I am -- all

25  I am saying is that you are going to have the opportunity to

1    prepare yourself in the way that you wish.  Nobody is

2    compelling you to do anything on that.

3           On the other hand if, for example, you are going to

4    be proposing to argue matters that are not permissible to

5    argue, then you would expect that I would have to be ruling

6    on that.  And the point that I tried to make a little earlier

7    is that I -- that we never know how a jury is going to

8    respond if, for example, they get a sense that someone is not

9    in a position to handle a matter.  And I don't want them to

10   have a sense like that rub off in terms of how they would

11   decide the case that you are charged with because we always

12   want to make sure that jurors make a decision based on what

13   the evidence is and what the law is on the -- that they apply

14   to the evidence and not on extraneous matters.

15          So it is really an effort, although you don't --

16   you won't acknowledge it and you don't seem to recognize

17   it -- it is really an effort to assist you in terms of the

18   process of being able to represent yourself.  And so I don't

19   know how to make it more plain.  But again I am not

20   compelling you to do anything in that regard.  I am giving

21   you an opportunity to do it if you want.  But that is your

22   choice.  Your call, not mine.  Okay?

23              THE DEFENDANT:  Okay.

24              THE COURT:  All right.  So what I will -- what I

25   will do, as soon as I get this information, is I will find

1    out who the lawyer is going to be, make arrangements that to

2    the extent you want to consult with counsel, you will have

3    the opportunity to do that.  We will give the means of

4    communicating, you know, by the phone number, however you

5    want to do it.  That is up to you.  Not required.

6    Understood?

7           THE DEFENDANT:  Well, again I won't be

8    communicating with them.  That is --

9           THE COURT:  That is your choice.  I am not --

10          THE DEFENDANT:  Because again I feel that would

11   prejudice the defendant, and I will not be communicating,

12   sir.

13          THE COURT:  You know, I commented earlier today in

14   a different context -- do you ever read The New Yorker

15   magazine?

16          THE DEFENDANT:  I am sorry, I don't get a chance to

17   read The New Yorker magazine.

18          THE COURT:  Well, New Yorker magazine used to have

19   a practice when an article -- one of their lead articles

20   would finish let's say halfway down the column of the page,

21   they would have to get a filler to go in.  And they used to

22   caption the filler the Department of Clotted Nonsense.  And I

23   don't want to have any clotted nonsense.

24          I am trying to preserve your interests and your

25   rights, not to impact on them adversely.  And I wish that you

1    would -- I could somehow get that message over to you,

2    although you don't seem to respond to it.  But you don't have

3    to believe me I guess if you don't want.

4              Anyhow, so I am going to make the opportunity

5    available to you, again with the understanding it is not

6    going to be required.  Okay?

7              Now let me turn to some other subjects in

8    connection with the preparation for the voir dire conference.

9    Have you put together a set of proposed jury instructions?

10             MR. STUMP:  I have, your Honor.  I brought them

11   with me.  I didn't get an opportunity to file them before

12   this morning's hearing, but I have a copy with me.

13             THE COURT:  You don't have to.  They don't actually

14   get filed.

15             MR. STUMP:  Oh, yes.

16             THE COURT:  Remember they get reposed with one copy

17   for Miss Phillips so that she has access to them and a copy

18   for me as well.  And I assume that they are numbered so that

19   -- for identification purposes, right?

20             MR. STUMP:  Yes, sir, they are numbered and they

21   refer to the pattern instructions.

22             THE COURT:  The second question that I have had to

23   do with the thing that I mentioned the other day, and that is

24   that when it comes to selecting jurors, we want to be in the

25   position to give them the names of anyone about whom they may

1    hear as well as from whom they may hear.  In other words it

2    is not a list of witnesses, it is a list of names that may

3    come up during the trial which would include both individuals

4    and institutions that you would -- I don't know if you had a

5    chance to prepare that or not.

6              MR. STUMP:  Yes, sir, that is ready as well.  I

7    brought a copy -- two copies with me today.

