1   IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3   UNITED STATES OF AMERICA,        )   No. 12 CR 872
                                     )
4                    Plaintiff,      )   Chicago, Illinois
                                     )   July 26, 2013
5                                    )   10:35 o'clock a.m.
    -vs-                             )
6                                    )
                                     )
7   CHERRON MARIE PHILLIPS,          )
                                     )
8                    Defendant.      )

9
            TRANSCRIPT OF PROCEEDINGS - STATUS
10       BEFORE THE HONORABLE MILTON I. SHADUR

11  APPEARANCES:

12  For the Plaintiff:    HON. GARY SHAPIRO, by
                          MR. NATHAN D. STUMP
13                        Special Assistant United States Attorney
                          9 Executive Drive
14                        Fairview Heights, Illinois 62208

15
    For the Defendant:    Cherron Marie Phillips, pro se
16                        P.O. Box 802625
                          Chicago, Illinois
17

18

19

20

21

22

23  Court Reporter:       ROSEMARY SCARPELLI
                          219 South Dearborn Street
24                        Room 2304A
                          Chicago, Illinois 60604
25                        (312) 435-5815

1            THE CLERK:   12 CR 872, USA versus Cherron Marie

2   Phillips.

3            MR. STUMP:   Good morning, your Honor, Nathan Stump

4   on behalf of the United States.

5            THE DEFENDANT:   Good morning, your Honor, River Bey

6   here on behalf of Cherron Phillips.

7            THE COURT:   Good morning.  Well, this is a session

8   that was requested by defendant Cherron Marie Phillips

9   without having indicated -- as I understand it, she certainly

10  did not indicate to the Court and I am not sure whether she

11  indicated to the Assistant United States Attorney what the

12  subject matter was going to be.  But has she delivered to you

13  copies of the documents that she just handed up here a few

14  minutes ago?

15           MR. STUMP:   Good morning.  Your Honor, I believe we

16  are talking about the same thing I have.

17           THE COURT:   There are three things.  One is

18  captioned an Order, another one is captioned a Notice of

19  Filing characterized as a Motion to Dismiss Indictment.  And

20  the third one is a Notice of Filing that refers to what is

21  called a Notice of Ownership, Notice of Acquisition with

22  exhibit.  Same things that you have received?

23           MR. STUMP:   Your Honor, I have those -- two of

24  those.  I don't believe I have the order that you referred

25  to.

1          THE COURT:  Well, I will come to that in a moment.

2          There is no reason -- well, I do have an initial

3   question to ask of Ms. Phillips -- or a couple of initial

4   questions.  As you know when we had had our voir dire

5   conference, I had specified that if you wished to provide any

6   supplement to the list of names that the Government had

7   presented, that you were certainly free to do that.  Have you

8   done so or not?

9          THE DEFENDANT:  Well, sir, for the record the

10  purpose for this --

11         THE COURT:  Forget about your purpose for a moment.

12  I am asking about my purpose because I am going to be running

13  this trial.  So stay, if you will, with responding to my

14  question.  Okay?  My first question is, have you prepared or

15  a -- or any additions to the list of names that the

16  Government had provideed?

17         THE DEFENDANT:  Sir, in light of the motion I

18  wasn't aware that the trial would be necessary.

19         THE COURT:  Oh, yes, it is going to be necessary,

20  so we will get to that.  But it is not up to you really to

21  make that determination.

22         THE DEFENDANT:  So --

23         THE COURT:  Okay?  That is my determination.  And I

24  had given you specific indications of what it was that was

25  going to be necessary, if you wanted to provide any or not.

1  You are not obligated to do that.  So try my question with a

2  yes or a no.  Have you prepared and have you submitted any

3  additions to the list of names?

4          THE DEFENDANT:  May I ask your Honor, is the trial

5  still necessary?

6          THE COURT:  Oh, yes.  We will get to that in a

7  moment.  And you will ask -- answer my question before you

8  put one of your own questions.  I have had enough of this

9  business of your occupying a universe that only you occupy.

10  And we will get to that.  Please answer my question.  I was

11  polite in asking it.  You be equally polite in responding.

12  Is the answer to that yes or no?

13          THE DEFENDANT:  Sir, at this time I do not wish to

14  add any names to the --

15          THE COURT:  Okay.

16          THE DEFENDANT:  -- in light of the -- because the

17  trial -- we will have to determine if the trial is necessary.

18          THE COURT:  Thank you.

19          Now, I had also indicated that you had had an equal

20  opportunity to present any proposed jury instructions,

21  although that is not ultimately critical at the inception of

22  the trial.  But I thought that if you had any that would be

23  useful on an informational basis, you might do that.  Am I

24  correct that up to now you have not provided any added

25  proposed jury instructions?

