1
2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3

4

UNITED STATES OF AMERICA,              )      No. 2012 CR 872

                    Plaintiff,         )      May 21, 2014

5

6

           v.                          )      10:30 a.m.

CHERRON PHILLIPS,                      )

7

                    Defendant.         )

8

9

10

TRANSCRIPT OF PROCEEDINGS - CONFERENCE
BEFORE THE HON. MICHAEL REAGAN

11

APPEARANCES:

12

On behalf of Plaintiff:   MR. NATHAN STUMP
                          ASSISTANT UNITED STATES ATTORNEY

13

                          219 South Dearborn Street, 5th floor
                          Chicago, Illinois 60604

14

                          (312) 353-5300

15

On behalf of Defendant:   MS. LAUREN W. SOLOMON
                          P.O. Box 2013

16

                          Highland Park, Illinois 60035
                          (847) 756-0489

17

18

19

20

21

22

23

MICHAEL P. SNYDER, FCRR
Official Court Reporter

24

United States District Court
219 South Dearborn Street, Room 2244A

25

Chicago, Illinois 60604
(312) 435-5563

MICHAEL P. SNYDER, Official Court reporter

1          THE CLERK:  12 CR 872, USA versus Cherron Marie

2     Phillips.

3          THE COURT:  Mr. Stump?

4          MR. STUMP:  Yes.  Good morning, Your Honor.  Nathan

10:28:34   5     Stump on behalf of the United States.

6          THE COURT:  Miss Solomon.

7          MS. SOLOMON:  Good morning, Judge.  Lauren Weil

8     Solomon on behalf of Miss Phillips, who is present in court.

9          THE COURT:  Good morning, all.

10:28:44  10          I'm Judge Michael Reagan from the Southern District of

11     Illinois, and I've been assigned this case by Chief Judge Diane

12     Wood of the Seventh Circuit Court of Appeals.  Judge Mihm had a

13     physical issue this morning that's going to resolve itself, but

14     not in time for him to try this case on June 16th when it's

10:29:03  15     currently set, and I intend to honor that particular date.

16          So what I'd like to do today is go over the final

17     pretrial conference with you and then conclude with the jury

18     instruction conference so that we can begin with the evidence

19     as soon as possible if we pick a jury on Monday, the 16th.

10:29:20  20          So let me kind of start by just some general

21     background information.  Will either side request witnesses to

22     be excluded?

23          MR. STUMP:  Your Honor, I believe we'll go ahead and

24     invoke the rule on that.

10:29:33  25          THE COURT:  Okay.

MICHAEL P. SNYDER, Official Court reporter

1      MR. STUMP:  I think it will probably only prevent my

2  own witnesses from being in the courtroom, but that's just our

3  typical policy.

4      THE COURT:  Miss Solomon?

5      MS. SOLOMON:  I would agree with that.  I would

6  request.

7      THE COURT:  All right.  So witnesses will be excluded.

8  If you see anybody in the back of the courtroom who should not

9  be here because of the exclusion order, please give us a high

10  sign and we'll ask them to leave.  I don't know if this case is

11  going to draw a lot of people or not.  This is the first case

12  I've tried in Chicago.  I don't know if people come and go just

13  to watch proceedings.  They do in my courtroom, and I can't ask

14  everybody if they are involved in this case or not.  I do have

15  a sign in the back of my courtroom telling them not to come in

16  if they are a witness.  So just help me out with that.  If you

17  see somebody who is a witness, we'll make sure that they do

18  leave before there is any testimony.

19      MR. STUMP:  Your Honor, I can just preview for the

20  Court.  I do think there will be, maybe not a full gallery, but

21  there will be some spectators just based on what we saw when we

22  got ready for trial last year and also just the general

23  interest that's been shown in the community for this case.

24      THE COURT:  Okay.  Miss Phillips?

25      THE DEFENDANT:  Judge, I'd like to -- again, my name

MICHAEL P. SNYDER, Official Court reporter

1  is River Bey for the record, and I'd like to address the Court

2  if I may, please.

3        THE COURT:  Okay, in a very limited fashion.  I know

4  the whole history of the case, and I know that Judge Mihm

10:30:52   5  revoked your pro se status.  So you are represented by counsel,

6  and I understand reluctantly, and I know that you filed some

7  documents yesterday.

8        THE DEFENDANT:  Yes.

9        THE COURT:  That's a repeat of what Judge Mihm has

10:31:05  10  already ruled on, and so what he has done is what we call the

11  law of the case, so I'm not going to reconsider the

12  jurisdiction issues.  If there's a statement you'd like to make

13  at the very beginning, go ahead.

14        THE DEFENDANT:  Yes, I would.  These issues are not

10:31:20  15  quite the same, first of all.  Second, I do believe that they

16  need to be heard on the record because they are issues that are

17  still of concern of mine.

18        THE COURT:  Okay.

19        THE DEFENDANT:  And the proceedings can't go forward

10:31:32  20  unless these issues are addressed.

21        THE COURT:  Okay.  Here's how we have to do that, Miss

22  Phillips.  Since you are represented by counsel, I can't let

23  you speak on your behalf.  But if she would file any of these

24  documents in her name on your behalf, I will certainly consider

10:31:47  25  that.  But I can't permit what's called hybrid representation

MICHAEL P. SNYDER, Official Court reporter

1    where you represent yourself and she represents you.  It has to

2    be one or the other, and the law of the case is that you're not

3    going to be permitted to represent yourself.

4             THE DEFENDANT:  Over my objection?

10:32:00    5             THE COURT:  Absolutely.  And I know the history of the

6    case, and I know that's over your objection.

7             THE DEFENDANT:  Okay.  Well, then just for the record,

8    I do not consent to these proceedings.

9             THE COURT:  Okay, and I understand.

10:32:12    10             So we'll exclude witnesses.

11             The next thing I'll need the first day of trial, if

12    counsel would get together and come up with an agreed statement

13    of the case for me to read to the jury.  If you can't agree,

14    each side just bring your own version, and I'll probably give a

10:32:31    15    combination of that.  Just something for me to read to the jury

16    so they know what the case is about.

17             I'll need an exhibit list also filed the first day of

18    trial.  Just bring it.

19             Gladys, with exhibit lists, do you have a formal form

10:32:46    20    you use here or is it just up to each judge?