8              THE COURT:  All right.  Miss Phillips, I would

9    expect in anticipation of our voir dire conference you will

10   take a look at that and if there are other names that you

11   think ought to be used for that purpose -- let me tell you

12   what the purpose is.  The purpose is that when we have a jury

13   in the box, I read off a list of names.  And if anybody knows

14   the person or has dealt with the organization that is

15   referred to, we want to find out about that because we want

16   to make sure that we have impartial jurors, nobody is related

17   to somebody else, and so on.  So if you will -- when you get

18   the Government list, if you will examine it and see whether

19   there are any other names that you would want to have added

20   for my purposes of reading off the list to prospective

21   jurors, you can do that before we meet then let's say next

22   Tuesday.  Okay?

23             THE DEFENDANT:  Okay.  I would like to ask, your

24   Honor, if --

25             THE COURT:  Sure.

1    THE DEFENDANT:  The last time you mentioned -- is

2    is there an opportunity for another pretrial conference in

3    chambers between us -- the plaintiff and the defendant and

4    yourself?  Is there an opportunity to do that prior to the

5    voir dire?

6    THE COURT:  I don't know what you are talking

7    about, a pretrial conference.

8    MR. STUMP:  Your Honor, just to be clear, we had

9    some communication on our end -- and I don't know where we

10   got it -- that there was going to be a final pretrial

11   conference Monday morning I believe.

12   THE COURT:  No, no.

13   MR. STUMP:  I believe that this is now the voir

14   dire conference Tuesday afternoon.

15   THE COURT:  I am talking about voir dire

16   conference.  And everything that I do is a matter of public

17   record.  I don't engage in things in chambers.  I don't meet

18   or talk with any litigant separately and I don't do it -- I

19   wouldn't do it in chambers or off the record basically

20   unless, for example, the safety of some confidential

21   informant were involved or something of that nature where

22   somebody is -- somebody is at risk by reason of disclosure.

23   But there is nothing of that nature in this case.

24   THE DEFENDANT:  I didn't mean to say in chambers.

25   I apologize.  I was just under the impression that there were

1    going to be a pretrial conference.

2            THE COURT:  No, what you call a pretrial is this

3    voir dire conference.  That is what I was talking about,

4    which is basically a meeting for purposes of -- and it takes

5    place right here.  What happens is I don't wear a robe, we

6    sit around the table.  Rosemary is here so that she makes a

7    record of whatever is done.  And I cover the matters.  And if

8    there are questions, I answer the questions about how it is

9    going to proceed.  In other words, it is essentially the

10   preparation for the trial to deal with any things that people

11   are not familiar with.

12           For example, I have my own system of selecting

13   jurors which differs from that of others.  And I am not going

14   to go into the particulars now.  We will cover that in the

15   course of our discussion.  Each judge uses his or her own

16   method of selecting jurors.  And the basic difference between

17   my system and the system that a lot of my colleagues operate

18   is that if, for example, they send 40 or 45 people up to the

19   courtroom for possible jury service, they follow a procedure

20   under which they hear from every one of those people in

21   advance of starting the jury selection system, which I think

22   is frankly pretty much a waste of time because the sequence

23   in which people are called for possible jury service is

24   determined by a computer.

25           So when people come up, let's say 40 or 45 people,

1    Sonya here reads off the first 12 names, and those people

2    start out sitting in the jury box and we ask them --

3    everybody gets a sheet that includes the autobiographical

4    information that they have to provide as they come into the

5    process.  The first 12 people we know we are going to deal

6    with.

7            If any of them are excused for any reason -- and we

8    we will talk about that as well -- excused for challenges or

9    because of bias or because of prejudice, the next people on

10   the list are called.  But meanwhile that system as you see

11   does not involve our having to spend a lot of time dealing

12   with all 40 to 45 people, many of whom are not going to get

13   called up here at all.  They are there to provide both sides

14   the opportunity to exercise whatever challenges there are.

15           And that is really just a -- it is just a different

16   system.  And it -- and it operates I think more efficiently

17   in the manner in which I follow it.  But every judge has his

18   or her own method of procedure.  So what we will -- let me

19   continue on the things that we need as a preliminary.

20           You have already done those two things, and you

21   will provide copies of that to Miss Phillips.