1     THE DEFENDANT:  Sir, for the record I am only here

2  -- I am only here to dismiss the charges today.

3     THE COURT:  No, you are not only here for that.  I

4  am sorry.  I had set times.  And it is a perfectly legitimate

5  question for me to ask.  And this one, as I said, it is not

6  -- you are not prejudiced by the fact that you haven't.  It

7  is simply a question of fact that I had posed to you.  Am I

8  correct in understanding that you have not tendered any

9  proposed jury instructions or any corrections or objections

10  to the Government's jury instructions?

11     THE DEFENDANT:  Sir, in light of the motion that is

12  presented that would be a sign of objection to any trial and

13  any public trial --

14     THE COURT:  I understand the objection to trial,

15  not on the jury instructions.  Please -- you know, you are --

16  you are an articulate person.  And I think you are somewhat

17  familiar with the English language, although you probably may

18  not be cognizant of the classic Alexander Pope portion of his

19  essay and criticism in which he said, "A little learning is a

20  dangerous thing."  And you can amplify that by saying less

21  learning is even more dangerous.

22     But let me try again.  You have not tendered any

23  proposed instruction, right?

24     THE DEFENDANT:  Sir, I object to any purpose of the

25  jury trial or public trial.

1    THE COURT:  I know that, I heard that.  So stay

2  with me question.

3    THE DEFENDANT:  I am only here to dismiss the

4  charges, sir.

5    THE COURT:  No, you are not.  You are here to

6  answer the questions that I am posing to you as well.  So

7  answer no, no jury instructions?  I haven't seen any.  All

8  right.

9    THE DEFENDANT:  Again by answering that question

10  will I prejudice the defendant?

11    THE COURT:  You have -- I think you have prejudiced

12  yourself somewhat by your actions, but that is another issue.

13  You are certainly not adding to any potential damage that you

14  have done to yourself by answering that question as it is

15  put.  Is the answer yes or no to that?

16    THE DEFENDANT:  Sir, I am here on motion to dismiss

17  the indictment.

18    THE COURT:  Pardon?

19    THE DEFENDANT:  I am only here on a motion to

20  dismiss --

21    THE COURT:  No, you are not.  You don't make the

22  rules, ma'am.  I do.  It is my courtroom.  I am running this

23  as a trial.  You are going to be exposed to that.  And I will

24  get to your motions momentarily, but I do have these

25  preliminary questions because they were raised earlier at the

1  voir dire conference.  So --

2  THE DEFENDANT:  That -- okay.

3  THE COURT:  Okay.  Well, I think I could take

4  notice of the fact that I haven't been handed any by you, and

5  I will leave it at that because that, as I say, is not fatal

6  because it is not the final time for that purpose.

7  Have you suggested any added voir dire questions or

8  objections to the Government list of voir dire questions that

9  were tendered?

10  THE DEFENDANT:  Sir, I object to all the voir dire

11  questions.  I object to the purpose of the trial.  I object.

12  THE COURT:  Okay, thank you.  So you have not then

13  tendered any because you think that would be inconsistent

14  with what you are saying now, is that a fair statement?

15  THE DEFENDANT:  Sir, if -- excuse me?

16  THE COURT:  Don't quibble with me, ma'am.  Listen

17  to my question and answer it directly.  Try again.  I have

18  been charitable to you in terms of how I have phrased this.

19  What I have last asked is whether you have not provided voir

20  dire questions because it is your -- it would be contrary to

21  your view of what this case should go forward or not go

22  forward on.  Is that a fair statement?

23  THE DEFENDANT:  It would be contrary to the -- yes.

24  THE COURT:  Okay.  Thank you.

25  Okay.  Now let me, if I may, turn to the matters

1  that are here.  And for that purpose both of you can sit down

2  and let me go through what they are, okay?

3        The first one is order, a draft order, that

4  Ms. Phillips has submitted that reads:  "This cause coming on

5  to be heard upon the regular call of cases for 'pretrail' and

6  it appearing to the Court that the said cause has been

7  settled by agreement of the parties is hereby ordered,

8  adjudged and decreed that the above-entitled cause be and the

9  same is here dismissed with prejudice and without costs."

10        That in brief is utter nonsense.  It does not

11  belong in a criminal case.  It might be applicable if this

12  were a civil case and it were capable of settlement by

13  agreement of the parties.  I tried to explain last time that

14  you have a fundamental misconception on that score evidenced

15  -- best evidenced by the fact that you had tried to bring

16  something under the Federal Rules of Civil Procedure which

17  did not apply.  So that will -- that proposed order will of

18  course not be entered.  It plays no role here.

19        The second thing has to do with what is called a

20  notice of filing of an attached notice of ownership, notice

21  of acquisition with exhibits in the above-captioned case.