21             THE CLERK:  Just the Judge.

22             THE COURT:  If you want to use our usual form in the

23    Southern District, that's fine.  Just give me a list of your

24    exhibits so that I have it in advance, what they are.  Serve

10:33:01    25    one on opposing counsel.  Approximately how many are we talking

MICHAEL P. SNYDER, Official Court reporter

1    about for the government?

2         MR. STUMP:  How many exhibits, Your Honor?

3         THE COURT:  Right.

4         MR. STUMP:  Let's see.  I think I know the answer to

10:33:13    5    that.

6         THE COURT:  Just a rough number is fine.

7         MR. STUMP:  Judge, I've got about 40, about 40

8    exhibits.

9         THE COURT:  Okay.  Have them premarked, and then give

10:33:30    10   me an exhibit list.

11        Same with the defendant.  If you have any exhibits,

12   give us an exhibit list also, and make sure everything is

13   shared so there are no surprises.

14        MS. SOLOMON:  All right.

10:33:39    15        THE COURT:  In terms of the technology, I don't know

16   what courtroom we are going to be in.  We will start on June

17   16th, the defendant will have to be here.  And I know, Miss

18   Phillips, you've attended all the hearings, and I appreciate

19   that.  And I know the position you're taking in this case.  I

10:33:53    20   disagree with it, but I know the position you're taking, and I

21   assure you you have preserved that for the record for the Court

22   of Appeals, okay?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  So we will be assigned a courtroom

10:34:05    25   sometime in the future.  That will be on the CM/ECF docket.  It

MICHAEL P. SNYDER, Official Court reporter

1    probably will not be this courtroom.

2         In terms of the technology, I don't know which

3    courtroom we are going to have, but I think the government has

4    indicated they don't need a lot of technology, so probably just

10:34:19    5    a document camera.

6         Miss Solomon, do you have any specific needs?

7         MS. SOLOMON:  Not at this time.

8         THE COURT:  Approximately how many witnesses is the

9    government going to have?

10:34:26    10         MR. STUMP:  Approximately 20, Your Honor.

11         THE COURT:  Okay.  We are going to start each day --

12    the first day we are going to start probably with the jury

13    about 9:30 as opposed to 9:00, and that's because I intend to

14    submit a jury questionnaire to them.

10:34:43    15         Would you hand those out, please, Gladys.

16         This is a form that I've found helpful for you, and so

17    we'll ask the jury to complete this questionnaire before they

18    are sent up here to the courtroom, and that will answer a lot

19    of questions for you.

10:35:05    20         Gladys, would you give this one to Miss Phillips for

21    me.

22         THE CLERK:  I have another one here.

23         THE COURT:  Sure.

24         THE DEFENDANT:  I will be refusing that.  Thank you.

10:35:19    25         THE COURT:  Do you not want us to give you any

1  documents?

2       THE DEFENDANT:  As I said, sir, I have a standing

3  objection to the proceedings.

4       THE COURT:  Okay.  All right.  I just wanted to as a

10:35:27  5  courtesy give you copies of the documents, but we won't do that

6  if you won't accept them.

7       Give me a thumbnail sketch of your case, Mr. Stump.

8       MR. STUMP:  Judge, the elements are four.  Basically

9  we have to prove that there was a false lien or encumbrance

10:35:48  10  filed against the property of a federal government official, we

11  have to prove that that was done knowingly, that the lien

12  itself was false, and, of course, we have to prove that this

13  was all in retaliation for some act by that official.

14       So what I have is I have 12 counts.  Each one of those

10:36:07  15  counts represents a separate victim, and so I'm expecting all

16  12 of those victims to testify.  That's where I get the large

17  number of witnesses from.  And then those victims will testify

18  that they did not owe Miss Phillips any money, certainly not

19  $100 million what's listed in the liens, and they will also,

10:36:28  20  there will also be testimony to establish that all of them were

21  involved to some degree in the investigation and/or the

22  prosecution of Miss Phillips' brother, Devon Phillips.  So it

23  will be some witnesses who are described in that process and

24  what happened in that prosecution and the roles that various

10:36:48  25  people played.

     MICHAEL P. SNYDER, Official Court reporter

1    I also expect to have some expert testimony, Your

2 Honor. I have a fingerprint expert from the FBI named Monte

3 Swank. I noticed him as an expert. We intend to call him

4 towards the end of the trial. He analyzed the liens because

5 they had fingerprints on them, and he'll testify to his

6 conclusion that I think nine out of eleven liens that he

7 examined he was able to determine that the thumbprint, the

8 fingerprint on the lien matched a fingerprint known to belong

9 to the defendant.

10    And then finally, Your Honor, there was a search

11 warrant involved and an arrest made of Miss Phillips. The

12 search warrant was in March of 2012. The arrest was made after

13 she was indicted in this case. I have a few officers who will

14 testify about what they found during the search warrant and the

15 statements that Miss Phillips made both before and after she

16 was arrested about this case.

17    THE COURT: Okay. And then, Miss Solomon, my habit is

18 on cross-examination, I give you great leeway in going beyond

19 the scope unless there's a real good objection as to why we

20 shouldn't. And the reason I do that is so you don't have to

21 bring them back in your case. So I just want you to know that,

22 and that goes both ways. I don't disregard the rule, but I'm

23 very liberal with respect to it unless there's an objection.

24    How about your case, Miss Solomon?

25    MS. SOLOMON: Your Honor, there are a couple of

MICHAEL P. SNYDER, Official Court reporter

1    motions in limine that we'd like to raise.

2            THE COURT:  Okay.

3            MS. SOLOMON:  The government raised the issue of what

4    was uncovered during the search, and one of the things that was

10:38:34    5    uncovered was a weapon, and we would certainly be moving in

6    limine to exclude that from testimony in this proceeding.

7            MR. STUMP:  I'm sorry.

8            THE COURT:  We don't need to argue that now.  You've

9    got by June 2nd, if you could file your motions in limine.

10:38:49    10    Isn't that what I put?  Did I give you an order on that?

11            MR. STUMP:  Yes.

12            THE COURT:  And you can bring that up, and I gave you

13    a deadline to respond.

14            MR. STUMP:  Yes.  I'll just say for any motions that

10:38:58    15    she raises today, we'll get together and maybe we can resolve

16    them.