22           MR. STUMP:  Yes, your Honor.  I will just do that

23   right now on record, if that is all right.

24           THE COURT:  Yes, fine.

25           MR. STUMP:  And, your Honor, would you like a copy

1    right now or would you --

2              THE COURT:  Yes.  You can leave it with Sonya, yes.

3              Okay.  Now what we will do is when I -- if we get a

4    call back, as I would hope, if it is going to be -- Piyush

5    Chandra was indicated as being the -- available.  I don't

6    know whether he has other commitments.  So that I can't tell.

7    But if we hear from him before we break, then I would arrange

8    to have him come here and we can simply talk about his

9    availability.  If it is not --

10             THE DEFENDANT:  Oh, sorry.

11             THE COURT:  What I would suggest is that you give

12   Sonya here a phone number at which you could be reached.  We

13   could then let you know who the person is, and then you can

14   decide that you do or you don't want to talk with that person

15   in advance of the Tuesday session.  I would have -- expect to

16   have the standby counsel present during the Tuesday session

17   just for informational purposes, not for any decisional

18   purposes, because all decisions are yours.  That is the

19   effect of your having exercised a constitutional right, which

20   you have the right to do.

21             So I think that is probably all we need now because

22   we haven't gotten a call back from them.  So when I -- when

23   we hear, if you will leave with Sonya a phone number where

24   you can be reached, I would have her call and simply

25   communicate the information to you.  And then it is your

23

1    decision whether you do or do not want to take advantage of

2    that for any reason before the Tuesday session, but otherwise

3    we will -- we will be seeing you at the 1:30 time on Tuesday.

4             Do you have any other questions?

5             THE DEFENDANT:  Yes, I do, your Honor.

6             THE COURT:  Sure, go ahead.

7             THE DEFENDANT:  For the record again, if that

8    counsel or standby counsel as you say is appointed, again I

9    feel that would prejudice the defendant because I have

10   already objected to the standby counsel.

11            Also --

12            THE COURT:  I would like you, if you would, because

13   it won't do just to mouth "prejudice" -- I would like you to

14   identify what your sense of the prejudice that would be

15   created by the situation that I have described in which you

16   are not obligated at all to consult with the -- the standby

17   counsel.  Counsel is there as a potential resource for you,

18   and I emphasize "potential," which is basically your call.

19   And so if you will tell me in what respect that arrangement

20   is somehow prejudicial to you, I would like to know.

21            THE DEFENDANT:  Because if -- if a right is a right

22   -- you are saying that if the Sixth Amendment allows for the

23   right to take place, if that is a right of the defendant to

24   do that, then appointing counsel contradicts that right.

25            THE COURT:  Well, you misunderstand the system, and

1    I can't persuade you because you have got your mind made up.

2    You are just wrong.  You are wrong.  W-R-O-N-G, wrong.

3                THE DEFENDANT:  Okay.

4                THE COURT:  Okay?  Any other questions?

5                THE DEFENDANT:  Yes.  You made mention to the prior

6    pleadings that were before the Court -- or the prior

7    administrative pleadings were before the Court.  The

8    plaintiff has not objected to those pleadings.  There has

9    been no response to those other pleadings.

10                THE COURT:  Which pleadings are you talking about?

11                THE DEFENDANT:  The information that -- the

12    administrative pleadings that has been submitted to the

13    Court.

14                THE COURT:  What administrative pleadings to the

15    Court?

16                THE DEFENDANT:  The administrative pleadings that

17    were submitted to the Court prior to today.

18                THE COURT:  What are you talking about?  You have

19    to tell me something besides "administrative."  I don't even

20    know what you are talking about.  If you would would help me

21    identify what it is you are speaking to.  What is it that you

22    are talking about?

23                THE DEFENDANT:  The information that was submitted

24    to the Court you mentioned last time that you were -- when we

25    were here.

1    THE COURT:  What information are you talking about?

2    THE DEFENDANT:  The information that was submitted

3  before.

4    THE COURT:  What are you talking about?  Don't talk

5  about information that was submitted before.  I am not a mind

6  reader.  Tell me what you are talking about.