22  What is attached to that is an UCC financing statement in

23  which the party named is the Cherron Marie Phillips

24  Trust/Estate and it -- it can only be said -- oh, and

25  attached to it is a financing statement amendment which has

1   to do with all assets deposit on account.  It is -- falls in

2   the category of what I had characterized, with I think some

3   charity as well, as falling in the category of The New

4   Yorker's Department of Clotted Nonsense.  It is totally

5   irrelevant and it will -- it will not be -- it will not be

6   treated as filed.

7        I am placing it in the record so that it is clear

8   that it is part of the record as something done by Miss

9   Phillips, but it is not relevant to this proceeding and will

10  not be acted upon.

11       The last item has to do with a notice of filing of

12  a motion to dismiss the indictment.  I do have a question on

13  that score, and that is one of the things that Ms. Phillips

14  has talked about is she said that the indictment was not

15  signed by an attorney for the Government.  The photocopy that

16  I have which was dated back in November 2012 and bears a file

17  stamp by the Clerk of the Court does not have the -- does not

18  have the true bill signature by the foreperson of the Grand

19  Jury.  It does not have signatures, although it has blanks

20  for signatures of the United States Attorney.  Mr. Wigginton,

21  the U.S. Attorney for the Southern District of Illinois, and

22  Mr. Stump.

23       Mr. Stump, can you fill me in on that?

24       MR. STUMP:  Your Honor, I will do my best.  As you

25  know, I don't normally practice in this Court.  This has been

1 the only indictment that I have ever filed in this Court.
2 Any other court where I have practiced there has been a
3 signed copy of the indictment on the record and listed as
4 part of the docket, and in some instances the foreperson's
5 signature is blacked out. But in any case there is a signed
6 copy.

7 In this case when the indictment came down and I
8 received a copy, I noticed the same thing that there were no
9 signatures on the signed part. The document was signed by
10 both Mr. Wigginton and myself and a foreperson, but for some
11 reason the copy that is filed does not have those signatures.
12 And when I inquired about it, I was told that that was the
13 practice of this jurisdiction to only file copies that are
14 unsigned in the record.

15 THE COURT: Well, I would expect you to -- because
16 I don't have anything other than what you have referred to
17 and what I have seen here, I would expect you to provide
18 that. And I expect that that is something that should
19 readily be available and I would see no reason that that
20 can't be done today.

21 MR. STUMP: Yes, sir.

22 THE COURT: So I do expect that to be done.

23 MR. STUMP: I will do that.

24 THE COURT: Now, I read over the other aspects of
25 the motion to dismiss the indictment. And my earlier

1   characterization of Ms. Phillips as occupying a universe of

2   her own is I think totally evident from the nature of the

3   motion.  Miss Phillips, you would have been much better

4   served if you had devoted your time to the preparation of

5   whatever defense you anticipate presenting because our trial

6   is going -- I am denying the motion to dismiss the

7   indictment.  Our trial is proceeding on Monday morning.  You

8   are expected to be here.  And you will be assisted to -- only

9   if and to the extent that you so desire by the member of the

10  Federal Defender Panel who has been appointed as the standby

11  counsel.

12          Again I emphasize that you have exercised your

13  constitutional right to represent yourself.  The case law,

14  although it could well have been developed otherwise, does

15  not make the kind of lack of rationality that has been

16  reflected by these filings a ground for the Court rejecting

17  somebody's exercise of his or her constitutional rights.  I

18  respect the constitutional right.  You have the right to

19  represent yourself.  I expect you are going to do that.

20          But if you think that for a moment that at this

21  last moment you are going to waltz in and present something

22  that prevents this trial from proceeding, you have got

23  another thing coming.  You are not.  The trial is going to

24  commence at 9:30 on Monday morning, the 29th.

25          The -- you are -- I am not going to elaborate on

1　the bizarre nature of your assertions, but, you know, I note,

2　for example, just early on that you cite to United States

3　Supreme Court decision that has to do with civil cases, not

4　criminal cases, Bell Atlantic against Twombly.  And again the

5　amount of time that you may have spent in researching and

6　preparing this was ill spent because again you -- you may

7　already have prepared yourself for the trial, although I

8　don't know about that, but it would have been better spent in

9　getting yourself fully geared up for the trial which will

10　proceed.

11　　　　It is hard to single out things that are -- one

12　thing that is more absurd than the next is this mish-mosh

13　that has been presented, but just to take one example,

14　Paragraph 16.  "This case exposes the aggrieved party to

15　criminal liability for thinking thoughts that are at best

16　unpopular.  It is impermissible to penalize mere thoughts

17　that are neither criminal in nature nor generate criminal

18　conduct."  Now that is truly bizarre.  It is totally beside

19　the mark.  It misses the entire point of this indictment.