17            MS. SOLOMON:  Okay, that would be fine.

18            I also have for the Court today some proposed

19    defendant's jury instructions.

10:39:10    20            THE COURT:  Great.  When we are done with the final

21    pretrial, what I'd like to do is come down to the table with

22    all of you, and I'll go over the instructions.  We'll do the

23    conference today.

24            MS. SOLOMON:  Okay.  I also have some voir dire issues

10:39:21    25    with regard to publicity --

MICHAEL P. SNYDER, Official Court reporter

1      THE COURT:  Okay.

2      MS. SOLOMON:  -- that has been involved in this case.

3      THE COURT:  Great.  Okay.

4      MS. SOLOMON:  Other than that, at this point, since

5  I've had very limited interactions with Miss Phillips in terms

6  of witnesses or a really finalized defense, I can't tell the

7  Court at this point.

8      THE COURT:  Okay.  I understand.

9      Miss Phillips, something I want to tell you, though,

10  is there are two absolute rights you have.  One is to plead

11  guilty or not guilty to one or more of the counts in the

12  indictment.  You've pled not guilty, so you're going to have a

13  trial.

14      At trial you have an absolute right to testify if you

15  want to or to not testify, and you don't have to make that

16  decision now, but no matter what your lawyer or anybody says,

17  if you want to testify, you're going to be permitted to

18  testify.  Now, you are going to have to testify according to

19  our rules and on relevant matters, but the decision to testify

20  or not is completely up to you.

21      MS. PHILLIPS:  For the record I have not made any

22  pleas in this court; and, secondly, with the jurisdictional

23  issue, I would not be able to testify if that's still the

24  question.

25      THE COURT:  And that's going to be up to you

MICHAEL P. SNYDER, Official Court reporter

1   completely, but I want to make sure you understand.  We did

2   enter a plea of not guilty for you I assume when you were

3   brought before the magistrate as a matter of course.

4        So motions in limine due June 2nd and I think

5   responses a week later.  Whatever that order said, follow that.

6   And also any response you have to document 40, Miss Solomon,

7   which is the government's notice of 404 evidence.  We talked

8   about that.

9        MR. STUMP:  Your Honor, and I don't mean to step on

10  your toes at all on this.  For the 404(b), I just wanted to

11  make sure you knew that before the first trial was supposed to

12  happen, that issue was before Judge Shadur, and Judge Shadur

13  entered an order basically granting the government the ability

14  to present that evidence.  And I just raise that just so you

15  know as part of the history of the case that that had happened.

16       THE COURT:  Was she represented by counsel at that

17  time?

18       MS. SOLOMON:  That was prior to my being in the case,

19  and I certainly have objections to the admitting of that

20  evidence.  I will be filing a motion in opposition.

21       THE COURT:  Sure.  With great respect for Judge Shadur

22  and Judge Mihm, this case is going to go to the appellate court

23  under the name Reagan District Judge, so I will revisit all the

24  rulings including the pro se status if there's a properly filed

25  motion that is compelling and is under oath.

     MICHAEL P. SNYDER, Official Court reporter

1        Otherwise, as I indicated, the jurisdictional issue is

2   the law of the case because, frankly, I've been through cases

3   like this before, Miss Phillips.  The first one was a fellow

4   named Frederick James when I first came on the bench.

10:42:13    5   Wonderful man, but he thought that since he was a Moore, that

6   the laws of our country didn't apply to him, and so he thought

7   he could conspire to distribute marijuana, which he did, and he

8   was convicted after a trial.  He claimed I didn't have

9   jurisdiction, and he's now spent 17 years in the Bureau of

10:42:32   10   Prisons.

11        Two months, three months ago I tried another case, an

12   individual claimed I didn't have jurisdiction over him.  His

13   name is Destry Marcott, and he didn't think he should have to

14   pay taxes and in fact filed claims for taxes that he wasn't

10:42:43   15   entitled to.  He was convicted after a jury trial.  He didn't

16   appear for his sentencing, so I don't know the status of that

17   case.

18        But I understand your position as to the jurisdiction.

19   It's been decided, there is an order on it, so that certainly

10:42:58   20   can go to the Court of Appeals.

21        THE DEFENDANT:  If I may?

22        THE COURT:  Sure.

23        THE DEFENDANT:  My question would be what would be the

24   legislative authority of the Court, what is the legislative

10:43:11   25   authority of the statute cited and the validity of the statute

MICHAEL P. SNYDER, Official Court reporter

1  cited?

2  THE COURT:  Sure, and that was vetted by Judge Mihm in

3  his order.  He went through the congressional history of it.

4  THE DEFENDANT:  And did you also find that there was

10:43:24  5  no federal record, federal registration record pursuant to

6  statute.

7  THE COURT:  I haven't looked at that, quite honestly.

8  THE DEFENDANT:  Well, that's what my research showed,

9  and that's why there is still a question.

10:43:37  10  THE COURT:  Okay.  You know, you're really a smart

11  lady, I can tell.  You know what?  You've got three friends in

12  this world right now.  Do you know who they are?  Her, the 12

13  of them who are going to sit in that box, and me because I'm

14  going to make sure you get a fair trial.  Because do you know

10:43:55  15  what I hate to do?  On Fridays I put people in the

16  penitentiary, and I hate it.  I absolutely hate it.  So I hope

17  you work with your lawyer.  When people are found not guilty in

18  my court, I am secretly happy.  Do you know why?  Because it

19  means the system works.  It means the system works.  But unless

10:44:12  20  you can work with her, I'm concerned.  Okay.

21  As to objections, please make your objection.  Make it

22  specific to the extent that you say hearsay.  You don't have to

23  say Rule 803(b), whatever, but make sure I understand what it

24  is.  If you mean hearsay and the objection should have been

10:44:37  25  lacks firsthand knowledge, I'm not going to conjure up the

MICHAEL P. SNYDER, Official Court reporter

1   correct ruling for you, the correct objection.  So make sure

2   you say, you know, objection, lacks firsthand knowledge,

3   objection, hearsay, objection relevancy, and then I'll rule on

4   it.  Don't make any speaking objections.