7    THE DEFENDANT:  Let's see.  For the record, your

8  Honor, I would like to present a motion for production of the

9  Grand Jury testimony, if I could.  And I will do that as well

10  in open court for the plaintiff and for yourself.

11    THE COURT:  There has to be some ground for that.

12    MR. STUMP:  Your Honor, if I could, I anticipate

13  that there will be witnesses who testified in the Grand Jury

14  who will also testify at the trial, and I will --

15    THE COURT:  To the extent -- obviously to the

16  extent that those people are witnesses, that is something

17  that has to be made available to you for purposes of possible

18  cross-examination because if somebody has testified

19  differently in court from the way in which this person

20  testified before the Grand Jury, that is something you are

21  entitled to bring out.  But that doesn't mean that you have a

22  blanket entitlement to anything that took place before the

23  Grand Jury.  Anybody whose is testimony going to be

24  introduced or sought to be introduced by the Government who

25  has also been a witness before the Grand Jury, you are

1    certainly going to be entitled to receive and there will be

2    delivered to you the testimony of that person or those

3    persons.  So that that is for your use for purposes of

4    examination of those witnesses.

5               THE DEFENDANT:  Right.  That is why I presented the

6    motions.  Is that what you are telling me?

7               MR. STUMP:  And, your Honor, I have no objection to

8    that.  We will certainly do that.  It is our requirement, and

9    we will do that.

10              THE COURT:  That -- the Government is obligated to

11   do that, and there no objection to it certainly.

12              THE DEFENDANT:  Okay, great.

13              THE COURT:  Anything else?

14              THE DEFENDANT:  No, that is it.

15              THE COURT:  All right.

16              MR. STUMP:  Your Honor, there was one other

17   document that you had requested for this date which was

18   proposed questions for voir dire.

19              THE COURT:  Yes.

20              MR. STUMP:  I have those as well.  Can I submit

21   those at this time?

22              THE COURT:  Please do.

23              And once again -- now on that subject -- once again

24   you will take a look at what the Government has proposed.

25   And if you find any of those objectionable, I expect that you

1  will be in a position to raise that during the voire dire

2  conference.  And if there there are questions that you

3  yourself believe should be asked of prospective jurors, I

4  would like you to have -- to think about those after you have

5  had a chance to look at these and get a sense of it.  And so

6  I will consider the questions that you may pose.

7          Now let me say that my -- some -- that my practice

8  is to conduct the voir dire questioning myself because I am

9  neutral, and I do not believe that the questioning during the

10  voir dire process is supposed to be a selling job on behalf

11  of either side, on behalf of the Government, on behalf of the

12  defendant.

13          Sonya, your phone is ringing there.

14          THE CLERK:  That is in -- that is in my office,

15  yeah.

16          THE COURT:  That is your office.

17          Now, along those lines whenever somebody provides

18  for me a proposed voir dire question that I think of as

19  loaded, that is, something that essentially partakes of

20  argument, I won't give it in that form.  But there are often

21  questions that ought to be asked as two-sided questions, that

22  is, in terms of finding out whether jurors would be

23  influenced one way, I always create the counterpart of it so

24  that we find out -- that we emphasize to jurors --

25          Let me give you an example.  I always tell jurors,

1   prospective jurors, that they are not to consider the
2   testimony of someone who is associated with the Government or
3   with law enforcement -- they are not to consider that
4   person's testimony any more or any less reliable than that of
5   anyone else who may come to trial to identify the person you
6   think I gets on and says, "I fly planes for United Airlines."
7   And, you know, therefore we want to make sure that the voire
8   dire process an is educational one as well as an inquiry.  So
9   that I always pose that to prospective jurors and ask whether
10  anybody has any problem with applying that principle because
11  we can't afford to have somebody who will automatically take
12  the word, for example, of a Chicago Police Officer or will
13  automatically think that somebody is suspect because he or
14  she is a Chicago Police Officer.  So I always give a sort of
15  two-sided question set in situations such as that.