20　　　　It is a shame that you have not faced up to what

21　this indictment is about or, more importantly, that you

22　didn't face up earlier that would have prevented the conduct

23　that you are charged with.  So we will find out what a jury

24　makes of the charges and of the Government's presentation and

25　of your defense.

1    I guess I have one last item, and that is that the

2   United States has provided a notice of Rule 404 evidence that

3   was anticipated to be presented.  I had inquired about

4   whether you had any responses basically, but I haven't heard

5   anything other than "I am not going to do anything because I

6   am just moving to dismiss the indictment."

7    So I had reviewed the Government's indication.  The

8   -- this is certainly -- the things that are referred to there

9   are certainly relevant within Federal Rule of Criminal

10  Procedure 404(b), the Federal Rule of Evidence 404(b).  And

11  the matters are certainly relevant as to both motive,

12  identity, knowledge, and intent in filing the documents that

13  are asserted.

14    Again the ultimate determination of the

15  significance of that is to going to be for the jury because

16  that is our system.  The Court deals only with the threshold

17  question about whether evidence is admissible.  And the

18  answer on that is yes.

19    So we are scheduled to start on Monday at 9:30.  I

20  did have one question to ask you about that because it was

21  another item that had been left open.  You remember that I

22  had asked Mr. Stump how long he would anticipate in giving

23  the United States opening statement.  And I had made it clear

24  that opening statements are not for argument.  They are only

25  to indicate to the jurors what it is anticipated that the

1  evidence is going to show.  You have an absolute right to

2  present an opening statement.  Sometimes, as I mentioned the

3  other day, defendants in criminal cases will defer the

4  presentation of their opening statement until the end of the

5  Government's case in chief.  That is really an optional

6  choice, and it is available.  But I want to emphasize to you

7  that if you anticipate presenting an opening statement, it is

8  not going to be used for purposes of argument, for purposes

9  of your spinning the theories and the mistaken views that

10  have been expressed in, for example, this motion to dismiss

11  the indictment.

12          So my question of you is, would you anticipate

13  presenting an opening statement that discusses facts that the

14  -- it would be expected that the trial would present, and if

15  so, what is your best judgment as to how long that statement

16  might be?

17          THE DEFENDANT:  Your Honor, if I may, I would like

18  to comment on the statement that you made.

19          THE COURT:  Step up to the microphone.

20          THE DEFENDANT:  I would like to comment on the

21  comments that you made in regards to the motion.

22          THE COURT:  Yes, you may.

23          THE DEFENDANT:  Okay.  As I stated before, I am not

24  here to take any benefit from the public trust.  Okay.

25          THE COURT:  To take any benefit from the public

1   what?

2           THE DEFENDANT:  From the public trust.

3           THE COURT:  Trust?

4           THE DEFENDANT:  Yes, from the public trust.

5           THE COURT:  What do you mean by the public trust?

6           THE DEFENDANT:  I am not here to take any benefit

7   from the public trust.

8           THE COURT:  Let me try again.  You see I am slow on

9   English I guess.  Tell me, what is this public trust that you

10   are talking about, so I will understand your argument?

11           THE DEFENDANT:  Your Honor, are you not aware that

12   a trust exists based on the documents that I have given you?

13           THE COURT:  I think that the answer to that one is,

14   no, I am not aware that your documents have somehow reflected

15   a trust.

16           THE DEFENDANT:  So would you like for me to present

17   more information to substantiate that?

18           THE COURT:  No, I would like you to tell me what

19   you mean by a public trust.  You think that these have done

20   something, and I don't find that you have.  But that may be

21   due to my lack of understanding of what you mean about --

22   when you say "public trust."  "Trust" is a word of many

23   meanings.  And so I am not sure what definition you are using

24   when you talk about public trust in the context in which you

25   have used it.

1    You are -- you don't care to enlighten me I gather,
2  right?

3    THE DEFENDANT:  Well, I didn't know that that would
4  be appropriate at this time.

5    THE COURT:  Well, that is probably right, but go
6  ahead.  I don't know what you mean by it wouldn't be
7  appropriate at this time.

8    THE DEFENDANT:  The documents since that were sent
9  to you expressed that there was a trust.  So again if you
10  needed more information, then I could have elaborated on that
11  at that time.

12    THE COURT:  Well, I think we have differing views
13  on that subject.

14    And what is your next point?

15    THE DEFENDANT:  I would like to ask you a question
16  regards to the indictment.  My question is, the United States
17  of America is the plaintiff?

18    THE COURT:  And your distinction as part of your
19  motion says the United States is not the same as the United
20  States of America.  And that really is a -- it -- I hesitate
21  to rank your statements in order of just how bizarre they
22  are, but I am not sure I get the entire message that you are
23  trying to convey by that communication.  What is the United
24  States other than the United States of America?  There have
25  been other united states, of course, elsewhere in the world.