10:44:53

5           Sidebars are disfavored.  That doesn't mean we won't

6   have one, but we'll have plenty of time before court, during

7   lunch hour, and after court to cover any objections.  And the

8   reason they are disfavored is typically, I don't know about the

9   courtroom we are going to be in, we go to sidebar, we have to

10:45:10

10  turn on white noise which the jurors hate, and then the court

11  reporter has to come over, and all that takes time.  And so we

12  ought to be able to handle things without doing them at

13  sidebar.  But, again, I'm not saying this is a no-sidebar case,

14  just that they are disfavored.

10:45:27

15          In terms of witnesses, Mr. Stump, if you could have

16  them ready to go in the courtroom, and when we take a break,

17  have them on the witness stand so we don't have to call them

18  back in.  That would be helpful.

19          I'm hoping to get this case to the jury Wednesday if

10:45:42

20  we can.  Now, I know you've got a lot of witnesses and that,

21  but I want to make sure that we give them plenty of time to

22  deliberate.  I've got all the time in the world.  We are going

23  to start, our average day will be at 9 o'clock, and we'll start

24  at 9 o'clock on June 16th, but we probably won't have a jury up

10:46:02

25  here until 9:30.  We break from noon to 1:00 roughly?  Is an

MICHAEL P. SNYDER, Official Court reporter

1    hour long enough for the jurors?  So we'll break roughly noon
2    to 1:00 and then go till about 5 o'clock each day.

3         Having said that, if it's a quarter to 5:00 and we've
4    got a witness who is going to take quite a while, we'll just
5    break at quarter to 5:00 rather than break them up.  By the
6    same token, if we can finish that witness by 5:15 or so, we'll
7    go ahead and extend over 5:00.  Will that work?  So that will
8    kind of be our goal.

9         In terms of the protocol, as long as we can hear you,
10   I don't care if you stand, sit, walk around.  That's not a
11   problem.  I would mention that during voir dire, though, the
12   court reporters have a little difficulty hearing when you're
13   talking to the jurors in the back and your back is to them.  So
14   you might want to make sure we can hear you; otherwise, I'll
15   kind of get your attention.

16        And if we have anyone who needs the assisted listening
17   devices, then you'll have to tether yourself to a microphone
18   because they won't be able to hear without that.

19        Okay.  In terms of jury selection, we are going to
20   bring in 34 jurors.  They will have filled out this
21   questionnaire, so you'll have it.  I'm going to ask whoever the
22   courtroom deputy is at that time -- it won't be Gladys.  She's
23   riding off in the sunset -- to do a chart for us.  So we'll
24   have a chart with 14 boxes in it.  Juror No. 1 is the bottom
25   right-hand corner, and you'll have the juror number and their

MICHAEL P. SNYDER, Official Court reporter

1       name.  We will refer to the jurors by number only.  We won't

2       use their name so that we can protect their privacy, because

3       this eventually could all get uploaded to the internet.  We'll

4       also have wherever they are seated in the back, I'll ask that

10:47:54   5   we have a chart of that.

6           I'll swear the jurors.  I'll go through a rather

7       thorough voir dire on this case and handle everything that I

8       would think either side would want to have handled.  But when

9       I'm finished, I'll turn it over to the government for questions

10:48:09   10   to any specific jurors.  I just ask that you don't ask

11      questions of each one just to fall in love with them and

12      develop a relationship.  Then when the government is done, turn

13      it over to the defense.  Usually 30 minutes apiece is adequate

14      because of the depth that I go into on voir dire.  I will

10:48:25   15   handle all the hardship questions, though.  I've found that

16      inventive and resourceful lawyers can always get somebody to

17      claim a hardship, so I'll take care of that.

18          Once we've asked all the jurors and exhausted all the

19      questions, and if there are questions you want me to ask, Miss

10:48:43   20   Solomon, as part of voir dire that you would not like

21      associated with you, you want me to ask them, I'll be happy to

22      consider those.

23          Once we've done all that questioning, we'll take a

24      break, and I'll do challenges for cause.  This is all out of

10:48:57   25   the presence of the jury.  I'll ask the government for their

MICHAEL P. SNYDER, Official Court reporter

1    challenges for cause one at a time.  So let's say the

2    government challenges juror No. 3 because they, they've got a

3    pending felony or something, although they should have been

4    weeded out by the system.  I will get the defense position, and

10:49:15    5    I'll rule.

6              After we do all the government's challenges for cause,

7    we'll do the defense challenges for cause, and I'll rule.  So

8    at that point in time you know who the potential venire is

9    going to be.  And then we'll take about a 20-minute break.  You

10:49:28    10    can meet with your respective sides to go over your peremptory

11    challenges.

12              The defense will have ten peremptory challenges, the

13    government will have six, okay?  Once you accept a juror,

14    you're stuck with him.  There's no backstriking, and you can't

10:49:47    15    carry over any challenges.  Let me explain it.

16              We'll start at the bottom right-hand corner juror No.

17    1.  Let's say the government accepts and the defense accepts.

18    That juror is on our panel, okay?  You cannot later go back and

19    strike them.  We get to juror No. 2, we are going to go to the

10:50:04    20    defense, accept or reject.  You accept and say the government

21    strikes, they are gone.  Then we go back to the government.  So

22    we are going to alternate back and forth.  Again, it's out of

23    the presence of the jury.  I'll help you keep track of exactly

24    where we are and the number of challenges and that kind of

10:50:21    25    thing.

MICHAEL P. SNYDER, Official Court reporter

1    One we've got the first 12 jurors, then all the

2    challenges are gone, and we start over again, okay?  So for the

3    original jury of 12 we'll have ten challenges for the defense

4    peremptory, six for the government.  When we get to the

5    alternates -- and I like two alternates in this case so we have

6    a total of 14 jurors -- we'll start all over again.  The

7    government will go first, then the defense, government,

8    defense, one challenge per side for the alternates.

9    I reserve the right to use what's called the struck

10   method if I need to.  I have never had to in 14 years, but if I

11   need to, and that's this situation.  We are going to have 34

12   jurors.  Let's say for whatever reason we end up with a whole

13   lot of challenges for cause such that if you also exercise all

14   of your peremptories, I don't have enough jurors left.  If

15   that's, if I can tell that could occur, and I'll know that by

16   the number of cause challenges I grant, then I might require

17   both of you to give me your challenges in writing at the same

18   time.  So I'll get the government's ten, or the government's

19   six, the defendant's ten.  What that does is there's often

20   overlap between the two, and then I can get by with less

21   jurors.  But, again, I've not needed that.