16          But I am not suggesting what you ought to include.
17  I am simply saying that between now and then take a look at
18  what the Government has proposed, and if you have other
19  questions that you think ought to be asked in order to make
20  sure we get a fair and impartial jury, I would expect you to
21  submit those as well so that we would be in a position to
22  conduct the collection process appropriately.  Okay?

23          THE DEFENDANT:  Okay.  I would like to also ask, is
24  there any remaining controversy, I should ask, between the
25  plaintiff and the defendant?

1        THE COURT:  I don't know what you mean by
2    "remaining controversy."
3        THE DEFENDANT:  Is there any remaining controversy
4    between the plaintiff and the defendant in lieu of the
5    administrative documents that were previously submitted?
6        THE COURT:  I don't know what you are talking
7    about.  You are going to have to be less opaque than that.  I
8    don't know what you are talking about.
9        THE DEFENDANT:  Okay.
10       THE COURT:  When you were asked to identify
11   administrative documents, the one example you gave was the
12   one about the Grand Jury testimony.  We already answered
13   that.  What else are you talking about?  Tell me.
14       THE DEFENDANT:  Well, the question was just if
15   there was any remaining controversy between the plaintiff and
16   defendant.
17       THE COURT:  I don't know what you mean.  You can't
18   -- you may speak your own language.  But if it is not
19   intelligible to other people, you are certainly competent to
20   frame it in a somewhat different way so that people will
21   understand what you are asking.  And I can tell you you have
22   just asked an unintelligible question.
23       THE DEFENDANT:  Okay.
24       THE COURT:  So if you want to state one in a way
25   that somebody can understand it, I would be glad to listen.

1    So --

2                  THE CLERK:  Hi.

3                  THE COURT:  Is that Mr. Chandra?

4                  THE CLERK:  Yes.

5                  THE COURT:  Wait just a minute.

6                  THE CLERK:  Oh, there he is.  We were just going to

7    tell you to call us.

8                  THE COURT:  Do you want to step up, please.  And if

9    you would identify yourself for the record.

10                 MR. CHANDRA:  Piyush Chandra, Federal Defender

11   Program.

12                 MR. CHANDRA:  Good morning.

13                 THE COURT:  As I understand you are the duty lawyer

14   for today.

15                 MR. CHANDRA:  That is correct.

16                 THE COURT:  So that means that whatever things crop

17   up as matters today, you are the one to whom we look, right?

18                 MR. CHANDRA:  That's correct, Judge.

19                 THE COURT:  All right.  The situation that we have

20   here is that Miss Phillips here is defendant in a criminal

21   case and has exercised her constitutional right to represent

22   herself under Faretta against California and similar cases.

23   I have determined that a resource should be made available to

24   her to make use or not make use of, as she chooses, to act as

25   standby counsel.  So that -- and our trial is set to begin a

1    week from Monday, the 29th.

2              And how long, by the way, do we anticipate the

3    trial is likely to take?

4              MR. STUMP:  Your Honor, this is similar to the

5    question I asked you.  I would hope that my case would be

6    done, if we start Monday, by the end of the day on Wednesday.

7              THE COURT:  Okay.  So we are looking at probably a

8    one-week trial or so beginning the 29th.  Do you have any

9    conflicts?

10             MR. CHANDRA:  I do, Judge.  I am -- I have tickets

11   out of town for about two and a half weeks, but I can try to

12   see if we can find today another attorney that could be

13   available for that.

14             THE COURT:  All right.  Let's please do that under

15   their regular system of designation.

16             MR. CHANDRA:  Yes.

17             THE COURT:  I know that the list that I had gotten

18   from the Executive Director had listed -- had listed Imani

19   Chiphe I think, and I think that got changed and --

20             MR. CHANDRA:  It did.  It did, Judge, yes.

21             THE COURT:  So what we are going to do, we will

22   have Miss Phillips' phone number so that once we get somebody

23   designated, the -- she will be in a position to speak with

24   the person or not, as she chooses, in advance of the trial.

25   We do have scheduled a voir dire conference next Tuesday, the

1   23rd, at -- what did we say, 1:30?