1    But the United States of America happens to be the one that
2    is the jurisdiction here.  So I am not sure I understand the
3    distinction that you are making.
4            THE DEFENDANT:  Okay.  In the motion it states that
5    -- well, that information is presented as far as the
6    distinction of the United States versus the United States of
7    America.
8            THE COURT:  Well, you haven't scored any brownie
9    points on that either.
10           So what is next?
11           THE DEFENDANT:  Well, I didn't want -- I am not
12    here to argue.
13           THE COURT:  I know that.
14           THE DEFENDANT:  So --
15           THE COURT:  You -- to the extent that you have
16    sought to argue those things, they are really quite, I regret
17    to say, unpersuasive.  They really do not bear on the issues.
18    I am sorry to say that in that respect it is -- what we have
19    is either the absence of learning or what Alexander Pope
20    referred to as a little learning and the -- you have just
21    demonstrated his aphorism that it is a dangerous thing
22    because none of these things have any true bearing at all on
23    the proceeding that we are going forward with.
24           THE DEFENDANT:  So what did you make your basis for
25    dismissing -- for not honoring --

1          THE COURT:  You know, I don't -- I don't have to

2    try to -- try to make rational sense out of irrational

3    documents.  The idea of saying, "What is my basis," when you

4    haven't demonstrated any basis at all for your assertions,

5    that is not the way this -- that is not the way our procedure

6    goes, ma'am.  These are totally without merit.  And other

7    than characterizing them in that fashion, I think that any

8    reader with a modicum of understanding would recognize that

9    they just do not constitute rational statements that have to

10   bear upon this proceeding.

11         THE DEFENDANT:  Well, I could make the same

12   presumption about the information that I received as well.

13         THE COURT:  You could, except that you would be

14   wrong.

15         THE DEFENDANT:  How so?

16         THE COURT:  Ma'am, I am not here in a situation in

17   which you are going to convert me into a defendant.  And so

18   don't think that you can outwit me by doing so.

19         THE DEFENDANT:  I am only asking for clarity.

20         THE COURT:   Just a minute.  I have already

21   explained to you and the -- to the extent that your comments

22   have taken the form that they have, they add nothing to the

23   dialogue.

24         THE DEFENDANT:  Well, again I am only asking for

25   clarity.

1    THE COURT:  If you were asking for clarity, you

2    would have provided clarity, and you have not.  And so I

3    gather that if that is the nature of your communication, you

4    are probably -- in order to adjourn so you can prepare

5    yourself for the trial that is going to begin at 9:30 on

6    Monday.

7        THE DEFENDANT:  Again I did not hear your grounds

8    for terminating the motion.  Is that what you did?  Is that

9    what the case was?

10       THE COURT:  I have denied the motion as being

11   totally without merit on its face.  I have often been

12   critical of counsel who have said that something speaks for

13   itself because I have commented in a sort of jocular form in

14   some rulings that I have been listening for years and I have

15   yet to see a deed or a trust or a lease or any other

16   documents that "speaks for itself."

17       But I must say that this is a classic illustration

18   of the fact that in the old days when computers were young,

19   they used to call it -- they used to use a term GIGO which

20   meant garbage in and garbage out.  And that is an apt

21   description of what we have here.  And I am perfectly

22   prepared to let -- if the trial results in a conviction and

23   if it is taken up to a higher court, I am perfectly willing

24   to let the higher court make a determination about whether

25   the rulings that I have just indicated here are correct or

1     not.  That is what they are there for.

2          So the answer is, no, you do not get -- you do not

3     illicit an explanation in which I have to try to make sense

4     out of irrationality in order to provide a response for it.

5     It is not -- just not going to take place.

6          So we are in recess until 9:30 on Monday when we

7     are going to go to trial.

8          MR. STUMP:  Your Honor, could I just briefly be

9     heard?

10          THE COURT:  I do have one question, however.  And I

11    think it is an important one.  When we order prospective

12    jurors, what is normally the case is that a value judgment is

13    made about the possibility or likelihood that we may have --

14    we may have challenges for cause in addition to the

15    challenges that are available that I explained the other day

16    that would add up to 32.  If we had the exercise of full

17    preemptory challenges both by the Government and by

18    Ms. Phillips, and had a couple of alternates with one

19    challenge for each of those.  That all adds up to 32.

20          If, for example -- and I think I mention --

21    probably mentioned it the other day.  If, for example, we had

22    a case that involved a gun charge, we know from experience

23    that there are people who feel very strongly on both sides of

24    that issue.  And as a result in order to guard ourselves

25    against running out of prospective jurors because then that

1   would mean that we would have to start again a second day, we

2   order enough people to avoid a so-called domino effect or

3   avoid that kind of problem.