22   Gladys, will there be other jurors available in the

23   courthouse if we need them?

24   THE CLERK:  It's is all dependent if some other judge

25   has a jury.

MICHAEL P. SNYDER, Official Court reporter

20

1        THE COURT:  If somebody else has?

2        THE CLERK:  If you want, I could order more jurors.

3        THE COURT:  Why don't we go with 36.

4        THE CLERK:  Okay.

5        THE COURT:  We'll start with that.

6            So then after we've done the peremptory challenges,

7    I'll go over again with you the list to make sure we are on the

8    same page, the first 12 who they are, the next two alternates.

9    Then I'll bring the jury in.  Depending on what time it is, we

10   might go -- I'll swear them, and we might go right into

11   openings statements.

12           Any idea how long your opener is?

13        MR. STUMP:  I think around 10, 15 minutes.

14        THE COURT:  Okay.  And, Miss Solomon, if you want to

15   open at that time, that is fine.  If you want to reserve for

16   later, that's fine too.  I leave that up to you.  I don't try

17   your case for you.

18           And then I would say have your first witness available

19   in the morning just in case, doubtful but just in case.  And

20   then starting at 1 o'clock we'll start with the witnesses.

21           I will instruct the jurors ahead of time.  That's why

22   I like to do instructions now.  Obviously there's some

23   instructions that I might have to give them later.  For

24   example, anything regarding whether the defendant is going to

25   testify or not we'll reserve on.  The credibility of the

MICHAEL P. SNYDER, Official Court reporter

1    witnesses has to be reserved on because it depends on whether

2    she testifies or not or as to whether we have the bracketed

3    material or not.  But generally I give them most of the

4    instructions up front.  I read them to them on the document

5    camera so they can read along, but I have individual monitors.

6    I don't know if I'll do that here.  They'll also get the

7    instructions back in the jury room with them.  I'll tell them

8    that I'll instruct them throughout the course of the case also,

9    and at the end they'll get more instructions and that they must

10   consider them as a whole and not singling one out over another.

11        MR. STUMP:  Judge, would that be before or after the

12   opening statements?

13        THE COURT:  Before openers, first thing.

14        MR. STUMP:  And with regard to closing, is it same

15   thing, instructions after closing?

16        THE COURT:  No, I'll give them before closing.  So

17   you'll, I will actually let you have the unmarked copies if you

18   want to put them on the Elmo.  Or if you want to use your

19   copies you can do that, and you don't have to go through the

20   fiction "I expect the Court will instruct you."  No, they will

21   have been instructed.

22        I don't limit you an opening statement, the time you

23   take.  I do limit you on closing, but I let you choose how much

24   as long as it's reasonable, but then I keep track of the time.

25   Just so you know.  That's a ways away.

              MICHAEL P. SNYDER, Official Court reporter

1          Any questions about picking the jury?

2          MR. STUMP:  Do we have in the courtroom a mic that the

3    jurors will be able to pass around?  And is there also some

4    sort of mic like that that the lawyers can use so we are not

5    tied to a standup mic?

6          THE CLERK:  I think there is, but I'll check with

7    systems.

8          THE COURT:  Okay.  It kind of depends on what

9    courtroom we are in, I guess.  Typically if you like to walk

10   around, I like you to have the microphone so we can hear you,

11   and I just make sure the jurors talk loud.  They don't like the

12   microphone in their hand.  It makes them nervous.  But I

13   threaten them if they don't talk loud enough, I'm going to give

14   them the microphone, and that typically works.  And oftentimes

15   I will have the people in the back stand up if they are quiet,

16   just again so we can all hear them.

17         MR. STUMP:  Yes, sir.

18         THE COURT:  Any questions about voir dire?

19         MS. SOLOMON:  No.  Just that each side will have a

20   half-hour after you conduct the --

21         THE COURT:  Yes, up to a half-hour.  You probably

22   won't need it, but you're welcome to.  I'm not going to put a

23   stop watch on you.  If you get to 31 minutes, I'm not going to

24   throw the hook out.  But I have found putting reasonable limits

25   on attorneys' time let's me continue to have attorneys to ask

MICHAEL P. SNYDER, Official Court reporter

1    questions as opposed to saying no questions by the lawyers.

2         Any questions at all about the trial practice,

3    procedure, or anything like that?

4         Gladys, you can see that the questionnaire is filled

5    out, you can have the jury commissioner take care of that for

6    us?

7         THE CLERK:  I'll talk to the courtroom deputy and let

8    them know.

9         THE COURT:  Okay.

10        Any anticipated evidentiary issues I need to know in

11   advance?

12        MR. STUMP:  I don't think so, Judge.  I don't.  The

13   404(b) obviously we'll handle ahead of time.  We'll get

14   together on motions in limine before they are filed and see if

15   we can resolve some of those.  I really think -- I've already

16   provided a full complete copy of my exhibits to Miss Solomon,

17   so she has them, so she knows what I'm going to try to

18   introduce.  I don't think there's anything major that's going

19   to come up.

20        THE COURT:  Okay.  If in advance you can tell me that

21   there are no objections to certain exhibits, that's fine.  I

22   understand in this case there might be an objection to every

23   exhibit, and I understand that too.

24        MR. STUMP:  Your Honor, can I ask you a question?

25        THE COURT:  Sure.

MICHAEL P. SNYDER, Official Court reporter

1        MR. STUMP:  I have -- these 20 witnesses all have

2    different schedules and stuff.  I've got a witness who is

3    flying in from Thailand.  I've got a witness who is moving to

4    Jamaica the week before trial.  It's all the typical stuff.

10:57:36    5    But one thing that sometimes happens is a witness says I can go

6    on Tuesday, but after that, you know, I'm unavailable, so

7    you've got to get me in Tuesday.

8        If we get in a situation where we have got a witness

9    on the stand and that testimony goes on longer than anybody

10:57:53   10    anticipated and I'm in that bind, would Your Honor consider the

11    possibility of pausing a witness' testimony to allow another

12    witness to jump in?