2              MR. STUMP:  1:30.

3              THE COURT:  -- at 1:30.  And I would like the

4   standby counsel to be there again as a potential resource,

5   but explaining, as I have explained to Ms. Phillips a number

6   of times, that person is not her lawyer and it is entirely

7   her choice as to the extent, if at all, that she anticipates

8   asking for some assistance on purely procedural aspects,

9   which is her call.  And it means we want to have somebody

10  available.

11             So that is going the one day, the voir dire

12  conference at Tuesday at 1:30.  And the trial is scheduled to

13  begin on Monday July 29th at 9:30 and will be expected to run

14  in all likelihood somewhere close to the full week I would

15  think.  Okay?

16             MR. CHANDRA:  Yes, Judge.

17             THE COURT:  Thank you very much.

18             MR. CHANDRA:  You are welcome, your Honor.

19             THE COURT:  You are discharged to active duty.

20             MR. CHANDRA:  If I may have just a moment to speak

21  with the defendant for a second just to get some contact

22  information.

23             THE COURT:  Surely, if she wishes to.

24             THE DEFENDANT:  I do not wish to, sir.

25             THE COURT:  She doesn't want to.

1          THE DEFENDANT:  Pardon me, no offense.

2          MR. CHANDRA:  None taken.

3          THE COURT:  All right.  Thank you very much.

4          MR. CHANDRA:  Judge, may I have a -- I can get this

5    information later, if I am interrupting things, but a case

6    number or --

7          THE COURT:  Oh, it is -- the case number is 12 CR

8    872.

9          MR. CHANDRA:  Thank you.

10          THE COURT:  Case name is United States against

11    Cherron -- that is C-H-E-R-R-O-N -- Marie, spelled the common

12    way -- Phillips with two l's.

13          MR. CHANDRA:  Thank you, your Honor.

14          THE COURT:  Thank you.

15          So if you will give Sonya your phone number so when

16    I find out who it is, we can pass the word along to you.  And

17    as I say you have no obligation to make use of it and -- but

18    you can expect to see whoever the standby counsel is to be

19    present at the voir dire conference on Tuesday.  Okay?

20          Any other questions or issues?

21          MR. STUMP:  Your Honor, is there currently a

22    deadline for pretrial motions?

23          THE COURT:  Well, actually the deadline has long

24    since passed for pretrial motions.  We have been -- we have

25    been at this one, and to my knowledge there have -- there are

1  no preliminary motions that stand in the way of just starting

2  our trial in substantive terms.

3          MR. STUMP:  Yes, sir.

4          THE COURT:  Okay?  Anything else?

5          THE DEFENDANT:  Yes.  How long would it take for me

6  to obtain the Grand Jury -- the motion that was just entered

7  for the Grand Jury testimony.

8          MR. STUMP:  Your Honor, I am happy to speak with

9  Miss Phillips immediately after this proceeding to work out

10  with her when we can get that to her.  It would be very soon.

11          THE COURT:  Fine, very soon.  I would expect that

12  it is going to be no later than early next week so that she

13  gets several days in which she may view that and consider it.

14          MR. STUMP:  Yes, sir.

15          THE COURT:  Considering the purpose for which it

16  may be used.

17          MR. STUMP:  We will certainly have it to her by the

18  Tuesday voir dire conference.  If I can get it to her before

19  then, I will.

20          THE COURT:  Okay.  Anything else?

21          THE DEFENDANT:  Is there any way I can get it

22  today?

23          MR. STUMP:  As I say, I will work on it, your

24  Honor.  I actually don't have a copy with me or I would just

25  go make a copy.

1      THE COURT:  Yes.

2      MR. STUMP:  So I have to track it down, but I will

3  work on that.

4      THE COURT:  Okay.  I guess that is it.  Thank you

5  both.

6      MR. STUMP:  Thank you, your Honor.

7      THE CLERK:  This Court stands in recess until 1:15

8  p.m.

9      (Which were all the proceedings heard.)

10                    CERTIFICATE

11      I certify that the foregoing is a correct transcript

12  from the record of proceedings in the above-entitled matter.

13

14  s/Rosemary Scarpelli/          Date:  February 11, 2015

15

16

17

18

19

20

21

22

23

24

25