4            One way we protect against that, against the domino

5   effect, in order to avoid, for example, one of the

6   prospective jurors blurting out something from the jury box

7   that may taint others, we always have questions that are

8   sensitive questions discussed over here at side bar out of

9   the hearing of the jury, although it is on the record because

10  Rosemary is hooked up, you know, to the microphone that is

11  over there, but that microphone does not amplify.

12           In the same way if we have drug cases, very

13  frequently we may find yourselves with a prospective juror

14  who has a son or daughter that has a serious drug problem.

15  And we know enough to say that we don't want to run the risk

16  for a defendant of having somebody who has a mindset that

17  would cause that person to vote guilty on somebody -- anybody

18  who is charged with a drug offense and as contrasted with

19  listening to what the evidence is and deciding on the

20  evidence.  So that is another ground for our ordering more

21  prospective jurors and we know.

22           My sense is that because I have no idea as to what

23  Ms. Phillips may be doing in this situation, although I am

24  certainly going to apprize the prospective jurors of the fact

25  that she has a constitutional right to exercise -- to

1   represent herself and that she has exercised that right, and

2   they are not to consider that in any respect as some

3   indication of any inappropriateness.  And I am going to

4   inquire about -- that is just an example.  I am going to

5   inquire of prospective jurors about whether anybody has any

6   problem with that concept.  Obviously if they do, we are not

7   going to permit such a person to serve.

8           So the point that I am getting to is that it is

9   awfully difficult in this current situation to get some

10  accurate notion of how many extra jurors it would be sensible

11  for us to order.  My general sense is that probably if we

12  were to order 45, which would give us more than enough, I

13  would hope, for a cushion, that that would be adequate for

14  that purpose, unless either Ms. Phillips or Mr. Stump thinks

15  that we ought to be looking at a different kind of number.

16          You understand the points that I have been making I

17  trust.

18          THE DEFENDANT:  I do not, sir.  I would like to

19  ask, the jurors that you are proposing, are they going to be

20  federal citizens?

21          THE COURT:  I don't know what you mean by "federal

22  citizens."  They are going to be United States citizens.

23          THE DEFENDANT:  Okay.  That wouldn't be a jury of

24  my peers.

25          THE COURT:  We take our -- we take our prospective

1  jurors at random from the voting lists.  The voting lists of

2  course are restricted to citizens.

3          THE DEFENDANT:  And for the --

4          THE COURT:  So we don't have -- we don't have

5  anybody but citizens as part of the jury pool.  And it is

6  done at random.  As I -- as I mentioned the other day -- you

7  may not recall -- the 29th is the beginning of a designated

8  two weeks of available service for prospective jurors.  And

9  so they order a pool that will be sufficient to handle as

10  many trials as are projected to be underway in our Court

11  during that time frame.  When the -- when Sonya calls

12  downstairs for our jury, they will take a random group out of

13  that larger random pool, once again all citizens, and they

14  will send them up to our courtroom with a computer-generated

15  list of the sequence in which the people are going to be

16  called.  So it is not alphabetical.  It is also random.  And

17  that is how we work it.

18          And I explained the other day very carefully how

19  that system was going to operate.  And I will just remind you

20  that you have the right to as many as ten challenges, leaving

21  aside people who are excused for cause.  You can challenge

22  people for any purpose, any reason, no reason at all, with

23  only the two exceptions that I mentioned.  Nobody can be

24  challenged that way by either you or the Government because

25  of that person's race or color.  Nobody can be challenged on

1 the basis of that person being a man or because the person is
2 a woman.

3 But outside of that it is open season. No, you
4 don't have to explain the reasons for challenges. You can
5 just say, "I don't want Miss Jones," or, "I don't want
6 Mr. Smith." But the way it is done is that you write down at
7 each stage the names of the prospective jurors that you will
8 want to challenge. So for that purpose I keep a seating
9 chart. You may want to do the same so that you have got the
10 names solidly. And when you exercise those challengers in
11 writing and the Government does the same, Sonya collects the
12 slips from the two of you, and I then read off the names of
13 those who are excused.

14 And I explained to you the system under which the
15 -- if the same note -- name shows up on both lists, in this
16 instance the United States will be charged with the first
17 person whose name appears on both lists. And after that the
18 arrow reverts back and forth if that happens more than once.
19 So that is our system for that. And it is important that it
20 be done in writing by both sides because it is important that
21 jurors do not get a sense that either side is being more
22 obstreperous or more troublesome in that regard. When they
23 hear from me that these five people let's say are excused,
24 they won't know where those challenges come from so long as
25 each side writes something on the paper.