13        THE COURT:  Sure.  For both sides I do that.  I

14    understand.  And, again, that's one of the reasons why I'm

10:58:08   15    liberal on beyond the scope so that everything can be brought

16    in front of the jury with that witness in the first and only

17    time they testify.

18        MR. STUMP:  Thank you.

19        THE COURT:  Sure.  That's no problem.

10:58:22   20    Anything else at all about the final pretrial you want

21    to talk about?  If not, I'll come down, and we'll do jury

22    instructions at the defense table so we can pass things back

23    and forth.  Anything else, Miss Solomon?

24        MS. SOLOMON:  No, Your Honor.

10:58:37   25    THE COURT:  Mr. Stump?

MICHAEL P. SNYDER, Official Court reporter

25

1         MR. STUMP:  No, thank you, Your Honor.

2         THE COURT:  Miss Phillips, I'm going to give you a

3    fair trial.  Don't make it tough on me.

4         Okay.  Let's go down to the defense table, and we'll

10:58:53    5    pass stuff around.

6         MS. SOLOMON:  Speaking of the marshal, in the order

7    there is the provision that it can be removed after six months.

8         THE COURT:  Yes.

9         MS. SOLOMON:  I am going to file a motion with the

11:00:55   10    Chief Judge asking that that provision be removed.

11        THE COURT:  Yes, because --

12        MS. SOLOMON:  There are no problems in this case since

13    I've been involved.

14        THE COURT:  A useful amount of time, five minutes

11:01:02   15    before and 15 minutes after is, yes, do that.

16        MS. SOLOMON:  So I will be filing that.

17        THE COURT:  And if you want to add to it that the

18    trial judge supports that.

19        MS. SOLOMON:  Okay.

11:01:13   20        THE COURT:  If nothing else, that they at least expand

21    the time so that you have time to meet with her.

22        THE DEFENDANT:  Or how about it being just simply

23    removed?

24        THE COURT:  That's my first choice.

11:01:25   25        THE DEFENDANT:  Yeah.

MICHAEL P. SNYDER, Official Court reporter

1    THE COURT:  Okay.

2    MS. SOLOMON:  This is just voir dire concerns

3  (tendering).

4    THE COURT:  Okay.

5    (Pause.)

6    THE COURT:  Okay.  This is the jury instruction

7  conference in United States of America versus Cherron Marie

8  Phillips, case 12 CR 7872.  Both counsel are present as well

9  as Miss Phillips.

10    The first instruction for consideration is

11  government's No. 1.

12    When I refer to pattern instructions during this

13  conference, I mean the Pattern Federal Jury Instructions

14  Criminal 2012 Seventh Circuit version.

15    Is there any objection to this instruction on behalf

16  of the defendant?

17    MS. SOLOMON:  None, Your Honor.

18    THE COURT:  Given, no objection.

19    When I rule on these, I will write on the marked copy,

20  marked meaning the one that has the citation and the GN/O

21  means given, no objection.

22    THE COURT:  Instruction 2 for the government is 1.02

23  pattern instruction.  Any objection to this instruction?

24    MS. SOLOMON:  No objection.

25    THE COURT:  2 is given, no objection.

MICHAEL P. SNYDER, Official Court reporter

1       Government's 3 is pattern instruction 1.03,

2  presumption of innocence burden of proof instruction.  Any

3  objection?

4           MS. SOLOMON:  No objection.

5           THE COURT:  Without objection.

6           Government's 4 is pattern instruction 2.01 regarding

7  the evidence.  Any objection?

8           MS. SOLOMON:  No objection.

9           MR. STUMP:  I think it's modified.  As I recall, it

10  was just some verbiage we didn't need in our case.

11           THE COURT:  If I take judicial notice or something, we

12  can add that, but I'll give it in this form.  So 4 given

13  without objection.

14           All right.  Government's 5 is pattern instruction 2.02

15  concerning the evidence.  Any objection?

16           MS. SOLOMON:  I'm sorry.  No objection.

17           THE COURT:  Given without objection.

18           Government 6 is 2.03 from the pattern, definition of

19  direct and circumstantial evidence.

20           MS. SOLOMON:  No objection.

21           THE COURT:  Given without objection.

22           Government's 7.  I'm going to reserve ruling on this.

23  If she does testify.

24           MS. SOLOMON:  Okay.  I also had an objection on that

25  one.  Oh, actually no, I don't have an objection on that one.

MICHAEL P. SNYDER, Official Court reporter

| | |
|---|---|
| 1 | I had a proposed jury instruction No. 7 which is the Seventh |
| 2 | Circuit pattern jury instruction No. 2.04, which was regarding |
| 3 | the number of witnesses, because I am not sure whether we will |
| 4 | have any witnesses, or I anticipate that the government will |
| 11:16:56   5 | have more.  So I wanted an instruction on the number of |
| 6 | witnesses. |
| 7 | THE COURT:  Okay.  I will get to yours at the end. |
| 8 | MS. SOLOMON:  Okay. |
| 9 | THE COURT:  So on government 7? |
| 11:17:03   10 | MS. SOLOMON:  No objection. |
| 11 | THE COURT:  Okay.  I'm going to put reserve ruling, |
| 12 | but no objection if defendant fails to testify. |
| 13 | Okay.  8 I'm going to reserve ruling on because this |
| 14 | is dependent on whether she testifies or not.  If she does not |
| 11:17:48   15 | testify, do you have any objection to the current form? |
| 16 | MS. SOLOMON:  No, I do not. |
| 17 | THE COURT:  Okay.  So I'll reserve ruling, no |
| 18 | objection if defendant does not testify.  If she does, we'll |
| 19 | add the bracketed material. |
| 11:18:11   20 | Now, instruction 9, attorney's right to interview |
| 21 | witnesses. |
| 22 | MS. SOLOMON:  No objection. |
| 23 | THE COURT:  Given without objection. |
| 24 | 3.09, government's 10, statement by the defendant. |
| 11:18:36   25 | MS. SOLOMON:  No objection. |

MICHAEL P. SNYDER, Official Court reporter

1    THE COURT:  Okay.  Given, no objection.

2    Government's 11 is 3.11.

3    MS. SOLOMON:  I object.

4    THE COURT:  I reserve ruling on this.  This is 404(b)?

11:19:04    5    MS. SOLOMON:  Yes.