1    Even in a situation in which you may not be
2  challenging anybody in a particular group, write something
3  down so that jurors don't get an obvious message when one
4  person hands up a blank piece of paper and the other one
5  hands up a paper that says -- something has been written on,
6  when I read the names of three people as being excused,
7  jurors are perceptive enough to know which side has done
8  that.  So this is in order to protect each side against any
9  unfavorable or improper instances by somebody who is being
10  more troublesome or less troublesome in that sense.  Okay?
11    Thank you.
12    THE DEFENDANT:  I have a question --
13    THE COURT:  Yes.
14    THE DEFENDANT:  -- in regards to the United States
15  versus the United States of America.
16    THE COURT:  Yeah.
17    THE DEFENDANT:  In regards to the Constitution,
18  everyone here has an oath to the Constitution, is that
19  correct?
20    THE COURT:  Well, I did.  I am not sure about
21  everybody else.
22    THE DEFENDANT:  Okay.
23    THE COURT:  I am not sure what you are talking
24  about when you talk about an oath to the Constitution.  I had
25  to give an oath when I took the bench.  And people, when they

1    are born here, don't take an oath to become citizens.  People

2    who are -- who are born elsewhere and want to become citizens

3    have to take an oath.  But I am -- so I am not sure what you

4    are talking about in terms of  both.

5    THE DEFENDANT:  Well, I guess to the best of my

6    informed knowledge I was -- thought every federal officer or

7    federal individual or people who work for the Federal

8    Government would have to take a oath to --

9    THE COURT:  Well, that is a different question.

10    And the answer is so far as I know anybody who takes a

11    federal office has to subscribe to the Constitution, right.

12    THE DEFENDANT:  Okay.  So that --

13    THE COURT:  I certainly did.

14    THE DEFENDANT:  I am sorry?

15    THE COURT:  I certainly did.

16    THE DEFENDANT:  Okay.  So that being said, then are

17    you obliged to conform to the Constitution?  Is that where

18    the -- where you would -- I am just trying to think of how to

19    pose the question.

20    THE COURT:  I am not sure I understand that, but --

21    I don't know if you have read the Constitution.

22    THE DEFENDANT:  I have.

23    THE COURT:  But the Constitution, the first

24    paragraph, "We the people" paragraph speaks about

25    establishing the Constitution for the United States of

1  America.

2  THE DEFENDANT:  Exactly.

3  THE COURT:  It doesn't use the term "United States

4  blank."  It is the United States of America, and that is the

5  Government that was formed by the Constitution.  And that is

6  the Government that has instituted this prosecution.  So I am

7  not sure that your point about trying to distinguish between

8  the United States of America and the United States makes any

9  sense at all.  But you have been the draft person on all

10  these things, and I guess that you have to take

11  responsibility for that.

12  What other question did you have?

13  THE DEFENDANT:  Well, under one of the statutes it

14  mentioned that the United States as a plaintiff could not be

15  represented by the Department of Justice.

16  THE COURT:  Where did you get that one?

17  THE DEFENDANT:  Well, it is in the motion that you

18  said that was -- I guess I want to say for lack of a better

19  term "frivolous" or something.  Maybe you didn't use that

20  term.

21  THE COURT:  Yeah.  So --

22  THE DEFENDANT:  If you want, I can point it out.

23  THE COURT:  Sure.

24  THE DEFENDANT:  It would be Line 6 where it says,

25  "The Department of Justice does not enjoy general powers of

1   attorney to represent the United States of America, except as

2   otherwise provided by law."

3       THE COURT:  Wait just a minute.  You are reading

4   from Paragraph 6?

5       THE DEFENDANT:  Yes, sir.  And I am asking --

6       THE COURT:  Paragraph 6 says:  "Except as otherwise

7   provided by law, each United States Attorney within a

8   District shall prosecute for all offenses against the United

9   States."  And you cite a statute.  And so -- of course you

10  cite a statute that is -- that is part of Title 28 which has

11  to do with civil cases, not criminal cases.  But I am not

12  sure where you are going with that one.

13      MR. STUMP:  Your Honor, if I may, I just put on the

14  record that the point is especially Assistant United States

15  Attorney for the Northern District of Illinois for the

16  purposes of this prosecution, that point was made by the

17  Attorney General of the United States.  There is a letter

18  that is on file in this case.  It is docketed.  And, your

19  Honor, that -- a second letter will actually be provided next

20  week to put on the docket to that effect because my

21  appointment is actually about to expire, and so I have been

22  renewed for another year in this case as a Special Assistant

23  U.S. Attorney for the Northern District of Illinois.

24      THE COURT:  Thank you.  But the -- just a minute.

25      I looked at Section 547 and it doesn't really do

1   anything that would vitiate the proceedings here.  "Except as
2   otherwise provided by law, each United States Attorney within
3   its District" -- and of course there is a power of
4   cross-designation to prosecute for all offenses against the
5   United States.  So your point --

6           THE DEFENDANT:  United States or United States of
7   America?

8           THE COURT:  Oh, come on.  You know, I have had
9   enough of this.  We are going to -- we are in recess and we
10  are going to start our trial at 9:30 on Monday.