6    THE COURT:  So I'll reserve ruling pending 404 ruling.

7    Government's 12 is 3.13, opinion testimony.  This is

8    the fingerprint expert.

9    MR. STUMP:  No objection.

11:19:23    10    THE COURT:  Given, no objection.

11    3.18 is juror notetaking.  Any objection?

12    MS. SOLOMON:  No objection.

13    THE COURT:  Given, no objection.

14    MR. STUMP:  There's a notation I made on proposed

11:19:43    15    instruction No. 14.  As I was reading through it, I just

16    realized it might read better and clearer if the second element

17    was moved down before the fifth element.

18    MS. SOLOMON:  I have an objection.

19    THE COURT:  Yes, okay.

11:19:55    20    MS. SOLOMON:  And I have an alternate instruction.

21    THE COURT:  Let's compare the two then.  Which is your

22    alternate?

23    MS. SOLOMON:  It's jury instruction No. 14, so it's

24    the third page.

11:20:07    25    THE COURT:  Okay.

MICHAEL P. SNYDER, Official Court reporter

1       MS. SOLOMON:  This was an instruction that was given

2   in the Williamson case in the Tenth Circuit.

3       THE COURT:  Okay.  Let's go off the record so we don't

4   encumber it right now.

11:20:21   5       (Discussion off the record.)

6       THE COURT:  Defendant's 14 is refused, and the reason

7   I'm refusing it is because the government's instruction tracks

8   the language of the statute more closely in terms of describing

9   the officer or employee whereas the defendant's just talks

11:29:48   10   about an employee.  And the government's also tracks the

11   statute in using the words fictitious, materially false, or

12   fraudulent, and the defendant's doesn't.  And the government's

13   also talks about on account of, whereas the defendant's uses

14   the word "because of," and the statute uses on account of.  So

11:30:08   15   I'm going to refuse the defendant's instruction.

16       Do you have anything you want to add regarding my

17   refusal on defendant's?

18       MR. STUMP:  No, sir.

19       THE COURT:  Let's go off the record then.

11:30:18   20       (Discussion off the record.)

21       THE COURT:  So government's 14 will be given over

22   objection of the defendant, but it does need edits, and we've

23   talked about what the edits are.

24       Would you want to articulate your objections to the

11:30:40   25   instruction for the record, please, Miss Solomon.

        MICHAEL P. SNYDER, Official Court reporter

1      MS. SOLOMON:  I would object to the addition of the

2  words "or attempted to be filed" in light of the ambiguity that

3  that inserts in the trial and that jury confusion it might

4  cause with regard to additional liens or encumbrances that the

11:31:05      5  jury might believe were also attempted to be filed but were not

6  successfully.

7      THE COURT:  Your response?

8      MR. STUMP:  Your Honor, the indictment charges both

9  the completed crime and attempt.  We believe that the evidence

11:31:19      10  will show that the crime was completed, but we would like to be

11  able to argue for the jury in the alternative that the crime

12  has been attempted.  So we ask that the language about attempt

13  stay in the instruction.

14      THE COURT:  Okay.  And if there's a change in the

11:31:34      15  course of the testimony, I'm happy to reconsider the

16  instruction.  It is my intention, however, to read instructions

17  at the beginning.  My experience has been the jury really likes

18  to know what the law is.  But if I have to make a change of

19  horse midstream, I'm not adverse to doing that.  I will just

11:31:51      20  explain to them "Originally I told you the word attempt was in

21  this instruction; it no longer is."  So I'm happy to revisit

22  that.

23      Okay, government's 15 is a definition of lien or

24  encumbrance.

11:32:01      25      MS. SOLOMON:  I have an objection to that.

MICHAEL P. SNYDER, Official Court reporter

1          THE COURT:  I'm sorry?

2          MS. SOLOMON:  I objected to theirs, and I have a

3     proposed No. 15.

4          THE COURT:  Okay, let's go off the record again.

11:32:14    5          (Discussion off the record.)

6          THE COURT:  On government's 15, in contrast to the

7     defendant's 15, which is a definition of lien or encumbrance, I

8     am going to take that under advisement and reserve ruling.

9     I'll do independent research.

11:33:11    10          Government's 16 is definition of materiality.

11          MS. SOLOMON:  No objection.

12          THE COURT:  Given, no objection.

13          Government's 17 is pattern instruction 4.05, the date

14     of the crime charged.

11:33:30    15          MS. SOLOMON:  No objection.

16          THE COURT:  Given, no objection.

17          Government's 18 is pattern instruction 4.06, separate

18     consideration to each charge.

19          MS. SOLOMON:  No objection.

11:33:45    20          THE COURT:  Given, no objection.

21          Government's 19 is punishment, that the jury should

22     not consider that in rendering a verdict.

23          MS. SOLOMON:  No objection.

24          THE COURT:  Given, no objection.

11:33:58    25          Government's 20, definition of attempt.

MICHAEL P. SNYDER, Official Court reporter

1      MS. SOLOMON:  I did have an objection to that as well.

2      THE COURT:  Okay.

3      MS. SOLOMON:  In addition to the overall definition, I

4 also had a proposed alternate instruction.

11:34:27    5      THE COURT:  Which one is your alternate number?

6      MS. SOLOMON:  It's also No. 20.

7      THE COURT:  Let's go off the record.

8        (Discussion off the record.)

9      THE COURT:  So I'm going to give defendant's 20,

11:36:34   10 given, no objection, needs edits.

11      MS. SOLOMON:  Okay.

12      THE COURT:  And the edit will be the word "crime"

13 changed to "offense."  When I say "needs edits," those who have

14 done these needs to edit them.

11:36:46   15      Then do you want to show your 20 is withdrawn?

16      MR. STUMP:  Yes, Your Honor.  That's fine.

17      THE COURT:  Okay.  Government's 21, definition of

18 knowingly.

19      MS. SOLOMON:  I have an objection.

11:37:07   20      THE COURT:  Okay.

21      MS. SOLOMON:  There is a typo.  It should be "she."

22      THE COURT:  Off the record.

23        (Discussion off the record.)

24      THE COURT:  I'm going to refuse government's 21

11:42:39   25 because it doesn't include the last paragraph of 4.10, and I'm

          MICHAEL P. SNYDER, Official Court reporter

1   going to use defendant's 21 because it does not include that

2   ignorance of the law is not a defense, and I think in this

3   particular case it's important.  So I'm going to ask Miss

4   Solomon if you would do a Court's 1, because you're both going

11:42:58   5   to object to what I'm doing.