11          MR. STUMP:  Your --

12          THE COURT:  The quibbles that you have tried to
13  advance are hopeless, in candor.  And I say again that you
14  would have been better served if you had devoted your efforts
15  to getting yourself prepared for this trial.  You are going
16  to -- I anticipate that anything -- everything will be done
17  to prevent you from further shooting yourself in the foot,
18  but if you choose to do that, it is going to be your problem.
19  I can't control you.  So that is where we are.

20          Yes, Mr. Stump?

21          MR. STUMP:  Your Honor, I had a couple brief
22  matters I want to raise with the Court before the jury comes
23  in on Monday.

24          THE COURT:  Please do.

25          MR. STUMP:  One is the list of names that the Court

1  asked for.  We had a few list-minute revisions, so I have

2  prepared a revised list.

3           THE COURT:  Hand that up.  Thank you.

4           You gave a copy to Miss Phillips?

5           MR. STUMP:  Your Honor, I tried to.  She actually

6  refused it before we began this morning.

7           THE COURT:  Well, we will make a photocopy for her.

8           MR. STUMP:  Your Honor, another matter concerns the

9  issue of Miss Phillips' mental competency.  I don't believe

10  that it is an issue at all, but because she is representing

11  herself the Court has made comments from time to time on the

12  record about her mental competency.  I wonder if it would be

13  prudent to put something on the record.

14           THE COURT:  No, I have made something else, and

15  that is the case law is quite clear, both from the Supreme

16  Court and Faretta against California and in the 7th Circuit,

17  that the only situation under which it is possible to

18  override someone's desired exercise of his or her own

19  constitutional right of self-representation is a situation

20  that involves mental illness.  For that purpose there is a

21  special cabin that is created.  Basically it is related to

22  mental illness.

23           So that, for example, the fact that someone may be

24  acting in a way that is contrary to his or her best interest

25  or that other people may think so is not a ground for

1   trumping an individual's purpose in exercising a

2   constitutional right.  So I have made very plain the line

3   that I have drawn between my concerns about Miss Phillips and

4   her exercise of what I have considered not the best judgment

5   on her own behalf.  And the question of mental illness, which

6   I have not ascribed to her, and if I had ascribed that to

7   her, we would be taking a totally different course.

8               MR. STUMP:  Yes, your Honor.  Thank you.

9               The last thing I wanted to raise with the Court was

10  I have a witness who is my case agent.

11              THE COURT:  You mentioned about availability in

12  terms of time?

13              MR. STUMP:  No, it is.

14              THE COURT:  Or is that somebody else?

15              MR. STUMP:  It is a slightly different issue, your

16  Honor.

17              THE COURT:  This is agent -- what is?

18              MR. STUMP:  Rongitsch.

19              THE COURT:  Rongitsch, yes.

20              MR. STUMP:  Agent Rongitsch was there for the

21  entire duration of the investigation and there is parts of

22  the investigation that only he can testify to, both in the

23  early stages and in the later stages of the investigation.

24              THE COURT:  Yes.

25              MR. STUMP:  And in trying to present a

1 chronological or consistent narrative to the jury, it would

2 be my preference, if I was allowed to, to call him earlier in

3 the case and then let him stand down subject to recall later

4 in the case. But before I make that plan in my own mind, I

5 wanted to know if your Honor would allow something like that,

6 to have a witness testify, step down, and then testify again

7 all in the Government's case in chief.

8 THE COURT: And the purpose of that is, as you

9 state, to make an orderly present -- sequential presentation?

10 MR. STUMP: Yes, your Honor.

11 THE COURT: That is a reasonable request. I would

12 not prevent any litigant from pursuing that course. The

13 scope of cross-examination in each instance would -- there

14 would not then be the potential for two cross-examinations,

15 one having to do with the subject matter of the initial

16 testimony and the other having to do with the subject matter

17 of the second presentation.

18 MR. STUMP: Yes. Thank you.

19 THE COURT: That is a non-problem.

20 MR. STUMP: Thank you, your Honor. That is all I

21 had.

22 THE COURT: Okay. We are set for 9:30 on Monday.

23 Thank you.

24 THE CLERK: This Court stands adjourned.

25 THE COURT: That is hers.

1    (Which were all the proceedings heard.)

2                    CERTIFICATE

3        I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    s/Rosemary Scarpelli/          Date:   February 11, 2015

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25