6          MS. SOLOMON:  Okay.

7          THE COURT:  Court's 1, and if you would take your

8   current 21 and add the government's ignorance of the law

9   statement.

11:43:07   10          MS. SOLOMON:  Okay.

11          MR. STUMP:  And let me just state for the record, I

12   actually will not register an objection to that second

13   paragraph that was referred to as an ostrich instruction in the

14   defense's proposed instruction.

11:43:21   15          THE COURT:  Let's go back.  You don't do it, then why

16   don't you do it.  We'll call it your 21.

17          MR. STUMP:  That's fine.

18          THE COURT:  And I'll give it over objection.

19          MS. SOLOMON:  Okay.

11:43:30   20          THE COURT:  Then I will give it over objection of the

21   defendant.

22          Then I'm going to show as refused defendant's 21.

23          MS. SOLOMON:  And then there's just one other, and I

24   ask leave to submit a defendant's theory of the case

11:44:18   25   instruction.

MICHAEL P. SNYDER, Official Court reporter

1      THE COURT:  What will you call it?  I don't know that

2   I've seen one that says "Theory of the case."

3      MS. SOLOMON:  Well, the defendant's statement of what

4   her defense is.  And I have not had a conversation with Miss

11:44:33   5   Phillips with regard to that.

6      THE COURT:  Okay.  I've never seen an instruction like

7   that in all my years.

8      MS. SOLOMON:  You haven't?

9      THE COURT:  I'm not saying -- I learn something every

11:44:41  10   day.  I'm not saying I'm not going to do it.  I'm just saying

11   I've never seen one.  Would we put it back at the end of

12   government's 2?  No.  Well, go ahead and do it, and I'm happy

13   to look at it.

14      MS. SOLOMON:  Okay.

11:45:17  15      THE COURT:  Have you seen a theory?

16      MR. STUMP:  I've only seen that in civil cases where

17   usually the plaintiff's side gets to have some instruction

18   about what their theory of the case is and the defense, you

19   just say what their theory of the case is or it's a general

11:45:32  20   statement that they disagree with the plaintiff's theory of the

21   case.

22      THE COURT:  I'll look at it.

23      MR. STUMP:  I've never had it in a criminal case.

24      THE COURT:  Okay.  Government's 22, joint venture,

11:45:50  25   pattern instruction 5.05.

MICHAEL P. SNYDER, Official Court reporter

1   MS. SOLOMON:  I have no objection.

2   THE COURT:  I'm sorry?

3   MS. SOLOMON:  No objection.

4   THE COURT:  Given, no objection, government's 22.

11:46:10 5   Government's 23, pattern instruction 5.06, acting

6 through another.

7   MS. SOLOMON:  I have no objection.

8   THE COURT:  Given, no objection.

9   Instruction 7.01, government's No. 24.

11:46:25 10   MS. SOLOMON:  No objection.

11   THE COURT:  That's given, no objection.

12   Okay.  Then 26, government's 26, pattern 7.03, the

13 Silvern instruction.

14   MR. STUMP:  Before that we had a 25.

11:46:44 15   THE COURT:  25, the verdict form.

16   MS. SOLOMON:  No objection.

17   THE COURT:  Okay.  7.02, government's 25, no

18 objection.

19   Okay.  26 for the government is the Silvern

11:46:58 20 instruction.  The law on this is if I don't give it with the

21 original instructions and it looks like the jury is deadlocked,

22 I can't give it later.  So I have to give it as part of this

23 packet; otherwise it's coercive.

24   MS. SOLOMON:  Okay.  I'm going to object.

11:47:23 25   THE COURT:  Okay.  And the basis?

   MICHAEL P. SNYDER, Official Court reporter

1      MS. SOLOMON:  Just a minute.

2      THE COURT:  Let me see the comments.

3      MS. SOLOMON:  Yes.

4      Do you want to see the comments?  (Tendering.)

11:47:50  5      MS. SOLOMON:  I guess I would just ask what's your

6  position on giving it at the end.  Do you have a policy or --

7      THE COURT:  Well, here's how I handle it.  Let's say

8  the jury is out for six hours, eight hours, some point in time

9  where we think they might be hung, okay?  I would bring them in

11:49:00  10  and ask the foreman to identify themselves and ask if the

11  foreman believes further deliberation would be of assistance or

12  do you think you are hopelessly deadlocked.  Go back, talk, and

13  come back with an answer.

14      If they come back and say they are hopelessly

11:49:16  15  deadlocked, then I might give them this instruction again at

16  that time.  If I haven't given them this instruction as part of

17  the original packet, I can't give it to them in isolation for

18  the first time at that point.

19      MS. SOLOMON:  Okay.  I'd have no objection.

11:49:31  20      THE COURT:  Given, no objection.

21      Let's look at defendant's instructions then.

22      Defendant's instruction 7 is pattern instruction 2.04,

23  the number of witnesses.

24      MR. STUMP:  No objection.

11:49:49  25      THE COURT:  Given, no objection.

MICHAEL P. SNYDER, Official Court reporter

1    The only one we've got some edits, and then we've got

2    your statement of the theory of the case.

3    Are there any other instructions for the Court's

4    consideration?

5    MR. STUMP:  No, sir.

6    MS. SOLOMON:  No, Judge.

7    THE COURT:  Anything else for the jury instruction

8    conference?

9    MR. STUMP:  No, your Honor.

10   MS. SOLOMON:  No.

11   THE COURT:  Let's go back off the record.

12   (Discussion off the record.)

13   THE COURT:  That's it.  Okay.

14   (Proceedings concluded.)

15   C E R T I F I C A T E

16   I, Michael P. Snyder, do hereby certify that the

17   foregoing is a complete, true, and accurate transcript of the

18   proceedings had in the above-entitled case before the Honorable

19   MICHAEL REAGAN, one of the judges of said Court, at Chicago,

20   Illinois, on May 21, 2014.

21

22                                   /s/ Michael P. Snyder
                                     Official Court Reporter
23                                   United States District Court
                                     Northern District of Illinois
24                                   Eastern Division

25

MICHAEL P. SNYDER, Official Court reporter